## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NIPPON STEEL CORPORATION, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00533 |
| ) | |
| THE UNITED STATES ) | |
| Defendant. ) | |

## COMPLAINT

Nippon Steel Corporation[1] ("NSC") ("Plaintiff"), by its counsel, states the following

claims against the Defendant, the United States:

### I.     JURISDICTIONAL STATEMENT

1.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c)

because the action is commenced under Section 516A of the Tariff Act of 1930, as amended (the

"Act") (19 U.S.C. § 1516a).  This action contests the *Final Results* issued by the Department in

the third administrative review ("AR3") of Certain Hot-Rolled Steel Flat Products from Japan

(Case No. A-588-874) for the period October 1, 2018, through September 30, 2019 (the "period

of review" or "POR").  *See Certain Hot-Rolled Steel Flat Products From Japan: Final Results of*

*Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–*

*2019*, 86 Fed. Reg. 47615 (Dep't of Commerce Aug. 26, 2021) ("*Final Results*").  The

---

[1]     Effective April 1, 2019, Nippon Steel & Sumitomo Metal Corporation ("NSSMC")
changed it trade name to Nippon Steel Corporation.  On September 5, 2019, the Department
determined that NSC is the successor-in-interest to NSSMC for antidumping duty purposes.  *See*
*Certain Hot-Rolled Steel Flat Products from Japan: Notice of Final Results of Antidumping Duty*
*Changed Circumstances Review*, 84 Fed. Reg. 46713 (Dep't of Commerce Sept. 5, 2019).

Department's analysis of issues raised in the *Final Results* is contained in, *inter alia*: "Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review: Certain Hot-Rolled Steel Flat Products from Japan; 2018-2019," issued on August 20, 2021 ("Final Decision Memo"); and the Memorandum entitled "Final Results Analysis for Nippon Steel Corporation," issued on August 20, 2021 ("Final NSC Calc Memo").

## II.    STANDING OF PLAINTIFF

2.    Plaintiff is a Japanese producer and exporter of the subject merchandise. Therefore, NSC is an interested party as defined in 19 U.S.C. § 1677(9)(A).  Plaintiff participated in the administrative review that is the subject of this action, and, accordingly, has standing under 28 U.S.C. § 2631(c) to bring this action.

## III.    TIMELINESS OF THIS ACTION

3.    Plaintiff commenced this action by filing a summons on September 21, 2021, which was within 30 days after the date of publication of the *Final Results*.  Plaintiff is filing this Complaint on October 6, 2021, which is within 30 days after the date of the filing of the summons.  Accordingly, this action is timely filed under 19 U.S.C. § 1516a(a)(2)(A).

## IV.    STATEMENT OF THE FACTS

4.    On December 11, 2019, the Department initiated the third administrative review of the antidumping duty ("AD") order on Certain Hot-Rolled Steel Flat Products from Japan, identifying 26 Japanese producers/exporters of subject merchandise for which timely requests for an administrative review of the applicable AD order had been submitted.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 67712 (Dep't of Commerce Dec. 11, 2019).  Plaintiff was among the 26 identified Japanese producers/exporters

of subject merchandise.  As noted above, the POR for AR3 was October 1, 2018, through September 30, 2019.

5.      Prior to the initiation of AR3, on March 8, 2018, former-President Trump exercised his authority under Section 232 of the Trade Expansion Act of 1962, as amended ("Section 232"), and mandated the imposition of a global tariff of 25 percent on imports of steel articles from all countries, except Canada and Mexico.  *See Adjusting Imports of Steel Into the United States*, Proclamation No. 9705 of March 8, 2018, 83 Fed. Reg. 11625, 11626 (March 15, 2018).  These Section 232 duties, which were subsequently modified in various respects, went into effect on March 23, 2018.  Because the POR for AR3 is subsequent to March 23, 2018, imports of NSC's hot-rolled steel from Japan were subject to the Section 232 duties throughout the POR.

6.      On May 1, 2020, pursuant to Section 777A(c)(2) of the Act, the Department concluded that it would not be practicable to individually examine each of the producers/exporters of the subject merchandise for which it had initiated a review.  Based on Customs and Border Protection entry data, the Department selected as mandatory respondents the two respondents that accounted for the largest volume of subject merchandise exported from Japan during the POR: NSC and Tokyo Steel Manufacturing Co., Ltd.  *See* Memorandum from Jun Jack Zhao to Melissa Skinner, "Respondent Selection for the 2018-2019 Antidumping Duty Administrative Review of Certain Hot-Rolled Steel Flat Products from Japan," dated May 1, 2020.  The Department indicated that it would treat the affiliated companies NSC, Nippon Steel Nisshin Co., Ltd. ("Nisshin"), and Nippon Steel Trading Corporation ("NSTC") as a single entity for purpose of AR3.  *See id.* at note 1.

7.      From June 2020 through February 2021, Plaintiff supplied the Department with information in response to the Department's initial and supplemental questionnaires and other requests.

8.      On February 23, 2021, the Department published its Preliminary Results.  *See Certain Hot-Rolled Steel Flat Products from Japan: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2018-2019*, 86 Fed. Reg 10920 (Dep't of Commerce Feb. 23, 2021) ("*Preliminary Results*").  In its *Preliminary Results*, the Department calculated a weighted-average dumping margin of 11.70 percent for products produced and/or exported by NSC, Nisshin, or NSTC ("NSC/Nisshin/NSTC").  *See Preliminary Results* and accompanying "Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments: Certain Hot-Rolled Steel Flat Products from Japan; 2018-2019," issued on February 17, 2021 ("Prelim Decision Memo") and Memorandum entitled "Preliminary Results Margin Calculation for Nippon Steel Corporation," issued on February 17, 2021 ("Prelim NSC Calc Memo").

9.      In determining the preliminary rate for NSC/Nisshin/NSTC, *inter alia*, the Department found that "section 232 duties should be treated as 'United States import duties' for purposes of {19 U.S.C. § 1677a(c)(2)(A)} – and thereby as 'U.S. Customs duties,' which are deducted from U.S. price."  Prelim Decision Memo at 17.

10.      In addition, the Department based the preliminary rate for NSC/Nisshin/NSTC in part on the application of facts otherwise available with an adverse inference ("adverse facts available" or "AFA") to the downstream sales by certain affiliated home market resellers.  *See id.* at 9-10.  In determining to apply AFA to the sales by these resellers, the Department stated that, despite NSC's significant efforts to obtain the missing information, NSC had failed to

4

cooperate to the best of its ability because, *inter alia*, it had "the ability to cease selling to, or continuing to do business with, an affiliate if that party declines to provide the necessary information requested by Commerce." *Id*. at 10.  As AFA, the Department applied the highest unaffiliated home market price of the commonly sold CONNUMs to the unreported downstream sales at issue.  *Id.*

11.     Finally, the Department failed to include in the calculation of the net U.S. price the U.S. revenue for extra services provided by NSC's U.S. affiliate, Steelscape LLC ("Steelscape").  In its U.S. sales database, NSC reported the revenue for extra services in individual revenue fields for those services and also included those revenues for extra services in the reported total revenue field.  However, the Department did not use the values reported in the total revenue field (which would have included the extra service revenues) to calculate constructed export price ("CEP").  Rather, the Department used only the gross unit price and the transportation-related revenue fields (and thus did not use the individually reported extra service revenue fields) in the calculation of CEP.  *See* Prelim NSC Calc Memo.

12.     On March 25, 2021, and April 1, 2021, Plaintiff submitted its administrative case brief and rebuttal brief, respectively, in which Plaintiff argued that the Department, *inter alia*: (i) improperly deducted Section 232 duties from NSC's U.S. prices; (ii) improperly applied partial AFA with respect to the downstream sales by certain affiliated home market resellers; and (iii) erred by not including the U.S. revenue for extra services in the calculation of the net U.S. price.

13.     On August 26, 2021, the Department published its *Final Results*.  As with the *Preliminary Results*, the Department calculated a final weighted-average dumping margin of 11.70 percent for NSC/Nisshin/NSTC.  *See Final Results*, 86 Fed. Reg. at 47616.  In these *Final*

*Results*, the Department continued to: (i) deduct Section 232 duties from NSC's U.S. prices;

(ii) apply partial AFA to the downstream sales by certain affiliated home market resellers; and

(iii) not include the U.S. revenue for extra services in the calculation of the net U.S. price.  *See*

Final Decision Memo at Comments 1, 2, and 4; Final NSC Calc Memo.

## V.      STATEMENT OF CLAIMS

Count 1:      **The Department's Deduction of Section 232 Duties from NSC's U.S. Prices Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

14.      Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 13.

15.      In determining the weighted-average dumping margin for NSC/Nisshin/NSTC in

the *Final Results*, the Department improperly deducted Section 232 duties on steel imports from

NSC's U.S. prices.  Pursuant to 19 U.S.C. § 1677a(c)(2)(A), the Department must reduce U.S.

price in its AD calculations by "the amount, if any, included in such price, attributable to any

additional costs, charges, or expenses, and *United States import duties*, which are incident to

bringing the subject merchandise from the original place of shipment in the exporting country to

the place of delivery in the United States" (emphasis added).  However, the Section 232 duties

on steel imports at issue here are more similar to AD duties and safeguard duties under Section

201 of the Trade Act of 1974, as amended ("Section 201")—which the Department has

determined are not "United States import duties" for purposes of § 1677a(c)(2)(A)—than to

ordinary customs duties.  Specifically, the Section 232 duties on steel imports are more similar to

AD and Section 201 duties than to ordinary customs duties because: (1) the Section 232 duties

here serve a special remedial purpose similar to AD and Section 201 duties; (2) the Section 232

duties here are temporary in nature; and (3) deducting these Section 232 duties from NSC's U.S.

prices imposes an impermissible double remedy.  Moreover, treating these Section 232 duties as

ordinary customs duties would be inconsistent with the United States' World Trade Organization

obligations because the United States would be imposing duties on steel imports in excess of the

United States' bound tariff rates.

16.     For these reasons, the Department's deduction of the Section 232 duties on steel

imports from NSC's U.S. prices is not supported by substantial evidence and is not otherwise in

accordance with law.

**Count 2:     The Department's Application of Facts Otherwise Available and Adverse Inferences to the Unreported Downstream Sales by Certain Affiliated Home Market Resellers Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

17.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 13.

18.     The application of facts otherwise available and adverse inferences is governed by

19 U.S.C. § 1677e(a) and (b), respectively.  In particular, 19 U.S.C. § 1677e(a) authorizes the

use of facts otherwise available if necessary information is not on the record, or if an interested

party or any other person withholds requested information, fails to provide requested information

by the requested deadline or in the requested form and manner, significantly impedes a

proceeding, or provides information that cannot be verified.  Further, 19 U.S.C. § 1677e(b)

authorizes the use of adverse inferences (*i.e.*, AFA) if the Department "finds that an interested

party has failed to cooperate by not acting to the best of its ability to comply with a request for

information."

19.     The Department unlawfully applied AFA to the unreported affiliated companies'

resales in the *Final Results* because: (1) NSC cooperated by acting to the best of its ability to

comply with the Department's requests for information; (2) the Department ignored record

evidence that certain affiliated home market resellers did not sell NSC's hot-rolled steel in Japan

during the POR; (3) the Department failed to support its finding that NSC has the power to

compel its affiliated home market resellers to report their downstream sales; and (4) the application of neutral facts available or alternative AFA methodologies would be more consistent with the applicable case law and the Department's established practice.

20.     For these reasons, the Department's application of AFA to unreported downstream sales of certain of NSC's affiliated home market resellers is not supported by substantial evidence and is not otherwise in accordance with law.

**Count 3:     The Department's Failure to Include the U.S. Revenue for Extra Services in the Calculation of the Net U.S. Price Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

21.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 13.

22.     In its U.S. sales database, NSC reported the U.S. revenue for extra services provided by NSC's U.S. affiliate, Steelscape, in individual revenue fields for those services and also included those revenues for extra services in the reported total revenue field. In addition, NSC provided documentary support for the inclusion of the U.S. revenue for extra services in the net U.S. price for these sales by providing Steelscape's invoices that included separate line items for these services. In the *Final Results*, based on its statements in the Final Decision Memo at Comment 4, the Department acknowledged that the U.S. revenue for extra services should be included in the calculation of the net U.S. price and purported to do so by using the values NSC reported in the total revenue field (which would have included the extra service revenues) to calculate CEP. However, the Department did not in fact use the values NSC reported in the total revenue field to calculate CEP. Rather, just as in the *Preliminary Results*, the Department used only the gross unit price and the transportation-related revenue fields (and thus did not use the individually reported extra service revenue fields) in the calculation of CEP. As a result of this error, the Department continued to miscalculate the net U.S. price for certain U.S. sales.

23.     For these reasons, the Department's failure to include the U.S. revenue for extra services in the calculation of the net U.S. price is not supported by substantial evidence and is not otherwise in accordance with law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Court enter judgment as follows:

(1)   Sustaining its complaint herein;

(2)   Holding that the Department's determination is not supported by substantial evidence on the record and is otherwise not in accordance with law;

(3)   Remanding this administrative review to the Department with instructions to:

    (A)   Include in NSC's U.S. prices the Section 232 duties on steel imports;

    (B)   Apply facts otherwise available without an adverse inference to the unreported downstream sales by certain affiliated home market resellers; and

    (C)   Include in the calculation of the net U.S. price the U.S. revenue for extra services reported by NSC; and

(4)   Awarding such other and further relief as this Court may deem appropriate.

Respectfully submitted,

/s/ Richard L.A. Weiner

Richard L.A. Weiner
Rajib Pal
Shawn M. Higgins
Justin R. Becker
Alex L. Young

Sidley Austin LLP
1501 K Street N.W.
Washington, D.C. 20005
(202) 736-8000

Counsel to Nippon Steel Corporation

October 6, 2021