**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:     THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

———————————————————————— )
                                                                            )
NIPPON STEEL CORPORATION,                      )
                                                                            )
                        Plaintiff,                                )
                                                                            )
            v.                                                        )          Court No. 21-00533
                                                                            )
UNITED STATES,                                            )
                                                                            )
                        Defendant,                            )
                                                                            )
NUCOR CORPORATION, STEEL               )
DYNAMICS, INC., AND SSAB                    )
ENTERPRISES, LLC                                      )
                                                                            )
                        Defendant-Intervenors.        )
———————————————————————— )


———————————————————————— )
                                                                            )
NIPPON STEEL CORPORATION,                      )
                                                                            )
                        Plaintiff,                                )
                                                                            )
JFE SHOJI CORPORATION AND JFE         )
SHOJI AMERICA, LLC                                  )
                                                                            )
                        Plaintiff-Intervenors,            )
                                                                            )
            v.                                                        )          Court No. 22-00183
                                                                            )
UNITED STATES,                                            )
                                                                            )
                        Defendant,                            )
                                                                            )
NUCOR CORPORATION,                            )
                                                                            )
                        Defendant-Intervenor.          )
———————————————————————— )

| | |
|---|---|
| NIPPON STEEL CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 23-00112 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| NUCOR CORPORATION | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

## **DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL<br>BRIEFING AND MOTIONS FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:

DAVID RICHARDSON
Senior Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

November 17, 2023

KYLE S. BECKRICH
Trial Attorney
U.S. Dept. of Justice
Civil Division/National Courts
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendant

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF AUTHORITIES................................................................................ ii

RULE 56.2 STATEMENT................................................................................2

    I.    The Administrative Determinations Under Review .................................2

    II.   Issue Presented For Review...................................................................3

STATEMENT OF FACTS................................................................................3

    I.    Statutory Background..........................................................................3

    II.   Administrative Review History .............................................................5

SUMMARY OF ARGUMENT .........................................................................13

ARGUMENT................................................................................................14

    I.    Standard Of Review ...........................................................................14

    II.   Commerce's Determination That Section 232 Duties Are United States Import Duties For Purposes Of 19 U.S.C. § 1677a(c)(2)(A) Is Supported By Substantial Evidence And In Accordance With Law...............................................15

        A.   Deduction Of Section 232 Duties Under 19 U.S.C. § 1677a(c)(2)(A) Was Not Contrary To Law Or Unsupported By Substantial Evidence............15

            1.   NSC Has Failed To Exhaust Its Administrative Remedies Concerning Commerce's Findings That Section 232 Duties Were Included In NSC's U.S. Prices ...................................16

            2.   Deducting Section 232 Duties Does Not Violate The United States' Treaty Obligations ...........................................21

        B.   *Borusan II* Definitively Held That Section 232 Duties Imposed Under *Proclamation 9705* May Lawfully Be Deducted As "United States Import Duties".................................................................................22

            1.   *Borusan II* Does Not Conflict With Prior Circuit Precedent........23

            2.   *Borusan II* Did Not Misinterpret *Proclamation 9705*...................24

            3.   The Federal Circuit Has Addressed And Rejected NSC's "Additional Arguments" ...........................................28

CONCLUSION................................................................................................31

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*AIMCOR v. United States,*
   141 F.3d 1098 (Fed. Cir. 1998) ...................................................................................17

*Atl. Sugar, Ltd. v. United States,*
   744 F.2d 1556 (Fed. Cir. 1984) ...................................................................................14

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v United States,*
   63 F.4th 25 (Fed. Cir. 2023) ...................................................................................passim

*Cemex, S.A. v. United States,*
   384 F.3d 1314 (Fed. Cir. 2004) ...................................................................................23

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
   467 U.S. 837 (1984)............................................................................................... 14, 15

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938)......................................................................................................14

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966)......................................................................................................14

*Corus Staal BV. Dep't of Commerce,*
   395 F.3d 1343 (Fed. Cir. 2005) ...................................................................................21

*Crowley v. United States,*
   398 F.3d 1329 (Fed. Cir. 2005) ...................................................................................29

*Deacero S.A.P.I de C.V. v. United States,*
   No. 20-3924, 2021 WL 6067010 (Ct. Int'l Trade Dec. 20, 2021)...........................11

*Federal Energy Admin. v. Algonquin SNG, Inc.,*
   426 U.S. 548 (1976)......................................................................................................29

*Hormel v. Helvering,*
   312 U.S. 552 (1941)......................................................................................................18

*LMI-LA Metalli Industriale, S.p.A. v. United States,*
   712 F. Supp. 959 (Ct. Int'l Trade 1989)......................................................................17

*Nippon Steel Corp. v. United States,*
   458 F.3d 1345 (Fed. Cir. 2006) ...................................................................................14

*PAM, S.p.A. v. United States,*
   347 F. Supp. 2d 1362 (Ct. Int'l Trade 2004)...............................................................23

*Power Steel Co. v. United States,*
    No. 20-3771, 2021 WL 6098309 (Ct. Int'l Trade Dec. 23, 2021)...........................................11

*Rhone Poulenc Inc. v. United States,*
    899 F.2d 1185 (Fed. Cir. 1990) ............................................................................................17

*Sandvik Steel Co. v. United States,*
    164 F.3d 596 (Fed. Cir. 1998) ..............................................................................................17

*Suramerica de Aleaciones Laminadas, C.A. v. United States,*
    966 F.2d 660 (Fed. Cir. 1992) ..............................................................................................21

*Ta Chen Stainless Steel Pipe, Ltd. v. United States,*
    342 F. Supp. 2d 1191 (Ct. Int'l Trade 2004) .......................................................................17

*Ticaret A.S. v. United States,*
    494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) .......................................................................11

*Timken Co. v. United States,*
    354 F.3d 1334 (Fed. Cir. 2004) ............................................................................................14

*Transpacific Steel LLC v. United States,*
    4 F.4th 1306 (Fed. Cir. 2021) .........................................................................................22, 29

*Ugine and ALZ Belgium, Arcelor Stainless USA, LLC v. United States,*
    551 F.3d 1339 (Fed. Cir. 2009) ............................................................................................17

*Unemployment Compensation Comm'n v. Argon,*
    329 U.S. 143 (1946)..............................................................................................................17

*United States v. Eurodif S.A.,*
    555 U.S. 305 (2009).........................................................................................................14, 15

*United States v. L.A. Tucker Truck Lines Inc.,*
    344 U.S. 33 (1952)................................................................................................................17

*Wheatland Tube Co. v United States,*
    495 F.3d 1355 (Fed. Cir. 2007) ....................................................................................7, 8, 29

**Statutes**

19 U.S.C. § 1516a.........................................................................................................................14

19 U.S.C. § 1673...........................................................................................................................25

19 U.S.C. § 1677a.....................................................................................................................passim

19 U.S.C. § 1862 ................................................................................................3, 27

19 U.S.C. § 3538 ....................................................................................................22

28 U.S.C. § 2637 ....................................................................................................17

## Regulations

19 C.F.R. § 351.309 ...............................................................................................17

## Other Authorities

*Certain Hot-Rolled Steel Flat Products From Japan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019,* 86 Fed. Reg. 47,615 (Dep't of Commerce August 26, 2021) ....................................................2, 3

*Certain Hot-Rolled Steel Flat Products From Japan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020,* 87 Fed. Reg. 31,523 (Dep't of Commerce May 24, 2022) ...............................................................3

*Certain Hot-Rolled Steel Flat Products From Japan: Final Results of Antidumping Duty Administrative Review; 2020-2021,* 88 Fed. Reg. 28,500 (Dep't of Commerce, May 4, 2023)..3

*Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ..............................................................................passim

*Proclamation 9740 of April 30, 2018*, 83 Fed. Reg. 20,683 (May 7, 2018) .................................9

*Report on the Effect of Imports of Steel on the National Security: An Investigation Conducted Under Section 232 of the Trade Expansion Act of 1962,* 85 Fed. Reg. 40,202 (Dep't of Commerce July 6, 2020) ...................................................................................27

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:     THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

_____
                                          )
NIPPON STEEL CORPORATION,                 )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          Court No. 21-00533
                                          )
UNITED STATES,                            )
                                          )
                    Defendant,            )
                                          )
NUCOR CORPORATION, STEEL                  )
DYNAMICS, INC., AND SSAB                  )
ENTERPRISES, LLC                          )
                                          )
             Defendant-Intervenors.       )
_____ )


_____
                                          )
NIPPON STEEL CORPORATION,                 )
                                          )
                    Plaintiff,            )
                                          )
JFE SHOJI CORPORATION AND JFE             )
SHOJI AMERICA, LLC                        )
                                          )
             Plaintiff-Intervenors,       )
                                          )
          v.                              )          Court No. 22-00183
                                          )
UNITED STATES,                            )
                                          )
                    Defendant,            )
                                          )
NUCOR CORPORATION,                        )
                                          )
             Defendant-Intervenor.        )
_____ )

_____

                                          )
NIPPON STEEL CORPORATION,                 )
                                          )
                      Plaintiff,          )
                                          )
          v.                              )        Court No. 23-00112
                                          )
UNITED STATES,                            )
                                          )
                      Defendant,          )
                                          )
NUCOR CORPORATION                         )
                                          )
                      Defendant-Intervenor. )
_____          )

## __ORDER__

     Upon consideration of the motions for judgment upon the agency record, responses thereto, replies, and all other papers, it is hereby

     ORDERED that the motions are denied, and it is further

     ORDERED that judgment shall enter in favor of the United States in each of the above captioned cases.

Dated: _____, 2023                  _____
             New York, NY                            JUDGE

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| NIPPON STEEL CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 21-00533 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| NUCOR CORPORATION, STEEL DYNAMICS, INC., AND SSAB ENTERPRISES, LLC | ) ) ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

| | |
|---|---|
| NIPPON STEEL CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| JFE SHOJI CORPORATION AND JFE SHOJI AMERICA, LLC | ) ) |
| | ) |
| Plaintiff-Intervenors, | ) |
| | ) |
| v. | ) Court No. 22-00183 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| NUCOR CORPORATION, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

```
_____
                                )
NIPPON STEEL CORPORATION,       )
                                )
             Plaintiff,         )
                                )
      v.                        )        Court No. 23-00112
                                )
UNITED STATES,                  )
                                )
             Defendant,         )
                                )
NUCOR CORPORATION               )
                                )
             Defendant-Intervenor. )
_____ )
```

### DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFING AND MOTIONS FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade and this Court's July 18, 2023 order, defendant, the United States, respectfully responds to the supplemental briefing and motions for judgment on the administrative record filed by plaintiff, Nippon Steel Corporation (NSC). NSC challenges the final determinations of the United States Department of Commerce in the third (AR3), fourth (AR4) and fifth (AR5) administrative reviews of the antidumping duty order covering certain hot rolled steel flat products from Japan. As explained below, the motions should be denied because Commerce's determinations are supported by substantial evidence and are otherwise in accordance with law.

### RULE 56.2 STATEMENT

I.    **The Administrative Determinations Under Review**

This brief addresses three administrative review results. First, the brief addresses Commerce's determination in *Certain Hot-Rolled Steel Flat Products From Japan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-*

*2019,* 86 Fed. Reg. 47,615 (Dep't of Commerce August 26, 2021) (AR3[1] Final Results), and the accompanying Issues and Decision Memorandum (AR3 IDM), AR3_APPX 2461.  The period of review is October 1, 2018, through September 30, 2019.  Second, this brief addresses Commerce's determination in *Certain Hot-Rolled Steel Flat Products From Japan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020,* 87 Fed. Reg. 31,523 (Dep't of Commerce May 24, 2022) (AR4 Final Results), and the accompanying Issues and Decision Memorandum (AR4 IDM), AR4_APPX 3704-3717.  The period of review is October 1, 2019, through September 30, 2020.  Finally, this brief addresses Commerce's determination in *Certain Hot-Rolled Steel Flat Products From Japan: Final Results of Antidumping Duty Administrative Review; 2020-2021,* 88 Fed. Reg. 28,500 (Dep't of Commerce, May 4, 2023) (AR5 Final Results), and the accompanying Issues and Decision Memorandum (AR5 IDM), AR5_APPX 3277-3300.  The period of review is October 1, 2020, through September 30, 2021.

## II.   Issue Presented For Review

Whether Commerce's deduction of Section 232 duties from Nippon Steel Corporation's export prices is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

## I.   Statutory Background

On March 8, 2018, pursuant to the authority under Section 232 of the Trade Expansion Act of 1962 (Section 232), 19 U.S.C. § 1862, President Trump imposed a 25 percent *ad*

---

[1]  Citations to the Joint Appendix are designated APPX.  The designations AR3, AR4, and AR5 will be added as appropriate to indicate in which administrative review record the cited document is located.

*valorem* tariff on imports of steel articles from all countries, except Canada and Mexico,

effective March 23, 2018.  *See Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel*

*Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) (*Proclamation 9705*).

The President concurred with the Secretary of Commerce's finding that steel articles

were being imported into the United States in such quantities and under such circumstances as

to threaten to impair the country's national security.  *Id.* at cl. 5; *see* 19 U.S.C. § 1862(b)(3)(A).

The Secretary found that excessive steel imports were weakening the United States' internal

economy and shrinking its ability to meet national security steel production requirements in a

national emergency.  *Proclamation 9705* at cl. 2.  The goal of the 25 percent tariff was to

reduce imports to a level that would "ensure that domestic producers can continue to supply all

the steel necessary for critical industries and national defense." *Id.* at cl. 4-5, 8.  The President

stated that the new 25 percent tariff applied "in addition to any other duties, fees, exactions, and

charges applicable to such imported steel articles." *Id.* at cl. 2.

To establish the tariff, the President modified subchapter III, chapter 99, of the

Harmonized Tariff Schedule of the United States (HTSUS) to add a new heading, 9903.80.01,

which provided for an additional 25 percent tariff for "products of iron or steel provided for in

the tariff headings or subheadings enumerated in note 16 to this subchapter, except products of

Canada {or} of Mexico . . . or any exclusions that may be determined and announced by the

Department of Commerce." HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted

Mar. 29, 2018).  The President also added a new Note 16, subsection (a) of which provided:

> Heading 9903.80.01 sets forth the *ordinary customs duty* treatment
> applicable to all entries of iron or steel products from all countries,
> except products of Canada and of Mexico, classifiable in the
> headings or subheadings enumerated in this note.  Such goods shall
> be subject to duty as provided herein.  No special rates of duty
> shall be accorded to goods covered by heading 9903.80.01 under

4

any tariff program enumerated in general note 3(c)(i) to the tariff
schedule.  *All anti-dumping, countervailing, or other duties and
charges applicable to such goods shall continue to be imposed.*

*Proclamation 9705*, Annex (U.S. Note 16(a) (emphasis added)).  Consistent with the

President's instructions, the following row was added to the HTSUS:

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 9903.80.01 | 1/ | Products of iron or steel provided for in the tariff headings or subheadings enumerated in note 16 to this subchapter, except products of Canada, of Mexico, of Australia, of Argentina, of South Korea, of Brazil, or of the member countries of the European Union or any exclusions that may be determined and announced by the Department of Commerce................... | 1/ | 25% | | The duty provided in the applicable subheading + 25% |

HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted Mar. 29, 2018).  Imports of

steel rebar produced by NSC and entered after March 23, 2018 were thus subject to the 25

percent tariff.  *See Proclamation 9705* at cl. 2.

## II.      Administrative Review History

NSC was selected as a mandatory respondent in each of the three reviews.  Commerce

issued questionnaires to NSC, which included a Section 232 duty specific appendix, Appendix

V.  AR3 Questionnaire, Appendix V, frm. 161, AR3_APPX 1168; AR4 Questionnaire, Appendix

V, frm 161, AR4_APPX 1169; AR5 Questionnaire, Appendix V, frm. 161, AR5_APPX 1160.

In each Appendix V, Commerce asked NSC the following questions:

> 1. Please state the total Section 232 duties paid on your
> U.S. sales for the POR, if known and if applicable.  Reconcile this
> value to your general ledger and U.S. Customs and Border
> Protection 7501 Entry Forms, if available.
> 2. Please indicate which entity or entities paid the Section
> 232 duties related to your sales during the POR and, if not paid by
> {respondent}, indicate whether {respondent} provided a refund of
> the duties to the payor.
> 3. Have you applied for and been granted any exclusions
> for products affected by Section 232 duties for U.S. sales made

during the POR?  If so, please list all such exclusion requests, including the date of application, whether the exclusions have been granted and on what dates, and whether the duties have been refunded.

4. For each U.S. sale, create new fields in the U.S. sales database that report the date of entry, the entered value, the per-unit Section 232 duty paid (if any) as USDUTY2U, the vessel on which the merchandise was shipped, the Chapter 99 HTS code used to enter the merchandise, and the U.S. importer of record, if known.  In addition, please note in separate columns whether any exclusions have been granted for these Section 232 duties and whether those duties have been refunded.

5. Please provide a reconciliation between the total Section 232 duties reported in response to Question C.1 and the sale-specific amounts reported in the USDUTY2U field in response to question C.4.

AR3 Questionnaire, Appendix V, frm. 161, AR3_APPX 1168; AR4 Questionnaire, Appendix V, frm 161, AR4_APPX 1169; AR5 Questionnaire, Appendix V, frm. 161, AR5_APPX 1160.

In response to each questionnaire, NSC reported that Section 232 duties were paid by an affiliate, Nippon Steel Trading Americas, Inc. (NSTA), the importer of record, and that NSC did not reimburse NSTA for any of the Section 232 duties.  AR3 Questionnaire Response C, part 3, frm 76-77, AR3_APPX 3240-3241; AR4 Questionnaire Response Appendix V, frm. 17, AR4_APPX 83264; AR5 Questionnaire Response C, Appendix V, frm.108-109, AR5_APPX 84157-84158.  The Section 232 duties paid per metric ton by sale were reported in each review in fields 63, 61, and 65, respectively, of the Section C U.S. sales database under USDuty2U.  AR3 Questionnaire Response C, U.S. sales data, Part 2, frm. 13, AR3_APPX 3051; AR4 Questionnaire Response C, U.S. sales data, frm. 61and e.g. 62, AR4_APPX 82524-82526; and AR5 Questionnaire Response C, frm. 92, AR5_APPX 83752-83753.

In Commerce's preliminary results, Commerce deducted the Section 232 duties from NSC's reported U.S. sales prices as reported by NSC.  AR3 Preliminary Review Results Issues and Decision Memorandum (AR3 Prelim. IDM) at 15-18, AR3_APPX 2447-2450; AR4

Preliminary Review Results Issues and Decision Memorandum (AR4 Prelim. IDM) at 12-14,

AR4_APPX 3207-3209; AR5 Preliminary Review Results Issues and Decision Memorandum

(AR5 Prelim. IDM) at 11-12, AR5_APPX 3163-3164.

In these preliminary results, Commerce specifically found that the President exercised his

authority under Section 232, and:

> issued Proclamation 9705 that mandated, to address national
> security concerns, the imposition of a global tariff of 25 percent on
> imports of steel articles in order to reduce imports to a level that
> the Secretary assessed would enable domestic steel producers to
> use approximately 80 percent of existing domestic production
> capacity and thereby achieve long-term economic viability through
> increased production.

AR3 Prelim. IDM at 16, AR3_APPX 2448; AR4 Prelim. IDM at 12, AR4_APPX 3207; AR5

Prelim. IDM at 11, AR5_APPX 3163.   Commerce found that 19 U.S.C. § 1677a(c)(2)(A)

requires Commerce to adjust U.S. price for "the amount, if any, included in such price,

attributable to any additional costs, charges, or expenses, and United States import duties." AR3

Prelim. IDM at 16, AR3_APPX 2448; AR4 Prelim. IDM at 12, AR4_APPX 3207 (same); AR5

Prelim. IDM at 11, AR5_APPX 3163 (same).

Commerce then conducted an analysis to determine if the Section 232 duties were

"United States import duties" for purposes of 19 U.S.C. § 1677a(c)(2)(A) or were special duties

which should not be deducted under that statutory provision.  AR3 Prelim. IDM at 15-18,

AR3_APPX 2447-2450; AR4 Prelim. IDM at 12-14, AR4_APPX 3207-3209; AR5 Prelim. IDM

at 11-12, AR5_APPX 3163-3164.  Commerce relied upon an analytical framework affirmed by

the United States Court of Appeals for the Federal Circuit in *Wheatland Tube Co. v United*

*States*, 495 F.3d 1355, 1363 (Fed. Cir. 2007).  That framework distinguished "United States

import duties," *i.e.*, ordinary customs duties, to be deducted under the statute from special duties,

like antidumping duties, which would not be deductible because "Congress did not intend all duties to be considered United States import duties."  AR3 Prelim. IDM at 16, AR3_APPX 2448 (citing *Wheatland*, 495 F.3d at 1361); AR4 Prelim. IDM at 12, AR4_APPX 3207 (same); AR5 Prelim. IDM at 11, AR5_APPX 3163 (same).  In the review at issue in *Wheatland*, Commerce found that section 201 safeguard duties were like antidumping duties and not deductible as "United States import duties" under the statute. AR3 Prelim. IDM at 16, AR3_APPX 2448 (citing *Wheatland*, 495 F.3d at 1362); AR4 Prelim. IDM at 12, AR4_APPX 3207 (same); AR5 Prelim. IDM at 11, AR5_APPX 3163 (same).

The *Wheatland* framework examined whether section 201 safeguard duties were remedial like antidumping duties that provide relief from unfairly trade imports or like ordinary duties, which are not remedial.  AR3 Prelim. IDM at 16, AR3_APPX 2448; AR4 Prelim. IDM at 12, AR4_APPX 3207; AR5 Prelim. IDM at 11, AR5_APPX 3163.  Commerce also considered the fact that section 201 duties, like antidumping duties, require an injury finding, while ordinary duties do not.  AR3 Prelim. IDM at 16, AR3_APPX 2448; AR4 Prelim. IDM at 12-13, AR4_APPX 3207-3208; AR5 Prelim. IDM at 11, AR5_APPX 3163.  Commerce considered the temporary nature of both section 201 and antidumping duties and distinguished those duties from "ordinary customs duties," which are not terminable except by an act of Congress.  AR3 Prelim. IDM at 16, AR3_APPX 2448; AR4 Prelim. IDM at 12-13, AR4_3207-3208; AR5 Prelim. IDM at 11, AR5_APPX 3163.  In sustaining Commerce's decision, the Federal Circuit held that given the similarities of the nature of section 201 duties and antidumping duties, imposing both would result in a substantially overlapping remedy.  AR3 Prelim. IDM at 16, AR3_APPX 2448 (citing *Wheatland*, 495 F.3d at 1365); AR4 Prelim. IDM at 13, AR4_APPX 3208 (same); AR5 Prelim. IDM at 11, AR5_APPX 3163 (same).

8

Applying this framework, Commerce found that Section 232 duties are "not akin" to the special duties examined in *Wheatland*. AR3 Prelim. IDM at 16, AR3_APPX 2448; AR4 Prelim. IDM at 13, AR4_APPX 3208; AR5 Prelim. IDM at 11, AR5_APPX 3163. Commerce found that Section 232 duties were not remedial in nature but that *Proclamation 9705* "focused upon national security prerogatives separate and apart from . . . remedy to the domestic industry." AR3 Prelim. IDM at 17, AR3_APPX 2449; AR4 Prelim. IDM at 13, AR4_APPX 3208; AR5 Prelim. IDM at 12, AR5_APPX 3164. Commerce noted that another, related, Presidential Proclamation referred to the Section 232 duties as "ordinary" customs duties and stated that "{a}ll anti-dumping or countervailing duties, or other duties and charges applicable to such goods shall continue to be imposed, except as may be expressly provided herein." AR3 Prelim. IDM at 17, AR3_APPX 2449 (citing *Proclamation 9740 of April 30, 2018*, 83 Fed. Reg. 20,683 (May 7, 2018) (Proclamation 9740); AR4 Prelim. IDM at 13, AR4_APPX 3208 (same); AR5 Prelim. IDM at 12, AR5_APPX 3164 (same).

NSC's administrative case briefs in each of the three reviews made the same arguments. Nippon Steel Corporation AR3 Administrative Case Brief (AR3 Nippon Admin. Brief), AR3_APPX 3911; Nippon Steel Corporation AR4 Administrative Case Brief (AR4 Nippon Admin. Brief), AR4_APPX 3635; Nippon Steel Corporation AR5 Administrative Case Brief (AR5 Nippon Admin. Brief), AR5_APPX 3181. NSC argued that Commerce unlawfully deducted Section 232 duties because: (1) Section 232 duties are more similar to antidumping duties and section 201 safeguard duties than ordinary customs duties and therefore did not qualify for the statutory deduction for ordinary U.S. customs duties; and (2) treating Section 232 duties as ordinary customs duties would be inconsistent with the United States' World Trade Organization (WTO) obligations. *See* AR3 Nippon Admin. Brief at 5-22, AR3_APPX 3924-

3941; *see also* AR4 Nippon Admin. Brief at 5-25, AR4_APPX 3648-3668; AR5 Nippon Admin. Brief at 5-34, AR5_APPX 3195-3224.

In response, Nucor Corporation, a domestic producer, argued that: (1) Section 232 duties did qualify as ordinary customs duties; and (2) including Section 232 duties as ordinary customs duties did not result in double counting.  AR3 Nucor Administrative Rebuttal Brief (AR3 Nucor Admin Brief) at 16-25, AR3_APPX 3973-4006; AR4 Nucor Administrative Case Brief (AR4 Nucor Admin. Rebuttal Brief) at 8-17, AR4_APPX 3694-3703; AR5 Nucor Administrative Rebuttal Brief (AR5 Nucor Admin. Brief) at 2-10, AR5_APPX 3257-3265.

In its final results, Commerce continued to determine that Section 232 duties were U.S. import duties to be deducted under 19 U.S.C. 1677a(c)(2)(A).  AR3 Final IDM at 10-11, AR3_APPX 2470-71; AR4 Final IDM at 11, AR4_APPX 3714; AR5 Final IDM at 10, AR5_APXX 3286.  Commerce incorporated by reference its analyses in the preliminary results of the reviews.  AR3 Final IDM at 9, AR3_APPX 2469; AR4 Final IDM at 8, AR4_APPX 3711; AR5 Final IDM at 7, AR5_APPX 3283.  Commerce addressed NSC's argument that Section 232 duties were like Section 201 safeguard duties.  Commerce explained that Sections 201 and 232 were different laws with different purposes.  AR3 Final IDM at 9, AR3_APPX 2469; AR4 Final IDM at 9, AR4_APPX 3712; AR5 Final IDM at 7-8, AR5_APPX 3283-3284.  Commerce explained that the purpose of the antidumping duties and section 201 duties was to remedy injury to the domestic industry while Section 232 duties were intended to address the threat of impairment to national security.  AR3 Final IDM at 9-10, AR3_APPX 2469-2470; AR4 Final IDM at 10-11, AR4_APPX 3713-3714; AR5 Final IDM at 8-9, AR5_APPX 3284-3285. Commerce reiterated that relevant Presidential Proclamations state that Section 232 duties were to be collected in addition to the AD and CVD duties.  AR3 Final IDM at 10, AR3_APPX 2470;

10

AR4 Final IDM at 11, AR4_APPX 3714; AR5 Final IDM at 9-10, AR5_APPX 3285-3286.  In

response to NSC's argument that treating Section 232 duties resulted in double counting of the

antidumping duties, Commerce explained that reducing the U.S. price by the amount of Section

232 duties was what was contemplated under 19 U.S.C. § 1677a(c)(2)(A).  AR3 Final IDM at

10, AR3_APPX 2470; AR4 Final IDM at 11, AR4_APPX 3714; AR5 Final IDM at 10,

AR5_APPX 3286.

Beginning in the fourth administrative review, Commerce provided additional support of

its determinations and responded to other arguments that NSC raised.  First, by the time

Commerce issued the final results of the fourth administrative review, this Court had sustained

Commerce's determination that section 232 duties were not special duties analogous to section

201 or antidumping duties but ordinary customs duties to be deducted under 19 U.S.C.

§ 1677a(c)(2)(A).  AR4 Final IDM at 8, AR4_APPX 3711 (citing *Borusan Mannesmann Boru*

*Sanayi ve Ticaret A.S. v. United States*, 494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021); *Deacero*

*S.A.P.I de C.V. v. United States*, No. 20-3924, 2021 WL 6067010 (Ct. Int'l Trade Dec. 20, 2021);

*Power Steel Co. v. United States*, No. 20-3771, 2021 WL 6098309 (Ct. Int'l Trade Dec. 23,

2021); AR5 Final IDM at 7, AR5_APPX 3283 (same).

Commerce also addressed NSC's argument that Section 232 duties were like section 201

duties because they were temporary in duration.  AR4 Final IDM at 9, AR4_APPX 3712; AR5

Final IDM at 8, AR5_APPX 3284.  Commerce reasoned that, like ordinary customs duties that

are permanent in duration unless modified by Congress, the duration of Section 232 duties are

subject to Presidential discretion and have no statutory termination date.  AR4 Final IDM at 9-

10, AR4_APPX 3712-3713; AR5 Final IDM at 8, AR5_APPX 3284.

NSC also argued that the combination of Section 232 duties and other duties exceeded the bound duties negotiated under the 1994 General Agreement on Tariffs and Trade (GATT). AR4 Final IDM at 11, AR4_APPX 3714; AR5 Final IDM at 10, AR5_APPX 3286. Commerce responded that Article 21(b) of the GATT explicitly excludes actions taken for national security reasons. AR4 Final IDM at 11, AR4_APPX 3714; AR5 Final IDM at 10, AR5_APPX 3286. Thus, Commerce determined that the President's decision under Section 232 does not violate United States' obligations under the GATT. AR4 Final IDM at 11, AR4_APPX 3714; AR5 Final IDM at 10, AR5_APPX 3286.

In conclusion, Commerce determined, in all three reviews, that: (1) NSC, through its affiliates, paid Section 232 duties on the sales for which it reported such duties paid, (2) charged the first unaffiliated U.S. customer for the duties; and (3) because Section 232 duties were ordinary customs duties, those Section 232 should be deducted from the U.S. sales prices in which they were reported under 19 U.S.C. § 1677a(c)(2)(A).

Notably, while Commerce was conducting the fourth and fifth administrative reviews, *Borusan* was appealed to the Court of Appeals for the Federal Circuit, which affirmed the judgment. The Federal Circuit held that Commerce may lawfully treat Section 232 duties as ordinary customs duties deductible under 19 U.S.C. § 1677a(c)(2)(A). *Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v United States*, 63 F.4th 25 (Fed. Cir. 2023) (*Borusan II*).

NSC challenges Commerce's determinations to deduct Section 232 duties in all three administrative reviews. As we demonstrate below, NSC's challenge is foreclosed by *Borusan II*. This Court should sustain all three final determinations on this issue.

**<u>SUMMARY OF THE ARGUMENT</u>**

In all three determinations, Commerce deducted Section 232 from U.S. price as "United States import duties."  In *Borusan II*, the Federal Circuit unequivocally held that Commerce's decision to do so was lawful.  Simply put, *Borusan II* controls the disposition of the issue before this Court, and this Court should sustain Commerce's decisions on this basis.

In order to avoid the binding effect of *Borusan II*, NSC argues, for the first time, that Commerce did not find any record evidence that NSC included Section 232 duties in its U.S. prices.  Because NSC did not exhaust this argument administratively, this Court should decline to entertain this belated argument now.

NSC also argues that *Borusan II* should not apply because deducting Section 232 duties from U.S. price in the context of this case would require the United States to violate its treaty obligations with respect to Japan.  Even accepting this as true, this Court, of course, would still be required to apply *Borusan II*.  NSC's argument, however, is also incorrect: the treaty obligations specifically except duties implemented for national security concerns.  Import restrictions imposed pursuant to Section 232, such as the duties imposed by *Proclamation 9705*, by definition, are intended to address threats to national security.

Finally, having failed to establish a viable path around *Borusan II*, NSC argues that the case was wrongly decided.  Notwithstanding NSC's disagreement with the outcome, the Court of International Trade is bound to follow the precedent of the decision of the court of appeals, and no further inquiry is needed.  Even if the Court were to consider NSC's arguments, NSC fails to demonstrate any error in the Federal Circuit's decision.

## ARGUMENT

### I.     Standard Of Review

This Court sustains any determination, finding, or conclusion by Commerce unless it is

unsupported by substantial evidence, or otherwise not in accordance with law.  19 U.S.C.

§ 1516a(b)(1)(B); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).  "Substantial

evidence" means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial

evidence may be "less than the weight of the evidence," and the possibility of drawing

inconsistent conclusions from the record does not make Commerce's findings unsupported by

substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  Thus, a party

challenging Commerce's determination under the substantial evidence standard "has chosen a

course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352

(Fed. Cir. 2006) (citation and internal quotation marks omitted), and the Court sustains

Commerce's factual determinations as long as they are reasonable and supported by the record as

a whole, even if some evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v.

United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

When the Court reviews Commerce's statutory interpretations, it employs the two-

pronged test established in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837

(1984).  The Court first examines "whether Congress has directly spoken to the precise question

at issue," and if it has, the agency must comply with Congress's clear intent. *Id*. at 842-43.  If,

however, "the statute is silent or ambiguous with respect to the specific issue, the question for the

court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at

843.  In such cases, "{a}ny reasonable construction of the statute is a permissible construction,"

*Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004) (citation and quotation marks

omitted), and Commerce's "interpretation governs in the absence of unambiguous statutory

language to the contrary or unreasonable resolution of language that is ambiguous." *Eurodif*,

555 U.S. at 316 (citation omitted).  The Court "need not conclude that the agency construction

was the only one it permissibly could have adopted to uphold the construction, or even the

reading the court would have reached if the question initially had arisen in a judicial

proceeding." *Chevron*, 467 U.S. at 843 n.11.  Indeed, "the whole point of *Chevron* is to leave

the discretion provided by the ambiguities of a statute with the implementing agency." *Eurodif*,

555 U.S. at 316 (citation omitted).

II.    **Commerce's Determination That Section 232 Duties Are United States Import
       Duties For Purposes Of 19 U.S.C. § 1677a(c)(2)(A) Is Supported By Substantial
       Evidence And In Accordance With Law**

        In these three administrative reviews, Commerce determined that Section 232 duties

constitute "United States import duties" under the antidumping statute and deducted them from

NSC's United States price.  AR3 Final IDM at 10-11, AR3_APPX 2470-2471; AR4 Final IDM

at 11, AR4_APPX 3714; AR5 Final IDM at 10, AR5_APPX 3286.  The Federal Circuit has

affirmed the lawfulness of this finding in *Borusan II*.  NSC cannot demonstrate that Commerce's

deduction of Section 232 duties from U.S. price is unlawful or unsupported by substantial

evidence.  Accordingly, this Court should sustain Commerce's deduction of Section 232 duties

from NSC's U.S. prices in all three administrative reviews.

        A.    **Deduction Of Section 232 Duties Under 19 U.S.C. § 1677a(c)(2)(A) Was Not
              Contrary To Law Or Unsupported By Substantial Evidence**

        Recognizing that this Court has no choice but to apply *Borusan II* as binding precedent,

NSC presents two arguments why the decision does not control the outcome of these cases.

First, NSC argues, *for the first time*, that Commerce did not find any record evidence that NSC

15

included Section 232 duties in its U.S. prices.  Second, NSC argues that deducting such duties to

the imports from Japan at issue in these cases would violate the United States' treaty obligations.

Neither argument is persuasive.

    1.    NSC Has Failed To Exhaust Its Administrative Remedies Concerning
              Commerce's Findings That Section 232 Duties Were Included In NSC's U.S.
              Prices

      In all three administrative reviews, Commerce made factual findings that NSC included

Section 232 duties in the price to its first unrelated customer.  In the preliminary results,

Commerce deducted Section 232 duties from NSC's reported U.S. sales prices as reported by

NSC.  AR3 Prelim. IDM at 15-18, AR3_APPX 2447-2450; AR4 Prelim. IDM at 12-14,

AR4_APPX 3207-3209; AR5 Prelim. IDM at 11-12, AR5_APPX 3163-3164.  In the final results

of the reviews, Commerce continued to determine that Section 232 duties were U.S. import

duties to be deducted under 19 U.S.C. 1677a(c)(2)(A) and included in NSC's U.S. price to its

first unaffiliated purchaser.  AR3 Final IDM at 8, AR3_APPX 2468 ("NSC included section 232

duties in the price of subject merchandise sold to unaffiliated customers in the United States . .

."); AR4 Final IDM at 8, AR4_APPX 3711 (same); AR5 Final IDM at 7, AR5_APPX 3283

(same).

      Not once during any of the three proceedings did NSC claim that Section 232 duties were

not included in the price to its first unrelated customer.  NSC has not cited a single record

document supporting this alleged fact.  Nor did NSC raise the issue in any briefing or dispute

Commerce's finding.  Now, for the first time, Nippon Steel claims, *not* that they did not include

the Section 232 duties in the price to their customers, but that Commerce has not identified

record evidence that they had included such duties.  Pl. Br. at 11-20. NSC has failed to exhaust

its administrative remedies and may not raise the issue for the first time in this Court.

"In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  A "reviewing court usurps the agency's function when it sets aside an agency determination upon a ground not theretofore presented and deprives the {agency} of an opportunity to consider the matter, make its ruling, and state the reason for its action."  *Unemployment Compensation Comm'n v. Argon*, 329 U.S. 143, 155 (1946); *see also United States v. L.A. Tucker Truck Lines Inc.*, 344 U.S. 33, 37 (1952); *Rhone Poulenc Inc. v. United States*, 899 F.2d 1185, 1189-1190 (Fed. Cir. 1990); *LMI-LA Metalli Industriale, S.p.A. v. United States*, 712 F. Supp. 959, 968 (Ct. Int'l Trade 1989).

Accordingly, a plaintiff must exhaust administrative remedies.  *See Ugine and ALZ Belgium, Arcelor Stainless USA, LLC v. United States*, 551 F.3d 1339, 1347 (Fed. Cir. 2009); *see also Sandvik Steel Co. v. United States*, 164 F.3d 596, 599-602 (Fed. Cir. 1998) (a party is not entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted).  A party that fails to exhaust administrative remedies may not raise the issue *de novo* before the trial court.  *AIMCOR v. United States*, 141 F.3d 1098, 1111-12 (Fed. Cir. 1998).

"The prescribed remedy for challenging Preliminary Results issued by {Commerce} is to file a case brief with the agency setting forth objections."  *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 342 F. Supp. 2d 1191, 1205 (Ct. Int'l Trade 2004).  Commerce's regulations require that a case brief "must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results, including any arguments presented before the date of publication of the preliminary determination or preliminary results."  19 C.F.R. § 351.309(c)(2).  NSC never raised this issue or challenged Commerce's finding during three

17

complete administrative proceedings.  Applying the exhaustion doctrine, it should not be able to raise the issue now.

While there are exceptions to the doctrine of administrative exhaustion, none of them apply.  This Court has recognized the following limited exceptions to the exhaustion requirement: (1) plaintiff raises a pure question of law that does not require further agency involvement; (2) plaintiff did not have timely access to the confidential record; (3) an intervening judicial interpretation has changed the agency result; and (4) raising the argument at the administrative level would have been futile.  *See Corus Staal BV v. United States*, 30 I.T.R.D. (BNA) 2111, n.11 (Ct. Int'l Trade 2006).  However, absent an exception to the doctrine of exhaustion of administrative remedies, a reviewing court should not consider an issue that a complainant failed to raise at the administrative level.  *Hormel v. Helvering*, 312 U.S. 552, 557 (1941).

None of the exceptions apply.  Whether the reported Section 232 duties are included in NSC's reported U.S. prices is a question of fact, not law.  NSC had access to the confidential record and Commerce's preliminary review results calculations in each of the three administrative reviews.  There has been no intervening judicial interpretation that affects the interpretation of 19 U.S.C. § 1677a(c)(2)(A) concerning that "United States import duties" *in the price to the first unaffiliated customer* must be deducted.[2]  And finally, raising the issue would not have been futile at the administrative level.  Had the issue been raised, Commerce would have had to address it during any of the three administrative proceedings.  Accordingly, NSC has failed to exhaust the issue and its argument should be rejected.

---

[2]  Indeed, the intervening judicial precedent, *Borusan II*, supports Commerce's deduction of Section 232 duties.

Even if the Court were to excuse NSC's failure to exhaust, NSC's argument fails to demonstrate that Commerce's decision is unsupported by substantial evidence. As explained above, NSC does not contend that it excluded Section 232 duties in its U.S. price to its first unaffiliated customers in the United States, nor has it cited record evidence to demonstrate that it did not. *See* Pl. Br. at 11-20. Instead, NSC argues that the record evidence does not prove that the duties were included. NSC further claims that, "the more logical conclusion" is that its affiliates absorbed the duties and did not pass them on. Pl. Br. at 20.

None of NSC's arguments lead to "the more logical conclusion" that its affiliates absorbed the duties and did not pass them on. First, NSC attempts to confuse the issue with facts about "multi-party transactions." Pl. Br. at 15. For dumping purposes, there are two parties, (1) NSC and its affiliates and (2) the first unaffiliated customer. Commerce must use the price to the first unaffiliated party, and thus the transactions between affiliated parties are not relevant to Commerce's analysis. 19 U.S.C. §§ 1677a(a), (b). The only question is whether the price to the first unaffiliated party includes Section 232 duties. Commerce determined at every stage of its reviews that the price included Section 232 duties, and no party disputed that factual determination.

Second, NSC argues that its order filling process is "agnostic" as to the source of the hot rolled steel at issue, "which makes it implausible" that Section 232 duties were included in the price charged to the first unaffiliated customer. Pl. Br. at 15-17. However, NSC reported in its U.S. sale database on a per sale, per ton amount of Section 232 duties paid by NSTA. AR3 Questionnaire Response C, part 3, frm. 76-77, AR3_APPX 3240-3241; AR4 Questionnaire Response Appendix V, frm. 17, AR4_APPX 83264; AR5 Questionnaire Response Appendix V, frm. 108-109, AR5_APPX 84157-84158. NSC knew, or at least should have known, that

19

Section 232 duties were paid and that those duties were paid at 25 percent because the steel was imported into the United States after the effective date of *Proclamation 9705*. Accordingly, NSC's claimed agnosticism is not supported by the record.

Third, NSC argues that because the invoice did not have a line item for Section 232 duties, they must not be included. Pl. Br. at 17-19. Most of the hot rolled steel that NSC sold in the United States were constructed export price sales that were further manufactured by an affiliate into downstream steel products prior to being sold to the unaffiliated party. Whether NSC and its affiliates chose to provide a separate line item for Section 232 duties associated with the importation of the hot rolled steel input used in the further manufacturing process on its invoice for the downstream product is not evidence that those duties are not included in the price of the downstream product.

At bottom, NSC faults Commerce for accepting as true a fact that went unchallenged in each administrative review. NSC likewise faults Commerce for not addressing arguments that it never raised below. Should the Court agree that the issue is preserved, the issue should be remanded to Commerce to address. Nucor, the petitioner and part of the U.S. domestic industry, as well as NSC are both entitled to a properly calculated dumping margin.

Because NSC was completely silent during the entire course of three administrative reviews on Commerce's treatment of NSC's U.S. price to the first unaffiliated purchaser, it is inappropriate for NSC to raise the issue for the first time in its supplemental briefing. Further, NSC does not and cannot identify any record evidence supporting its claim Section 232 duties were *not* included in the U.S. price. The Court should affirm Commerce's decisions in each of the reviews that NSC's reported U.S. prices did include Section 232 duties.

2.      Deducting Section 232 Duties Does Not Violate The United States' Treaty
Obligations

NSC argues that if *Borusan II* is applied to this case, the United States will be forced to

violate its treaty obligations under the 1994 GATT.  Pl. Br. at 20-25.  Namely, NSC argues that

permitting Commerce to treat Section 232 duties as U.S. import duties would result in the

imposition of ordinary customs duties on steel imports from Japan that exceed its bound tariff

rates and violate the GATT.  NSC is wrong.  As an initial matter, NSC's argument is not one for

this Court to consider.  Indeed, "if U.S. statutory provisions are inconsistent with the GATT or

an enabling agreement, it is strictly a matter for Congress."  *Corus Staal BV. Dep't of Commerce*,

395 F.3d 1343, 1348 (Fed. Cir. 2005); *Suramerica de Aleaciones Laminadas, C.A. v. United

States*, 966 F.2d 660, 668 (Fed. Cir. 1992) ("The GATT does not trump domestic legislation; if

the statutory provisions at issue here are inconsistent with the GATT, it is a matter for Congress

and not this court to decide and remedy.").

Moreover, even if this Court were to consider NSC's argument, Article 21(b) of the

GATT explicitly excludes actions taken for national security reasons.  AR4 Final IDM at 11,

AR4_APPX 3714 (citing Article 21(b) of the GATT 1994); AR5 Final IDM at 10, AR5_APPX

3286 (same).  Thus, the import measures imposed pursuant to Section 232 do not violate United

States obligations under the GATT.  AR4 Final IDM at 11, AR4_APPX 3714; AR5 Final IDM at

10, AR5_APPX 3286.

NSC cites decisions by the dispute settlement body of the World Trade Organization

(WTO), claiming that the national security exception cannot be invoked for "political or

economic differences between members."  Pl. Br. at 23-24.  However, under United States law,

WTO decisions are not self-executing and must specifically be enacted under a Section 129 or

Section 123 proceeding under U.S. law to be cited as precedent.  *Corus Staal*, 395 F.3d at 1348;

s*ee also* 19 U.S.C. § 3538 (Section 129 proceeding) and § 3533 (Section 123 proceeding).

NSC's invocation of the *Charming Betsy* doctrine is insufficient to avoid the import of *Borusan II*, which is binding authority on this court, unlike WTO decisions.

Moreover, NSC boldly claims that the very existence of a steel-producing industry is not a national security issue but is instead an ordinary customs duty issue.  Pl. Br. at 25.  Again, NSC's complaint is not one that can be considered by this Court, because whether there exists a threat of impairment to national security, notwithstanding the existence of a domestic steel industry, is a matter reserved to the President's exercise of judgment.  *Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1324 (Fed. Cir. 2021).  As *Borusan II* correctly observed, the President's *Proclamation* addressed why the President, in his discretion, determined a national security issue existed.  *See Borusan II*, 63 F.4th at 35 ("The President determined that national security was threatened by the unsustainably low utilization of domestic steel-producing capacity, an underutilization tied to imports of steel . . . notwithstanding that antidumping duties had been in place for three decades on certain imports covered by the proclamation's duty.").  NSC's arguments on this point do not undermine the applicability of *Borusan II*.

B.   ***Borusan II* Definitively Held That Section 232 Duties Imposed Under *Proclamation 9705* May Lawfully Be Deducted As "United States Import Duties"**

The Federal Circuit has held that *Proclamation 9705* established a Section 232 duty, which, by the terms of the proclamation, renders the duties imposed "ordinary customs duties" deductible under 19 U.S.C. § 1677a(c)(2)(A).  *Borusan II*, 63 F.4th at 27.  NSC seeks to sidestep this binding authority by arguing that *Borusan II* was wrongly decided.  Pl. Br. at 20-36. Specifically, NSC argues that: (1) the Federal Circuit's focus on the Presidential intent in the language of *Proclamation 9705* conflicts with its prior precedent and violates principles of

statutory interpretation; (2) the Federal Circuit misinterpreted the proclamation; and (3) the

Federal Circuit did not address additional arguments not presented to the Court.  Pl. Br. at 25-36.

As we demonstrate below, NSC's arguments are unpersuasive.

First and foremost, this Court is bound to follow *Borusan II*.  This Court and panels of

the Federal Circuit are both bound "to follow {Federal Circuit} precedent unless it is overruled

by the Supreme Court or an *en banc* decision of {the Federal Circuit}."  *Cemex, S.A. v. United*

*States*, 384 F.3d 1314, 1321 n.5 (Fed. Cir. 2004); *PAM, S.p.A. v. United States*, 347 F. Supp. 2d

1362, 1370 (Ct. Int'l Trade 2004).  Indeed, since the Federal Circuit issued its decision, other

judges of this Court have applied *Borusan II* to sustain Commerce's treatment of  Section 232

duties as "ordinary custom duties."  *See, e.g.*, *Borusan Mannesmann Boru Sanayi ve Ticaret A.S.*

*v. United States*, No. 21-00132, Slip. Op. 2023-78 (Ct. Int'l Trade May 17, 2023); *ICDAS Celik*

*Enerji Tersane ve Ulasim Sanayi, A.S. v. United States*, No. 21-00306, Slip. Op. 2023-124 (Ct.

Int'l Trade Aug. 23, 2023).

NSC concedes that only the Federal Circuit, sitting *en banc*, could overrule *Borusan II*.

Pl. Br. at 25.  Accordingly, the Court need not consider NSC's arguments that *Borusan II* was

wrongly decided.  Nonetheless, to preserve our defenses and out of an abundance of caution, we

briefly explain why NSC's arguments are unpersuasive.

1.      <u>*Borusan II* Does Not Conflict With Prior Circuit Precedent</u>

NSC argues that *Borusan II* conflicts with prior Federal Circuit precedent because, unlike

in *Wheatland*, the court did not explicitly rely upon the *Chevron* framework for statutory

interpretation.  Pl. Br. at 26-27.  *Borusan II* does not conflict with *Wheatland*.  The Federal

Circuit explained why it found it unnecessary to apply the *Chevron* framework in this case.

*Borusan II*, 63 F.4th at 36.  The court held that under the circumstances of this case, the language

23

of *Proclamation 9705* is distinguishable from the section 201 proclamation at issue in *Wheatland*. *Id.*

The Federal Circuit held that the language of *Proclamation 9705* "requires that its duty be treated as a 'United States import duty' to be subtracted under § 1677a(c)(2)(A). *Id.* In *Wheatland*, on the other hand, there was no comparable language defining the import duty status of section 201 duties being imposed. *Id.* The Federal Circuit further explained that under the language of the proclamation in *Wheatland*, there was an issue of the section 201 duties overlapping with the antidumping duties, but there was no similar overlap in the language of *Proclamation* 9705. *Id.*

NSC characterizes this difference as a change in the Federal Circuit's analysis to a "presidential-intent-focused approach" rather than congressional intent, as in *Wheatland*. Pl. Br. at 27. But the Federal Circuit used the same analysis in both cases:

> This proclamation-specific approach is consistent with our decision in the § 201 setting in *Wheatland*, where, as described above, our approval of Commerce's determination relied in part on specifics of the particular proclamation at issue there and on Commerce's own declaration that it is for the President, in the duty-creating action under the § 201 regime, to determine the duty's relationship to antidumping duties.

*Borusan II*, 63 F.4th at 34. The court held that *Proclamation 9705* "makes clear that the duty newly being imposed was to add to, and not partly or wholly offset, the antidumping duties that would be due without the new duty." *Id.*

Therefore, *Borusan II* does not conflict with prior authority.

2.    *Borusan II* Did Not Misinterpret *Proclamation 9705*

NSC next argues that the Federal Circuit misinterpreted *Proclamation 9705*. Pl. Br. at 29-35. NSC argues that the Federal Circuit wrongly determined that "the only fair reading of

24

Proclamation 9705 is that, when applied to an article covered by antidumping duties, the Proclamation 9705 and antidumping duties must together result in a full imposition of both duties {and} that result requires . . . subtraction of the Proclamation 9705 duty from the U.S. price." Pl. Br. at 29 (quoting *Borusan II*, 63 F.4th at 35). NSC claims that this conclusion is wrong because deducting Section 232 duties from U.S. price results in higher duties than the President intended. But NSC offers no support for this assertion. Pl. Br. at 29. NSC claims that subtracting Section 232 duties results in those duties being factored in "a second time in setting the level of {antidumping} duties." *Id*. at 30. However, as explained below, the actual effect of removing Section 232 duties from the U.S. price is to make the dumping calculation neutral with regard to Section 232 duties.

Antidumping duties are not considered to be deductible U.S. import duties because to deduct them would actually double-count the dumping duties. In other words, the statute imposes the dumping duties to force the respondents to unilaterally increase their U.S. prices so that those prices are not below the respondent's prices in other markets. 19 U.S.C. § 1673(1) ("If . . . {Commerce} determines that . . . foreign merchandise is being, or is likely to be, sold in the United States at less than fair value . . . then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the normal value exceeds the export price (or constructed export price) for the merchandise."). If Commerce imposes an antidumping duty, which is paid, but then deducts it from the U.S. price in its dumping calculation, the price of the product is lowered by the amount of the antidumping duty creating a second antidumping duty of the same amount on the product, essentially double counting the duty. The Federal Circuit has described this as a "spiraling circularity." *Borusan II*, 63 F.4th at 35.

However, other U.S. import duties, such as Section 232 duties, must be deducted from the U.S. price or they will distort the dumping calculation by being added to the U.S. price, when they are not in the home market or third country price and are not remedies for dumping.  If the expense of Section 232 duties is only on the U.S. side of the equation, the dumping calculation will be distorted by artificially inflating the U.S. price and artificially reducing the dumping finding by the amount of the Section 232 duty, artificially reducing the remedy to which the U.S. domestic industry is entitled.  Thus, it is appropriate to deduct the Section 232 duties as U.S. import duties under 19 U.S.C. § 1677a(c)(2)(A) to prevent Section 232 duties from affecting the calculations.  Indeed, the Federal Circuit determined "{t}here is no such circularity problem with recognizing that the Proclamation 9705 duty on imports is a 'United States import duty.'" *Borusan II*, 63 F.4th at 35.

Accordingly, Commerce's deduction of Section 232 duties *does not* factor Section 232 duties in a second time, as deducting antidumping duties does.  Instead, the deduction removes Section 232 duties from the U.S. price side of the calculation so that Commerce can achieve the calculation based on product prices required by the statute for all U.S. import duties.   NSC provides a mathematical example in which a respondent will have to pay more duties if both Section 232 and antidumping duties are imposed.  Pl. Br. at 33-34.  But that is the natural result of the imposition of antidumping duties to remedy dumping and Section 232 duties to address national security concerns under separate statutes with separate purposes and is not a flaw in the application of both provisions.

Next, NSC argues that *Borusan II* misinterprets *Proclamation 9705* because Section 232 duties are an alternative to remedial antidumping and countervailing duties.  Pl. Br. at 30.  But import measures imposed pursuant to Section 232, such as the duties imposed by Proclamation

9705, are, by the language of the statute, intended to address the threat of impairment to national security. *See* 19 U.S.C. § 1862; *Borusan II*, 63 F.4th at 34-35. Further, as the Federal Circuit held, *Proclamation 9705* makes clear that the newly imposed duty was to be added to, and not partly or wholly offset, the antidumping duties that are otherwise due. *Borusan II*, 63 F.4th at 34.

NSC argues that the effect of Section 232 duties is the same as antidumping or countervailing duties, so they must be treated the same. Pl. Br. at 30-31. Again, NSC ignores both the language of *Proclamation 9705* and Section 232 itself, which provide that the purpose of Section 232 duties is to address the threat of impairment to national security – a different purpose than the remedial purpose of antidumping or countervailing duties. 19 U.S.C. § 1862(c)(1)(A)(2); *Proclamation 9705* at cl. 5; *see also Borusan II*, 63 F.4th at 35. As stated in *Borusan II*:

> The President determined that national security was threatened by the unsustainably low utilization of domestic steel-producing capacity, an underutilization tied to imports of steel . . . notwithstanding that antidumping duties had been in place for three decades on certain imports covered by the proclamation's duty.

*Borusan II*, 63 F.4th at 35. Thus, Section 232 duties and antidumping/countervailing duties serve different reasons.

NSC next argues that the report prepared by the Secretary of Commerce as a predicate for the President's Section 232 determination supports a finding that Section 232 duties are a substitute for antidumping and countervailing duties. Pl. Br. at 31 (citing Section 232 Report, 85 Fed. Reg. at 40,207-08). The Secretary's report observed that antidumping and countervailing duties could not adequately prevent the erosion of the steel domestic industry. Section 232 Report, 85 Fed. Reg. at 40,210. This discussion does not in any way change the national security

27

purpose of Section 232 itself, or any import measures imposed under the President's statutory authority.

NSC argues that because, from its point of view, the antidumping duties and Section 232 duties appear to address the same problem, there could be another fair interpretation of *Proclamation 9705* that does not result in the imposition of Section 232 duties "on top" of antidumping duties. Pl. Br. at 32. However, as explained above, the two import measures address different problems. Further, while the President could have determined that Section 232 duties were a substitute for antidumping duties, he did not. In order to give effect to the term "in addition to" in *Proclamation 9705*, Section 232 must be deducted from U.S. price. "Otherwise, the Proclamation 9705 duty would be offset substantially or completely by a reduction in the antidumping duty itself (through an increase in the U.S. price and therefore a decrease in the dumping margin), defeating the evidence 'in addition to' prescription of Proclamation 9705." *Borusan II*, 63 F.4th at 35.

Finally, NSC suggests that the word "applicable," as used in *Proclamation 9705* creates an ambiguity. Proclamation 9705 directs that "{a}ll anti-dumping, countervailing and other duties and charges applicable to such goods shall continue to be imposed" creates an ambiguity about what level of duties may remain *applicable*. Pl. Br. at 32. No ambiguity exists. On its face, "applicable" means the duties calculated and imposed by Commerce under the antidumping duty law.

3.    The Federal Circuit Has Addressed And Rejected NSC's "Additional Arguments"

NSC states that it intends to ask for *en banc* review of *Borusan II* because the Federal Circuit did not address arguments that it raises here, including: (1) that all relevant aspects of the statute and its legislative history, and the particular facts upon which Section 232 duties are

based, reveal that Section 232 duties do not serve a general revenue purpose but instead serve a special remedial purpose; (2) the fact that, in NSC's view, Section 232 duties are temporary in that they do not require an act of Congress to be removed; and (3) that deducting Section 232 duties results in double counting of the Section 232 duties.  This Court, of course, must still follow and apply *Borusan II*.  *See Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005) ("Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court.").  In any event, as we briefly explain below, the Federal Circuit addressed all three arguments.

Regarding the first argument, both the Supreme Court and the Federal Circuit have held that Congress, under Section 232, granted the President broad powers to craft the actions necessary to address national security issues caused by imports.  *Federal Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 570 (1976) (highlighting the breadth of Presidential authority under the statute to address national security concerns); *Transpacific*, 4 F.4th at 1322-1333 (holding that an analysis of the statute, legislative history, and amendments demonstrate a broad Congressional grant of authority to the President to take not only an action but continuing action under Section 232 to resolve national security issues relating to imports).  In *Borusan II*, the Federal Circuit held that based on that broad grant of authority, the focus of the analysis should be on Presidential intent in the language of the President's proclamations.  *Borusan II*, 63 F.4th at 34.

NSC's arguments about the purpose of ordinary customs duties and its claim that Section 232 duties are temporary unlike ordinary customs duties are arguments to be considered when applying *Chevron*.  *Wheatland*, 495 F.3d at 1363.  The Federal Circuit held that *Proclamation 9705* contained no ambiguity requiring a *Chevron* step two analysis.  *Id.* at 34-35 ("We conclude

that the only fair reading of Proclamation 9705 is that, when applied to an article covered by antidumping duties, the Proclamation 9705 and antidumping duties must together result in a full imposition of both duties.").  Moreover, the Federal Circuit explicitly found based on its Presidential-proclamation focused analysis, it was unnecessary to a to address distinctions between section 232 duties and section 201 duties or distinction between "normal" or "special" duties.  *Id.* at 36 ("The foregoing analysis is enough . . . to uphold Commerce's decision here. We do not decide whether the same result could soundly rest on distinctions between § 232 and the § 201 regime more generally, and the distinction between 'normal' and 'special' duties articulated by Commerce and approved by the Trade Court here.  That approach presents challenges that we may avoid.  The Commerce decision sufficiently rests on the proclamation-specific basis set forth above.").  Accordingly, the Federal Circuit addressed why NSC's first two "additional arguments" should be rejected.

The concern about double counting was likewise addressed in *Borusan II*.  The Federal Circuit acknowledged that antidumping duties and duties imposed pursuant to Section 232 served two different purposes.  *Id.* at 34-35.  Thus, the Federal Circuit considered that Section 232 duties would apply in addition to antidumping duties, and determined that such application was required under *Proclamation 9705*.

Ultimately, this Court does not adjudicate whether *en banc* review by Federal Circuit is warranted.  NSC provides no basis for this Court to disregard *Borusan II*, which mandates the conclusion that Commerce's determinations were lawful.

**CONCLUSION**

For these reasons, we respectfully request that the Court deny NSC's Rule 56.2 motions

for judgment on the agency record and sustain Commerce's determinations.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Tara K. Hogan
TARA K. HOGAN
Assistant Director

DAVID RICHARDSON                          /s/Kyle S. Beckrich
Senior Attorney                           KYLE S. BECKRICH
U.S. Department of Commerce               Trial Attorney
Office of Chief Counsel for               Commercial Litigation Branch
Trade Enforcement and Compliance          Civil Division
1401 Constitution Avenue, NW.             U.S. Department of Justice
Washington, DC 20230-0001                 P.O. Box 480
                                          Ben Franklin Station
                                          Washington, DC 20044
                                          Telephone: (202) 616-0463
                                          Email: Kyle.Beckrich@usdoj.gov

November 17, 2023                         *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 8,779 words, including text, footnotes, and headings.

/s/Kyle S. Beckrich
Kyle S. Beckrich