**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **NIPPON STEEL CORPORATION,**<br><br>       **Plaintiff,**<br><br>   **v.**<br><br>**UNITED STATES,**<br><br>       **Defendant,**<br><br>   **and**<br><br>**NUCOR CORPORATION, STEEL DYNAMICS, INC., and SSAB ENTERPRISES LLC,**<br><br>       **Defendant-Intervenors.** | **Before:  Hon. Stephen A. Vaden, Judge**<br><br>**Court No. 21-00533** |
| **NIPPON STEEL CORPORATION,**<br><br>       **Plaintiff,**<br><br>**JFE SHOJI CORPORATION and JFE SHOJI AMERICA, LLC,**<br><br>       **Plaintiff-Intervenors,**<br><br>   **v.**<br><br>**UNITED STATES,**<br><br>       **Defendant,**<br><br>   **and**<br><br>**NUCOR CORPORATION,**<br><br>       **Defendant-Intervenor.** | **Court No. 22-00183** |

**NIPPON STEEL CORPORATION,**

> **Plaintiff,**

> **v.**

**UNITED STATES,**

> **Defendant,**

> **and**

**NUCOR CORPORATION,**

> **Defendant-Intervenor.**

**Court No. 23-00112**

## DEFENDANT-INTERVENOR NUCOR CORPORATION'S SUPPLEMENTAL RESPONSE BRIEF

**Alan H. Price, Esq.**
**Christopher B. Weld, Esq.**
**Maureen E. Thorson, Esq.**
**Jeffrey O. Frank, Esq.**
**Enbar Toledano, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

***Counsel to Nucor Corporation***

**Dated: December 1, 2023**

**Ct. No. 21-00533**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 1

     A.    NSC Has Not Exhausted Its Claim That the Records Show That Section 232 Duties Were Not Included in Its U.S. Prices ....................................3

     B.    NSC's Claims Regarding U.S. International Obligations Are Without Merit...........................................................................................................6

     C.    NSC Does Not Persuade That *Borusan II* Was Wrongly Decided........................7

III.    CONCLUSION................................................................................................. 11

Ct. No. 21-00533

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................4

*INS v. Elias-Zacarias*,
   502 U.S. 478 (1992)....................................................................................................5

*Kimble v. United States*,
   991 F.3d 1238 (Fed. Cir. 2021)..................................................................................4

*Medellín v. Texas*,
   552 U.S. 491 (2008)....................................................................................................7

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006)..................................................................................5

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
   494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) ............................................................9

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v United States*,
   63 F.4th 25 (Fed. Cir. 2023) ............................................................................ *passim*

*Wheatland Tube Co. v. United States*,
   495 F.3d 1355 (Fed. Cir. 2007)..................................................................................8

**Statutes**

19 U.S.C. § 1677a(c)(2)(A) ...........................................................................................4, 9, 10

19 U.S.C. § 1677f-1(d) ..........................................................................................................9

19 U.S.C. § 3512(c)(l)(B) ......................................................................................................7

Tariff Act of 1930 ..........................................................................................................2, 7, 9

**Administrative Materials**

*Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United
   States*, 83 Fed. Reg. 11,625 (Executive Office of the President Mar. 15, 2018)............ *passim*

ii

Ct. No. 21-00533

**Other Authorities**

Elizabeth J. Drake, *Treatment of Section 232 Duties in Commerce Antidumping Proceedings* ..................................................................................................................10

H.R. Doc. No. 103-826, vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3773 ..............................6

S. Rep. No. 103-412 (1994) ..............................................................................................7

Ct. No. 21-00533

## I.      INTRODUCTION

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we hereby submit the following response to the September 19, 2023 supplemental brief of Plaintiff Nippon Steel Corporation ("NSC").  *See* Pl.'s Suppl. Opening Br. (Sept. 18, 2023), Ct. No. 21-00533, ECF No. 64 ("NSC's Br."). For the reasons discussed below, in conjunction with those presented by Defendant the United States in its November 17, 2023 responsive filing, Nucor respectfully requests that this Court reject NSC's arguments and affirm the final results of the third, fourth and fifth administrative reviews of the antidumping duty order covering certain hot-rolled steel flat products from Japan. *See* Def.'s Resp. to Pl.'s Suppl. Briefing and Mots. for J. on the Agency R. (Nov. 17, 2023), Ct. No. 21-00533, ECF No. 65 ("Government's Br.").

## II.      BACKGROUND

NSC challenges the final results issued by the U.S. Department of Commerce's ("Commerce") in the 2018-2019, 2019-2020, and 2020-2021 administrative reviews of the antidumping duty order covering certain Japanese hot-rolled flat products. Compl. (June 30, 2023), Ct. No. 23-00112, ECF No. 9 at 1; Compl. (July 22, 2022), Ct. No. 22-00183, ECF No. 9 at 1; Compl. (Oct. 6, 2021), Ct. No. 21-00533, ECF No. 9 at 1. In its appeal of each review, NSC challenges Commerce's deduction of Section 232 duties from NSC's U.S. prices in calculating the company's dumping margins. Compl. (June 30, 2023), Ct. No. 23-00112, ECF No. 9 at 5-6; Compl. (July 22, 2022), Ct. No. 22-00183, ECF No. 9 at 5-6; Compl. (Oct. 6, 2021), Ct. No. 21-00533, ECF No. 9 at 6-7.

On August 19, 2022, after full briefing of Ct. No. 21-00533 and remand of an unrelated issue in that case, the Court stayed Ct. Nos. 21-00533 and 22-00183 pending the final decision by the Court of Appeals for the Federal Circuit ("CAFC") as to the lawfulness of deducting

**Ct. No. 21-00533**

Section 232 duties in calculating dumping margins in CAFC Ct. No. 21-2097, *Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v United States.* Order (Aug. 19, 2022), Ct. No. 21-00533, ECF No. 50; Order (Aug. 19, 2022), Ct. No. 22-00183, ECF No. 34.[1] On March 15, 2023, the CAFC issued its determination, finding that Commerce's deduction of Section 232 duties from U.S. prices is not only permitted but reflects "the best interpretation" of relevant provisions of the Tariff Act of 1930 ("the Act"). *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v United States*, 63 F.4th 25, 36 (Fed. Cir. 2023) ("*Borusan II*"). The CAFC also found that "the only fair reading of" the Presidential Proclamation that imposed Section 232 duties on Japanese hot-rolled steel flat products "requires . . . subtraction of the {232 duties} from the U.S. price" used in dumping calculations. *Borusan II*, 63 F.4th at 35, discussing *Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625, 11,629 (Executive Office of the President Mar. 15, 2018) ("Proclamation 9705").

The CAFC issued its mandate on May 8, 2023. *See, e.g.*, Notice from the Court (May 8, 2023), Ct. No. 21-00533, ECF No. 54. That same day, the Court requested that the parties in Ct. Nos. 21-00533 and 22-00183 prepare and file a status report by June 7, 2023, informing the Court as to how the cases should proceed. *See, e.g.*, *id.* After the parties filed their report, in which NSC requested supplemental briefing, the Court held a status conference and thereafter set a schedule for combined, supplemental briefing regarding NSC's three appeals. *See, e.g.*, Joint Status Report and Proposed Briefing Schedule (June 7, 2023), Ct. No. 21-00533, ECF No. 56; Notice from

---

[1]     Ct. No. 23-00112, challenging the final results of the 2020-2021 administrative review, was not filed until after the CAFC issued its *Borusan II* decision, and was accordingly not stayed pending that decision. *See* Order for Statutory Inj. upon Consent (June 5, 2023), Ct. No. 23-00112, ECF No. 1; Order (Aug. 19, 2022), Ct. No. 21-00533, ECF No. 50.

Ct. No. 21-00533

the Ct. re: Teams Status Conference (June 8, 2023), Ct. No. 21-00533, ECF No. 58; Order (July 18, 2023), Ct. No. 21-00533, ECF No. 62.

NSC argues in its supplemental brief that notwithstanding *Borusan II*, Commerce's deduction of Section 232 duties from NSC's U.S. prices in the third, fourth, and fifth administrative reviews was in error. NSC first argues that the reviews' records do not support Commerce's conclusion that Section 232 duties were included in its U.S. prices, such that there were any duties to deduct. NSC's Br. at 11-20. NSC then renews its argument, first made in its pre-*Borusan II* briefs in Ct. No. 21-00533, that the deduction is inconsistent with the United States' obligations under the World Trade Organization Agreements and the *Charming Betsy* canon.  NSC's Br. at 20-25; *see also* Mem. of P. & A. in Supp. of Mot. for J. on the Agency R. (Feb. 25, 2022), Ct. No. 21-00533, ECF No. 31 at 30-33 ("NSC's 56.2 Br."). Third, NSC argues that *Borusan II* was both wrongly decided and that the *Borusan II* Court did not consider certain arguments that NSC raises in its appeals. NSC's Br. at 25-36.

In its response, the Government cogently and comprehensively rebuts NSC's claims. *See generally* Government's Br. Nucor accordingly adopts the Government's arguments and limits this brief to additional responses to NSC's claims that Nucor believes may be of value to the Court.

A.     **NSC Has Not Exhausted Its Claim That the Records Show That Section 232 Duties Were Not Included in Its U.S. Prices**

In its supplemental brief, NSC argues that Commerce failed to adduce any record support for its conclusion that Section 232 duties were included in the prices that NSC charged its first unrelated U.S. customers. NSC's Br. at 11-20. But as the Government points out, NSC failed to exhaust this argument in any of the three administrative reviews on appeal. Government's Br. at 16-20. Because exhaustion is required before the Court may entertain a claim, and no exceptions

**Ct. No. 21-00533**

to the exhaustion requirement apply here, *see id*., the Court should dismiss NSC's arguments in this regard.

Nucor additionally asserts that NSC has waived this argument by failing to plead it with sufficiency. Compl. (June 30, 2023), Ct. No. 23-00112, ECF No. 9 at 5-6; Compl. (July 22, 2022), Ct. No. 22-00183, ECF No. 9 at 5-6; Compl. (Oct. 6, 2021), Ct. No. 21-00533, ECF No. 9 at 6-7. The complaints in Ct. Nos. 21-00533 and 22-00183 challenge the deduction of Section 232 duties on a purely legal basis, arguing that the deduction is premised on an unreasonable interpretation of 19 U.S.C. § 1677a(c)(2)(A) and is inconsistent with the United States' international obligations. Compl. (July 22, 2022), Ct. No. 22-00183, ECF No. 9 at 5-6; Compl. (Oct. 6, 2021), Ct. No. 21-00533, ECF No. 9 at 6-7. For that matter, NSC's briefs in Ct. No. 21-00533, which was fully briefed prior to the Court's stay, reflect no substantial evidence challenge to Commerce's finding regarding the duty-inclusiveness of NSC's U.S. prices. *See, e.g.*, NSC's 56.2 Br.

Only the complaint in Ct. No. 23-00112 asserts that Commerce lacked substantial record evidence to support a finding that NSC's U.S. prices were duty-inclusive. *See* Compl. (June 30, 2023), Ct. No. 23-00112, ECF No. 9. But that complaint provides no factual detail in this regard, merely asserting that Commerce's finding that NSC's U.S. prices in the 2020-2021 review were duty-inclusive is "not supported by any record evidence." *Id.*

Plaintiffs in federal litigation must include in their complaints all legal challenges that they intend to present. *See, e.g.*, *Kimble v. United States*, 991 F.3d 1238, 1244 (Fed. Cir. 2021) (finding Eighth Amendment challenge to tax penalty waived because plaintiff did not plead it in her complaint). Further, claims must be pled with sufficient factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And even where a complaint pleads an issue with sufficiency, the claim is waived if not argued in the

Ct. No. 21-00533

plaintiff's opening brief. *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

Here, NSC's complaints in two of its three appeals alleged no deficiency in the evidence supporting Commerce's conclusion that NSC's U.S. prices were duty-inclusive, and the company pled no facts that would support such an allegation. *See generally* Compl. (July 22, 2022), Ct. No. 22-00183, ECF No. 9; Compl. (Oct. 6, 2021), Ct. No. 21-00533, ECF No. 9. Moreover, in the only one of NSC's appeals to have been briefed thus far, NSC's opening brief discussed no such claim. *See generally*, NSC's 56.2 Br. While NSC's third complaint alleged a lack of record evidence sufficient to support Commerce's conclusion that NSC's U.S. prices were duty-inclusive, it pled no particular facts from which one could plausibly conclude that this was the case. *See generally* Compl. (June 30, 2023), Ct. No. 23-00112, ECF No. 9. Accordingly, while NSC's failure to exhaust its administrative remedies is dispositive of the company's claims regarding the record evidence underpinning Commerce's deduction of 232 duties, Nucor submits that NSC's failure to properly plead the issue provides an additional reason for the Court to decline to entertain it.

That said, even if the Court were to entertain NSC's claim, NSC does not carry its burden under the substantial evidence standard. To prevail in a substantial evidence challenge, NSC must demonstrate that no reasonable reading of the records could support the conclusion that the prices that NSC charged to the first unaffiliated customer in the United States were duty-inclusive. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992) (stating that in fact-intensive situations, agency conclusions should be reversed only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion). Rather than meet this burden, NSC merely speculates in its supplemental brief that the reviews' records could plausibly be read differently than Commerce read them, notwithstanding NSC's complete failure to challenge

Ct. No. 21-00533

Commerce's reading of the records at the agency level. *See* Government's Br. at 19-20; *see also* NSC's Br. at 11-20. Such speculation does not furnish grounds for NSC to prevail, given the standard of review. Accordingly, even if the Court were to find that NSC had properly preserved its substantial evidence challenge at the agency level, and had appropriately pled (and briefed) it, NSC's substantial evidence challenge would fail.

Nonetheless, should the Court find that Commerce's determination in each administrative review is inconsistent with the substantial evidence standard, Nucor agrees with the Government that the Court should remand to Commerce for further explanation and consideration. As the Government states, Commerce was given no opportunity to respond to or address NSC's record evidence claims at the agency level, as NSC did not make them there. Government's Br. at 20. Rather than simply accept NSC's view of the record as inevitable, and assuming the Court does not simply dismiss NSC's claim for failure to exhaust, failure to properly plead, and/or failure to carry the required evidentiary burden, the Court should provide Commerce with an opportunity to address NSC's claims on remand.

### B.      NSC's Claims Regarding U.S. International Obligations Are Without Merit

NSC next renews its claim that Commerce's deduction of Section 232 duties from NSC's U.S. prices was inconsistent with the United States' legal obligations under the 1994 General Agreement on Tariffs and Trade ("GATT 1994") and the *Charming Betsy* canon. NSC's Br. at 20-25; *see also* NSC's 56.2 Br. at 30-33. But as Nucor pointed out in its response brief in Ct. No. 21-00533, and as the Government further explains, this Court cannot consider this claim. Def.-Intervenor Nucor Corporation's Resp. Br. (May 13, 2022), Ct. No. 21-00533, ECF No. 37 at 8-10 and 28-30 ("Nucor's 56.2 Resp. Br."); Government's Br. at 21-22.  The GATT 1994 is not "self-executing"—*i.e.*, the agreement is not part of U.S. law.  *See, e.g.*, H.R. Doc. No. 103-826,

6

Ct. No. 21-00533

vol. 1, at 25 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3773, 3797 (noting that neither the Uruguay Round Agreements nor any amendments thereto are self-executing); *see also* S. Rep. No. 103-412, at 13 (1994); *Medellín v. Texas*, 552 U.S. 491, 504–05 (2008) (finding that because the Optional Protocol of the Vienna Convention on Consular Relations was not a self-executing treaty, its provisions were not incorporated into U.S. law). Further, U.S. law expressly prohibits any person or entity other than the U.S. Government from challenging, "in any action brought under any provision of law, any action or inaction by any department, agency, or other instrumentality of the United States, any State, or any political subdivision of a State on the ground that such action or inaction is inconsistent with" certain agreements, including the GATT 1994. 19 U.S.C. § 3512(c)(l)(B); *see also id.* § 3511(d)(1) (identifying the GATT 1994 as one of the agreements subject to, *inter alia*, *id.* § 3512(c)(l)(B)). As such, NSC's claim in this regard is without merit.

### C.    NSC Does Not Persuade That *Borusan II* Was Wrongly Decided

Finally, NSC argues that *Borusan II* was wrongly decided or that, at least, the *Borusan II* Court did not consider certain arguments that NSC raises. NSC's Br. at 25-36. But as the Government notes, *Borusan II* binds this Court. Government's Br. at 23. Moreover, NSC's arguments are unpersuasive. *Id.* at 23-30. While NSC claims that the *Borusan II* decision is inconsistent with prior CAFC precedent regarding the deduction of Section 201 duties from U.S. prices in calculating antidumping duty margins, the *Borusan II* Court explained that this is not so. *Id.* at 23-24; *Borusan II*, 63 F.4th at 34, 36, discussing *Wheatland Tube Co. v. United States*, 495 F.3d 1355 (Fed. Cir. 2007). For that matter, had the *Borusan II* Court chosen not to explicitly address *Wheatland Tube*, it would not follow that the *Borusan II* decision was in error.

As NSC itself has conceded, the Act does not define the "United States import duties" that must be deducted from U.S. prices in antidumping calculations with any particularity.

Ct. No. 21-00533

NSC's 56.2 Br. at 10. Nor are Section 232 duties and Section 201 duties the same. The two kinds of duties arise from separate statutes that address separate concerns. *See, e.g.*, Nucor's 56.2 Resp. Br. at 4-8, Reflecting this fact, the 232 duties here were imposed pursuant to an entirely different process than the 201 duties at issue in *Wheatland Tube*. *See, e.g.*, *id.* at 4-8, 17-24.

Notably, the Section 232 duties were instituted by a Presidential Proclamation that explicitly required "{a}ll anti-dumping, countervailing, or other duties and charges" to "continue to be imposed." Proclamation 9705, 83 Fed. Reg. at 11,629. The *Borusan II* Court found that "the only fair reading" of this and other language in Proclamation 9705 requires Commerce to calculate antidumping duties as if the Section 232 duties did not exist, and thus to deduct Section 232 duties from U.S. prices. *See Borusan II*, 63 F.4th at 35; NSC's Br. at 29-35; *Borusan II*, 63 F.4th at 35. While NSC challenges this reading, the company's argument is premised less in the language of Proclamation 9705 than in extra-documentary sources, such as Commerce's report in the underlying Section 232 investigation. NSC's Br. at 30-32.

To the extent that NSC does engage with the language of Proclamation 9705, it offers an odd, cramped reading that does not comport with normal usage. *Id*. at 32-33. For example, it reads the word "applicable," as it modifies the phrase "any other duties," to indicate that antidumping duties are not, in fact, applicable to goods subject to the Section 232 duties, or at least not in their entirety. *See id.*; *see also* Proclamation 9705, 83 Fed Reg. at 11,629 ("This rate of duty, which is in addition to any other duties, fees, exactions, and charges *applicable* to such imported steel articles, shall apply to imports of steel articles from all countries . . . .") (emphasis added). That is an unwarranted denotative burden to place on a word that, naturally read, simply indicates that where antidumping or other duties are already in place as to a product covered by the Section 232 duties, the Section 232 duties are to be imposed "in addition to" those previously-existing duties.

Ct. No. 21-00533

Proclamation 9705, 83 Fed. Reg. 11,629-30. The language certainly does not clearly or naturally evince an intent that the "applicable" duties should be lowered or otherwise adjusted in relation to the imposition of 232 duties.

Nor is NSC's mathematical example persuasive. NSC's Br. at 33-34. As the Government explains, the purpose of deducting "United States import duties" from U.S. prices pursuant to 19 U.S.C. § 1677a(c)(2)(A) is to enable fair comparisons between U.S. prices and the prices that foreign producers charge in their home markets ("normal value"). *See* Government's Br. at 25-26. Specifically, the Act directs Commerce to determine antidumping duty margins by comparing the prices at which companies under review (known as "respondents") sell the goods subject to an antidumping duty order in their home market against the prices that they charge for those goods in the United States.  *See, e.g.*, 19 U.S.C. § 1677f-1(d); *see also id.* §§ 1677a, 1677b(a), 1677b(b). The Act requires Commerce to make certain adjustments to a respondent's home market and U.S. prices before comparing them.  *Id.* § 1677a(c); *id.* § 1677b(a)(6).  These adjustments are meant to ensure that the home market and U.S. prices are expressed on a comparable basis.  *See, e.g.*, *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 494 F. Supp. 3d 1365, 1373 (Ct. Int'l Trade 2021) ("*Borusan I*").  Because import duties are, naturally, not charged by the United States on goods sold in a respondent's home market, the statutory reduction of U.S. prices by "United States import duties" brings a respondent's duty-inclusive U.S. prices to the same duty-exclusive basis as home market prices.  *See, e.g.*, *id.*

With the foregoing in mind, assume that an importer has one entry of goods covered by an antidumping duty order, corresponding to a normal value (without Section 232 duties, as the home market does not have such duties) of $150, and a U.S. price (when stripped of any 232 duties) of $100. The importer, which is affiliated with the foreign producer, pays $25 Section 232 duties on

Ct. No. 21-00533

the entry, raising the price to the first unaffiliated customer to $125. If the Section 232 duties are deducted from the price to the unaffiliated customer, both the U.S. price and normal value will be compared on a duty-exclusive basis, and the full amount of dumping ($50) will be revealed. By contrast, failure to deduct Section 232 duties pursuant to 19 U.S.C. § 1677a(c)(2)(A) would essentially refund the importer the $25 Section 232 duties, or alternatively, fail to fully offset the $50 dumping. *See* Elizabeth J. Drake, *Treatment of Section 232 Duties in Commerce Antidumping Proceedings*, 28 U. Miami Int'l & Comp. L. Rev. 1, 13–14 (2021).

That result is not only inconsistent with the language of Proclamation 9705, it makes no sense as a general matter. By placing U.S. prices and normal value on a comparable duty-exclusive basis, Commerce's deduction of Section 232 duties puts an importer in no worse position—indeed, in no different position—than if the Section 232 duties were never imposed. If Section 232 duties had never been imposed, they could not have been paid, and U.S. prices could never have reflected them. Commerce's deduction of Section 232 duties from an importer's U.S. prices does no more than place those prices on the same basis that they would have been had the Section 232 duties not existed at all.

Finally, NSC claims that it has raised certain arguments that were not presented to the *Borusan II* Court. NSC's Br. at 35. The Government and Nucor have addressed the relevant arguments in their response briefs in Ct. No. 21-00533, and explained why they are unpersuasive. *See, e.g.,* Nucor's 56.2 Resp. Br. at 16-28 (addressing arguments that (1) Section 232 duties have a "special remedial purpose" more akin to that of Section 201 or antidumping duties than "ordinary customs duties," (2) Section 232 duties are "temporary," and (3) deduction of Section 232 duties from U.S. prices results in a double remedy). But as the Government points out, Government's Br. at 29-30, substantively identical arguments were in fact made to the *Borusan II* Court. *See* Br. of

10

Ct. No. 21-00533

Pls.-Appellants Borusan Mannesmann Boru Sanayi ve Ticaret A.S. and Borusan Mannesmann Pipe U.S. Inc. (Aug 24, 2021), CAFC Ct. No. 21-2097, ECF No. 16 at 25-31, 40-44 (arguing that Section 232 duties are more akin to antidumping and Section 201 duties than ordinary customs duties), 31-34 (arguing that Section 232 duties are temporary), and 34-40 (arguing that deduction of Section 232 duties from U.S. prices creates a double remedy).  The *Borusan II* Court, however, rejected such arguments or found it unnecessary to address them given the plain language of Proclamation 9705. *See* Government's Br. at 29-30; *see also Borusan II*, 63 F.4th at 34-36. There is no need for this Court to address arguments that the CAFC has already dismissed or found superfluous, given the binding nature of *Borusan II*.

III.   **CONCLUSION**

For the reasons above, Nucor respectfully requests that the Court reject the arguments raised by NSC and affirm Commerce's deduction of Section 232 duties from NSC's U.S. prices in the third, fourth, and fifth administrative reviews of the antidumping duty order on Japanese hot-rolled steel flat products as supported by substantial evidence and otherwise in accordance with law.

                              Respectfully submitted,

                               */s/ Christopher B. Weld*
                              Alan H. Price, Esq.
                              Christopher B. Weld, Esq.
                              Maureen E. Thorson, Esq.
                              Jeffrey O. Frank, Esq.
                              Enbar Toledano, Esq.

                              **WILEY REIN LLP**
                              2050 M Street, NW
                              Washington, DC 20036
                              (202) 719-7000

                              *Counsel to Nucor Corporation*

Dated: December 1, 2023

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Response Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 3,558 words.

*<u>/s/ Christopher B. Weld</u>*
(Signature of Attorney)

<u>Christopher B. Weld</u>
(Name of Attorney)

<u>Nucor Corporation</u>
(Representative Of)

<u>December 1, 2023</u>
(Date)