

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA  •  ASIA PACIFIC  •  EUROPE

+1 202 736 8020
SHAWN.HIGGINS@SIDLEY.COM

December 22, 2023

**PUBLIC DOCUMENT**

**FILED ELECTRONICALLY**

The Honorable Mario Toscano
Clerk of the Court
U.S. Court of International Trade
One Federal Plaza
New York, NY 10278-0001

> Re:   <u>Nippon Steel Corporation v. United States, Court Nos. 21-00533, 22-00183, and 23-00112</u>

Dear Mr. Toscano:

On behalf of Nippon Steel Corporation ("NSC"), plaintiff in the above-captioned proceedings, we hereby file NSC's supplemental reply brief as requested by the Court in its Orders in each proceeding dated July 18, 2023.  As per the Court's Orders, we are filing this supplemental reply brief in Court No. 21-00533, but with the understanding that it also applies in Court Nos. 22-00183 and 23-00112.

Copies of the attached document have been served on the parties listed in the attached certificate of service.

Please do not hesitate to contact the undersigned if you have any questions regarding this matter.

Respectfully submitted,

Shawn M. Higgins
Rajib Pal
Justin R. Becker
Lindsey A. Ricchi

Counsel to Nippon Steel Corporation

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| NIPPON STEEL CORPORATION, | |
| Plaintiff, | Court No. 21-00533 |
| v. | **PUBLIC DOCUMENT** |
| UNITED STATES, | |
| Defendant, | |
| NUCOR CORPORATION, STEEL DYNAMICS, INC. AND SSAB ENTERPRISES, LLC, | |
| Defendant-Intervenors. | |
| | |
| NIPPON STEEL CORPORATION, | |
| Plaintiff, | |
| JFE SHOJI CORPORATION AND JFE SHOJI AMERICA, LLC | |
| Plaintiff-Intervenors, | Court No. 22-00183 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| NUCOR CORPORATION, | |
| Defendant-Intervenor. | |

NIPPON STEEL CORPORATION,

                Plaintiff,

        v.

UNITED STATES,

                Defendant,

NUCOR CORPORATION

           Defendant-Intervenor.

Court No. 23-00112

**PLAINTIFF'S SUPPLEMENTAL REPLY BRIEF**

Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Counsel to Nippon Steel Corporation

December 22, 2023

## <u>TABLE OF CONTENTS</u>

**Page(s)**

**ARGUMENT** ......................................................................................................... 3

I.   Substantial Evidence Does Not Demonstrate that the Section 232 Steel Duties Were "Included in" NSC's U.S. Price as Required by 19 U.S.C. § 1677a(c)(2)(A), and NSC Preserved this Issue ............................................................................................ 3

    A.   NSC Exhausted Its Remedies, and, Even if this Court Disagrees, Exceptions Apply ....... 3

        1.   NSC Exhausted Its Remedies ..................................................................... 3

        2.   Alternatively, Exceptions Apply ................................................................ 4

    B.   NSC Properly Plead and Did Not Waive this Issue ......................................... 6

    C.   Substantial Evidence Does Not Support Concluding that NSC's U.S. Price Included the Section 232 Steel Duties ........................................................................... 7

II.  "United States Import Duties" in 19 U.S.C. § 1677a(c)(2)(A) Is Not Reasonably Interpreted to Include the Section 232 Steel Duties, and this Court Need Not Apply the CAFC's Decision in *Borusan* on this Issue ........................................................................... 9

    A.   Interpreting "United States Import Duties" to Include the Section 232 Steel Duties May Violate the United States' Treaty Obligations, and Therefore Is Not Reasonable ........... 10

    B.   The CAFC Erred in *Borusan* Because It Never Engaged in Interpreting "United States Import Duties" in 19 U.S.C. § 1677a(c)(2)(A) ............................................... 12

**CONCLUSION** ...................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agro Dutch Indus. Ltd. v. United States*,
 508 F.3d 1024 (Fed. Cir. 2007)..................................................................................4

*Apex Exps. v. United States*,
 777 F.3d 1373 (Fed. Cir. 2015)................................................................................16

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
 880 F.3d 1345 (Fed. Cir. 2018)................................................................................10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)....................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)....................................................................................................6

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
 494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) ...........................................................15

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
 63 F.4th 25 (Fed. Cir. 2023) ............................................................................ *passim*

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
 467 U.S. 837 (1984)............................................................................................13, 14

*China Nat'l Arts & Crafts Imp. & Exp. Corp. v. United States*,
 771 F. Supp. 407 (Ct. Int'l Trade 1991) ....................................................................8

*China Nat'l Mach. Imp. & Exp. Corp. v. United States*,
 264 F. Supp. 2d 1229 (Ct. Int'l Trade 2003) .............................................................8

*Consol. Edison Co. v. NLRB*,
 305 U.S. 197 (1938)....................................................................................................8

*Encino Motorcars, LLC v. Navarro*,
 579 U.S. 211 (2016)..................................................................................................14

*Houston Indus. Inc. v. United States*,
 78 F.3d 564 (Fed. Cir. 1996)....................................................................................10

*Huvis Corp. v. United States*,
 570 F.3d 1347 (Fed. Cir. 2009)..................................................................................8

*INS v. Elias-Zacarias*,
502 U.S. 478 (1992)...................................................................................9

*Jiaxing Brother Fastener Co. v. United States*,
751 F. Supp. 2d 1345 (Ct. Int'l Trade 2010) .......................................5, 6

*Johnson v. City of Shelby*,
574 U.S. 10 (2014).....................................................................................6

*Murray v. The Schooner Charming Betsy*,
6 U.S. (2 Cranch) 64 (1804).................................................................11, 12

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007)................................................................................14

*Ningbo Dafa Chemical Fiber Co. v. United States*,
580 F.3d 1247 (Fed. Cir. 2009)...........................................................3, 4

*Qingdao Taifa Group Co. v. United States*,
637 F. Supp. 2d 1231 (Ct. Int'l Trade 2009) .........................................6

*Solvay Solexis S.p.A. v. United States*,
637 F. Supp. 2d 1306 (Ct. Int'l Trade 2009) .........................................4

*Timken U.S. Corp. v. United States*,
434 F.3d 1345 (Fed. Cir. 2006)...............................................................8

*Wheatland Tube Co. v. United States*,
495 F.3d 1355 (Fed. Cir. 2007).........................................................13, 14

*Yee v. City of Escondido*,
503 U.S. 519 (1992)...................................................................................7

*Zhaoqing Tifo New Fibre Co. v. United States*,
60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) ...........................................6

**Miscellaneous Authorities**

General Agreement on Tariffs and Trade 1994, Articles II:1(a) and (b)................................11, 12

**Federal Statutes**

19 U.S.C. § 1516a(b)(1)(B) ................................................................................8, 9

19 U.S.C. § 1673.......................................................................................................11

19 U.S.C. § 1677a(c)(2)(A) ............................................................................... *passim*

28 U.S.C. § 2637(d) ....................................................................................................4

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................6

United States Ct. Int'l Trade R. 8(a)(2) ..............................................................................6

**Administrative Materials**

*Proclamation 9705 of March 8, 2018, Adjusting Imports of Steel Into the United States*, 83 FR at 11627 (Mar. 15, 2018) ........................................................... *passim*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| NIPPON STEEL CORPORATION,<br><br>     Plaintiff,<br><br> v.<br><br>UNITED STATES,<br><br>     Defendant,<br><br>NUCOR CORPORATION, STEEL DYNAMICS, INC. AND SSAB ENTERPRISES, LLC,<br><br>     Defendant-Intervenors. | Court No. 21-00533<br><br>**PUBLIC DOCUMENT** |
| NIPPON STEEL CORPORATION,<br><br>     Plaintiff,<br><br>JFE SHOJI CORPORATION AND JFE SHOJI AMERICA, LLC<br><br>     Plaintiff-Intervenors,<br><br> v.<br><br>UNITED STATES,<br><br>     Defendant,<br><br>NUCOR CORPORATION,<br><br>     Defendant-Intervenor. | Court No. 22-00183 |

| | |
|---|---|
| NIPPON STEEL CORPORATION, | |
| Plaintiff, | |
| v. | Court No. 23-00112 |
| UNITED STATES, | |
| Defendant, | |
| NUCOR CORPORATION | |
| Defendant-Intervenor. | |

## PLAINTIFF'S SUPPLEMENTAL REPLY BRIEF

Plaintiff Nippon Steel Corporation ("NSC") replies to responses by Defendant United States and Defendant-Intervenor Nucor Corporation ("Nucor") (collectively, "Defendants") on November 17, 2023 ("U.S. Supp_Brief"), AR3_ECF No. 65, and December 1, 2023 ("Nucor Supp_Brief"), AR3_ECF No. 66, respectively,[1] to NSC's Supplemental Opening Brief dated September 18, 2023 ("NSC Supp_Brief"), AR3_ECF No. 64.[2]

NSC replies pursuant to this Court's July 18, 2023, Orders in the above-captioned cases, AR3_ECF No. 62, AR4_ECF No. 45, AR5_ECF No. 14, in which the Court requested that NSC file a joint reply on the record of Court No. 21-00533, with the understanding that it also applies in Court Nos. 22-00183 and 23-00112.  For the reasons stated previously and

---

[1]      Defendant-Intervenors Steel Dynamics, Inc. and SSAB Enterprises, LLC supported the United States and Nucor on December 1, 2023, AR3_ECF No. 67.
[2]      Short citations herein are the same as in the NSC Supp_Brief.  However, NSC references the Section 232 duties imposed by *Proclamation 9705* as "the Section 232 steel duties" to distinguish them from other duties that may be imposed under Section 232.

below, NSC requests that this Court reverse the Department's AR3, AR4, and AR5 final

results, and remand with instructions to recalculate NSC's dumping margin in each segment.

**ARGUMENT**

I.   **Substantial Evidence Does Not Demonstrate that the Section 232 Steel Duties Were "Included in" NSC's U.S. Price as Required by 19 U.S.C. § 1677a(c)(2)(A), and NSC Preserved this Issue**

Defendants' arguments that this Court should not decide whether the Department

properly found that the Section 232 steel duties were "included in" NSC's U.S. price, *see* U.S.

Supp_Brief at 16-20, AR3_ECF No. 65; Nucor Supp_Brief at 3-6, AR3_ECF No. 66, are

unavailing.

A.   **NSC Exhausted Its Remedies, and, Even if this Court Disagrees, Exceptions Apply**

1.   NSC Exhausted Its Remedies

NSC exhausted its remedies on this issue.  The pertinent claim in NSC's AR3, AR4, and

AR5 case briefs was broad – *i.e.*, that the Department improperly deducted the Section 232 steel

duties from NSC's U.S. price under 19 U.S.C. § 1677a(c)(2)(A), which, as quoted at the outset

of each of NSC's arguments on this claim, requires the Department to find that the duties were

"included in" NSC's U.S. price and were "United States import duties."  AR3_APPX083005-22;

AR4_APPX085203-23; AR5_APPX085854-83.  The Department, therefore, was on notice of

NSC's broad claim as stated above, including the "included in" price issue.

To exhaust remedies, a party is required only to make a "suggestion" of its argument to

the Department; a party need not present every conceivable form of that argument.  *See Ningbo*

*Dafa Chemical Fiber Co. v. United States*, 580 F.3d 1247, 1259 (Fed. Cir. 2009) (agreeing

respondent exhausted remedies regarding a calculation methodology argument because "the

record before {the Department} contained at least a suggestion … of {the} methodology," and

3

therefore the Department "had the opportunity to consider {it}"); *Solvay Solexis S.p.A. v. United States*, 637 F. Supp. 2d 1306, 1309 n.2 (Ct. Int'l Trade 2009) ("Merely because the argument, in this specific form, was not raised in the agency proceedings below, does not automatically render it unavailable to the Plaintiff now.").

As in *Ningbo* and *Solvay*, by arguing in NSC's AR3, AR4, and AR5 case briefs that the Department improperly deducted the Section 232 steel duties from NSC's U.S. price under 19 U.S.C. § 1677a(c)(2)(A), NSC indicated to the Department that it was contesting the legality of those deductions under the entirety of 19 U.S.C. § 1677a(c)(2)(A). NSC's arguments to this Court on the "included in" price issue under this same statutory provision are an outgrowth of the arguments NSC previously raised before the Department. Therefore, NSC exhausted its remedies on this issue.

### 2. Alternatively, Exceptions Apply

Even if this Court concludes NSC did not exhaust its remedies on the "included in" price issue, exceptions to the exhaustion requirement dictate this Court should still consider it. The statute indicates that, "*where appropriate*," this Court shall require the exhaustion of remedies, 28 U.S.C. § 2637(d) (emphasis added), so exhaustion is not an inexorable imperative. Moreover, "the application of 'exhaustion principles in trade cases is subject to the discretion of the judge of the Court of International Trade.'" *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007) (citation omitted). Accordingly, exceptions – which are grounded in principles of fairness and justice – apply at this Court's discretion.

Defendants' contention that no exception applies here, *see* U.S. Supp_Brief at 18, AR3_ECF No. 65,[3] is incorrect.

First, Defendants recognize that one applicable exception is when an intervening judicial interpretation might have materially impacted the Department's action.  *See* U.S. Supp_Brief at 18, AR3_ECF No. 65.  As the United States recognizes, the CAFC's decision in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25 (Fed. Cir. 2023), constitutes an "intervening judicial precedent" that impacted all CIT appeals concerning the Department's deduction of the Section 232 steel duties from U.S. price under 19 U.S.C. § 1677a(c)(2)(A).  U.S. Supp_Brief at 18 and n.2, AR3_ECF No. 65.  Contrary to the United States' reading, however, the applicable exception states only that a court decision "issued after the administrative determination *might have* materially affected the agency's actions."  *Jiaxing Brother Fastener Co. v. United States*, 751 F. Supp. 2d 1345, 1356 (Ct. Int'l Trade 2010) (emphasis added) (citation omitted).  Here, the CAFC in *Borusan* highlighted the importance of both the Department's "separate memorandum" in the underlying administrative review finding the Section 232 steel duties were "included in" the respondent's U.S. price (something absent in the present case) and the lack of a "properly preserved dispute" on this issue as pre-conditions to evaluating whether the Section 232 steel duties are "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A).  *See Borusan*, 63 F.4th at 30-31.  *Borusan* therefore serves as an intervening judicial interpretation, which might have affected the Department's actions, permitting NSC to raise this issue before this Court now.

Second, Defendants ignore another applicable exception: that this Court will "decide an unexhausted issue on the merits when the party raising the issue had no opportunity to do so

---

[3]     Nucor supports the United States' argument that no exceptions to the exhaustion requirement apply.  *See* Nucor Supp_Brief at 3-4, AR3_ECF No. 66.

before the agency." *Jiaxing*, 751 F. Supp. 2d at 1356 (quoting *Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231, 1236-37 (Ct. Int'l Trade 2009)); *see also id.* (exhaustion not required where "Commerce did not address the issue until its final decision").  This exception is grounded in "considerations of policy, pragmatism, and fundamental fairness." *Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1347 n.23 (Ct. Int'l Trade 2015).  Here, it was not until the Department's *final results* in each of AR3, AR4, and AR5 that the Department asserted, without support, that NSC "included" the Section 232 steel duties in the price charged to its first unaffiliated customer.  *See* NSC Supp_Brief at 12-14 (explaining the "included" assertion appears only in the Department's IDMs, not its PDMs).  NSC therefore could not have raised the argument that the Department made an unsupported assertion on this issue in its case briefs, so this Court should conclude the exhaustion requirement does not preclude NSC from raising this issue now.

### B.   NSC Properly Plead and Did Not Waive this Issue

Nucor's additional argument that NSC waived the issue of whether the Section 232 steel duties were "included in" NSC's U.S. price because NSC did not sufficiently plead or brief it,[4] *see* Nucor Supp_Brief. at 4-6, AR3_ECF No. 66, also fails.

In a claim for relief, CIT Rule 8(a)(2), which follows Federal Rules of Civil Procedure 8(a)(2), requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Thus, a complaint need not contain detailed factual allegations, but instead simply provide the grounds for relief and allow the court to reasonably infer the alleged misconduct.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).

---

[4]   Nucor's argument pertaining to insufficient briefing applies to only NSC's AR3 appeal because the NSC Supp_Brief was the first brief filed in NSC's AR4 and AR5 appeals.

NSC's AR3, AR4, and AR5 Complaints plead the claim of the Department's improper deduction of the Section 232 steel duties from NSC's U.S. price with sufficient factual support, and as detailed above, the "included in" price issue is part and parcel of this claim.  *See* NSC AR3_Complaint at 6-7, AR3_ECF No. 9; NSC AR4_Complaint at 5-6, AR4_ECF No. 9; NSC AR5_Complaint at 5-6, AR5_ECF No. 9.[5]

Similarly, NSC raised the Department's improper deduction of the Section 232 steel duties from NSC's U.S. price in NSC's AR3_Opening Brief, AR3_ECF No. 32, and, once raised, NSC is not limited to the precise arguments made in its opening brief going forward.  *See Yee v. City of Escondido*, 503 U.S. 519, 534-35 (1992).  Moreover, this Court stayed these cases pending the CAFC's decision in *Borusan* and then ordered supplemental briefing for the parties to develop their arguments in light of that decision.  NSC should not be faulted for doing precisely that.

**C.** **Substantial Evidence Does Not Support Concluding that NSC's U.S. Price Included the Section 232 Steel Duties**

On the merits, NSC described in detail how the AR3, AR4, and AR5 records demonstrate that the Department's assertion that NSC included the Section 232 steel duties paid in its U.S. price was unsupported by substantial evidence as required by statute.  *See* NSC Supp_Brief at 11-20, AR3_ECF No. 64.  Defendants present no convincing arguments to the contrary, but instead contort the substantial evidence standard.  *See* U.S. Supp_Brief at 19-20, AR3_ECF No. 65; Nucor Supp_Brief at 5-6, AR3_ECF No. 66.

---

[5]    Nucor concedes that NSC separately identifies the "included in" price issue in NSC's AR5_Complaint, at 6, AR5_ECF No. 9, which NSC did for prudence, not necessity.  Nonetheless, Nucor claims this is insufficient because NSC's AR5 Complaint purportedly "provides no factual detail in this regard."  Nucor Supp_Brief at 4, AR3_ECF No. 66.  However, NSC's argument is that the Department drew a conclusion without any record evidence, so there is no additional factual detail for NSC to provide.  At minimum, therefore, NSC has preserved this issue – and this Court must consider it – in NSC's AR5 appeal.

7

This Court holds unlawful the Department's determinations if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1350 (Fed. Cir. 2006). "Substantial evidence means 'more than a mere scintilla' and 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Huvis Corp. v. United States*, 570 F.3d 1347, 1351 (Fed. Cir. 2009) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight, *including contradictory evidence or evidence from which conflicting inferences could be drawn*." *Id.* at 1351 (emphasis added) (internal quotes omitted).

As NSC has detailed, *see* NSC Supp_Brief at 14-20, AR3_ECF No. 64, the AR3, AR4, and AR5 records are replete with evidence contradicting the Department's findings that the price charged to NSC's first unaffiliated customer included the Section 232 steel duties paid by NSTA, and, further, the records contain *no information whatsoever* that could support such findings. In short, the Department's findings on this issue can most generously be described as conjecture. Conjecture alone is not evidence, let alone substantial evidence. *See China Nat'l Mach. Imp. & Exp. Corp. v. United States*, 264 F. Supp. 2d 1229, 1240 (Ct. Int'l Trade 2003) ("Conjectures are not facts and cannot constitute substantial evidence.") (citing *China Nat'l Arts & Crafts Imp. & Exp. Corp. v. United States*, 771 F. Supp. 407, 413 (Ct. Int'l Trade 1991)). Moreover, the Department made this conjecture without taking into account any contradictory evidence, as required. *See Huvis*, 570 F.3d at 1351.

The United States cites no legal support for the Department's determinations on this issue, and instead engages in a willful misreading of the records and the evidence NSC

presented.  The United States makes three points, *see* U.S. Supp_Brief at 19-20, AR3_ECF No. 65, that continue to mistakenly address facts indicating that NSC (through its affiliate NSTA) *paid* the Section 232 steel duties (which NSC does not dispute), while ignoring facts indicating that NSC affiliates in the chain of sale absorbed the Section 232 steel duties that had been paid rather than passing those duties on to the first unaffiliated customer.

Nucor cites *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), to contend that NSC "must demonstrate that no reasonable reading of the records could support the conclusion that the prices that NSC charged" were duty-inclusive.  Nucor Supp_Brief at 5, ECF No. 66.  However, this case is irrelevant because it relates to federal immigration law and has nothing to do with the Department's practice or standards under 19 U.S.C. § 1516a(b)(1)(B).

Instead, for the reasons discussed above, because the Department's determinations were based solely on conjecture and unsupported by substantial evidence, and neither the United States nor Nucor have established otherwise, under the statutory standard of review applicable here, this Court should hold the Department's determinations to be unlawful.[6]  19 U.S.C. § 1516a(b)(1)(B).

## II.    "United States Import Duties" in 19 U.S.C. § 1677a(c)(2)(A) Is Not Reasonably Interpreted to Include the Section 232 Steel Duties, and this Court Need Not Apply the CAFC's Decision in *Borusan* on this Issue

On the question of whether the phrase "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) of the AD statute is reasonably interpreted to include the Section 232 steel duties, Defendants' main contention is that this Court must apply the CAFC's decision in *Borusan*.  *See generally* U.S. Supp_Brief, AR3_ECF No. 65; Nucor Supp_Brief, AR3_ECF No. 66.

---

[6]    NSC notes that if this Court finds for NSC on the "included in" price issue, it need not disturb the CAFC's decision in *Borusan* that the Section 232 steel duties are "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A).

9

However, the CAFC in *Borusan* did not consider whether an interpretation that "United States import duties" includes the Section 232 steel duties is reasonable where, as here, such interpretation may violate the United States' treaty obligations.  Therefore, the CAFC's *Borusan* decision does not dictate the outcome on this issue.  *See* NSC Supp_Brief at 21 (citing *Arthrex, Inc. v. Smith & Nephew, Inc.*, 880 F.3d 1345, 1349 (Fed. Cir. 2018) (court owing deference to higher court is "free to address {an} issue on the merits" in subsequent case "{w}hen a prior decision does not 'squarely address{} {that} issue.'"); *Houston Indus. Inc. v. United States*, 78 F.3d 564, 567 n.3 (Fed. Cir. 1996) ("{W}hen an issue is not argued or considered in a decision, such decision is not precedent on that issue.") (citation omitted)).

The CAFC's decision in *Borusan* was also wrong because it never engaged in interpreting "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A), which is an exercise in ascertaining *Congress's intent* regarding that phrase in the *AD statute*.  Instead, the CAFC focused solely and incorrectly on *the President's authority* under Section 232 and *the President's intent* in issuing *Proclamation 9705* (which the CAFC also got wrong).  Insofar as this Court considers itself bound to apply the CAFC's *Borusan* decision, NSC reserves its right to raise the issue of the CAFC's incorrect analysis with the *en banc* CAFC.

### A.   Interpreting "United States Import Duties" to Include the Section 232 Steel Duties May Violate the United States' Treaty Obligations, and Therefore Is Not Reasonable

Defendants do not suggest that the CAFC in *Borusan* addressed whether interpreting "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) to include the Section 232 steel duties is reasonable in light of the United States' treaty obligations.  *See* U.S. Supp_Brief at 21-22, AR3_ECF No. 65; Nucor Supp_Brief at 6-7, AR3_ECF No. 66.  Accordingly, this Court is free to – and indeed must – address this issue.

10

Defendants make various arguments on this issue.  *See* U.S. Supp_Brief at 21-22, AR3_ECF No. 65; Nucor Supp_Brief at 6-7, AR3_ECF No. 66.  Each is irrelevant.

As discussed further in Section II.B below, at its core, this case involves the Department's application of the *AD statute*, 19 U.S.C. § 1673 *et seq.*, to calculate NSC's weighted average dumping margins in AR3, AR4, and AR5.  The only question before this Court, therefore, is whether the Department properly applied the AD statute, and in particular, whether the Department properly applied 19 U.S.C. § 1677a(c)(2)(A) and, in doing so, reasonably interpreted the phrase "United States import duties" in that provision.  Contrary to Defendants' assertions, NSC has not claimed, nor is it asking this Court to find, that any U.S. Government action (whether by statute, proclamation, or otherwise) is inconsistent with U.S. treaty obligations, nor is NSC asking this Court to execute any WTO decisions or international treaties.  For these reasons, all of Defendants' arguments miss the mark.[7]

What NSC is asking (because the CAFC did not do so in *Borusan*) is that this Court apply the *Charming Betsy* canon (*i.e.*, "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains") in determining whether the Department's interpretation of "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) to include the Section 232 steel duties was reasonable.  *See* NSC Supp_Brief at 21-22, AR3_ECF No. 64 (quoting *Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804)).

---

[7]     On the United States' more substantive points, NSC has already explained why the United States has not established that the Section 232 steel duties are justified by Article XXI(b) of the GATT 1994.  *See* NSC's AR3_Reply Brief at 16-18, AR3_ECF No. 39; NSC Supp_Brief at 23-25, AR3_ECF No. 64.  NSC has also explained in excruciating detail why the alleged national security interest underlying *Proclamation 9705* is a sham and, here, tantamount to remedying injury to the U.S. steel industry in the same manner as AD/CV/SG duties.  *See* NSC's AR3_Opening Brief at 13-23, 24-29, AR3_ECF No. 32; NSC's AR3_Reply Brief at 6-16, AR3_ECF No. 39; NSC Supp_Brief at 30-31, AR3_ECF No. 64.

Here, NSC has made clear that interpreting "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) to include the Section 232 steel duties raises serious questions concerning whether the United States would be violating its obligations to Japan under the GATT 1994.  By contrast, no such questions arise if "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) is interpreted *not* to include the Section 232 steel duties.  Accordingly, pursuant to the *Charming Betsy* canon, the latter interpretation must prevail, and that is what NSC asks this Court to find.

### B.   The CAFC Erred in *Borusan* Because It Never Engaged in Interpreting "United States Import Duties" in 19 U.S.C. § 1677a(c)(2)(A)

To further reply to Defendants' arguments, *see* U.S. Supp_Brief at 22-30, AR3_ECF No. 65; Nucor Supp_Brief at 7-11, AR3_ECF No. 66, NSC clarifies why the CAFC erred in *Borusan*.  In short, the CAFC in *Borusan* never addressed the question that was actually before it – *i.e.*, whether it was reasonable for the Department to interpret the phrase "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) of the *AD statute* to include the Section 232 steel duties.

The CAFC in *Borusan* purported to recognize that its task was to answer this question when it began its analysis by stating: "The only issue is whether it was permissible for Commerce to treat {the duty imposed by *Proclamation 9705*} as a 'United States import dut{y}' under 19 U.S.C. § 1677a(c)(2)(A) …."  *Borusan*, 63 F.4th at 31.

However, that is not the task it engaged in.  Instead, the CAFC concluded: (i) "Section 232 by its terms gives the President discretion to determine 'the nature and duration of the action' needed," *id.* at 34; and (ii) "the only fair reading of Proclamation 9705 {issued pursuant to Section 232} is that, when applied to an article covered by antidumping duties," the President intended "subtraction of the Proclamation 9705 duty from the U.S. price if the Proclamation 9705 duty is built into it," *id.* at 35.  In other words, the CAFC's analysis in *Borusan* was confined to: (i) what discretion *the President* had under *Section 232*, which is a statute distinct

from the AD statute; and (ii) how *the President* intended to exercise his discretion under Section 232 in issuing *Proclamation 9705*.

Unlike in *Borusan*, the CAFC in *Wheatland* correctly recognized that statutory interpretation requires application of the *Chevron* doctrine, which focuses on *Congress's intent* behind the precise statutory term in question.  *See Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1359 (Fed. Cir. 2007) (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).  At step one of the analysis, if *Congress's intent* regarding the statutory term in question is clear, that ends the matter; otherwise, at step two of the analysis, the question is whether the agency's interpretation of the statutory term in question is "reasonable." *See Wheatland*, 495 F.3d at 1359-60.

Applying the *Chevron* doctrine in *Wheatland*, the CAFC held at step one that the reference to "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) was ambiguous.  *Id.* at 1360.  Then, at step two, the CAFC in *Wheatland* found the Department's interpretation that this term does not include the Section 201 duties at issue there was reasonable, both because it was promulgated through "the agency's formal notice-and-comment rulemaking process"[8] and because it was consistent with "how *Congress* would have intended § 201 duties to be treated in achieving *the purposes of the antidumping objectives*."  *Id.* at 1360-62 (emphases added).

Just as in *Wheatland*, the current case requires a *Chevron* analysis to determine if the phrase "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) of the AD statute includes the Section 232 steel duties.  The CAFC's view in *Borusan*, 63 F.4th at 35-37, invoked by Defendants, *see* U.S. Supp_Brief at 23-24, AR3_ECF No. 65; Nucor Supp_Brief at 7, AR3_ECF No. 66, that a *Chevron* analysis is not required in this case, as it was in *Wheatland*,

---

[8]     In the current case, the Department did not use notice-and-comment rulemaking.

because the President's intent under *Proclamation 9705* is clear, is manifestly incorrect.  That is because the President's authority and intent under an entirely different and subsequently enacted statute (Section 232) cannot dictate what Congress intended with the phrase "United States import duties" in the *AD statute*.[9]  In other words, even if the President intended for the *Proclamation 9705* duties to be "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A),[10] that does not make it so, because Congress, not the President, makes the laws.  The question remains, would Congress have intended this result, and the answer to that question requires a *Chevron* analysis to determine if the phrase "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) includes the President's *Proclamation 9705* duties.

In regard to the required *Chevron* analysis, the CAFC in *Borusan*, 63 F.4th at 33, 36, acknowledged and did not overturn the conclusion from *Wheatland* that the phrase "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) is ambiguous.  Therefore, the necessary analysis is under step two of *Chevron*, with the relevant question being: Would *Congress have intended* the Section 232 steel duties to be treated as "United States import duties" under § 1677a(c)(2)(A) of the AD statute in achieving *the purposes of the antidumping objectives*?

---

[9]     Under bedrock statutory interpretation rules, a court may defer to the Executive's statutory interpretation only when Congress's intent is not clear.  *See Chevron*, 467 U.S. at 843 n.9 ("If … *Congress* had an intention on the precise question at issue, that intention is the law and must be given effect.") (emphasis added).  Even when there is ambiguity, the Executive's interpretation may prevail if it is "reasonable."  *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 220 (2016).  However, there is no authority for the proposition that the Executive's interpretation of one statute (*i.e.*, Section 232) could dictate the interpretation of a previously enacted statute (*i.e.*, the AD statute).  Indeed, suggesting that the later-in-time Section 232 could alter the meaning of the earlier-in-time AD statute "runs foursquare into {the} presumption against implied repeals."  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 664 (2007).

[10]    To the extent the President's intent under *Proclamation 9705* is relevant, NSC has already explained why the CAFC in *Borusan* misread that intent.  *See* NSC's Supp_Brief at 29-35, AR3_ECF No. 64.  Moreover, any ambiguity in the President's intent would require further analysis.

The CAFC erred in *Borusan* because it side-stepped and did not address that question for the reasons just discussed.

Here, the answer to the question necessarily turns on the factual aspects of the particular Section 232 duties at issue.  NSC has detailed extensively that these particular Section 232 steel duties have a remedial nature akin to AD/CV/SG duties, notwithstanding their national security objectives.  *See* NSC's AR3_Opening Brief at 13-23, 24-29, AR3_ECF No. 32; NSC's AR3_Reply Brief at 6-16, AR3_ECF No. 39; NSC Supp_Brief at 30-31, AR3_ECF No. 64. Indeed, this Court in its own decision in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021), acknowledged that Section 232 duties may be "remedial in a broad sense," and that conclusion certainly applies to the Section 232 steel duties.  *Id.* at 1374.

NSC agrees that some Section 232 duties may not be remedial, which is why NSC has advocated that a decision in this case must be specific to the particular Section 232 steel duties at issue here.[11]  *See* NSC's AR3_Reply Brief, AR3_ECF No. 39, at 5-6.  For example, as the United States previously noted, "President Reagan used Section 232 authority to embargo oil imports from Libya due to concerns that the Libyan government supported terrorism."  *See* U.S. Brief at 17 n.4, AR3_ECF No. 33.  When the national security objectives underlying particular Section 232 duties are entirely divorced from remedial objectives, as in the case of such duties imposed over terrorism concerns, Defendants' arguments make sense.  Congress could have intended such Section 232 duties to be considered "United States import duties" for purpose of 19 U.S.C. § 1677a(c)(2)(A)

---

[11]     NSC agrees with the CAFC's conclusion in *Borusan* that "{n}othing in § 1677a(c)(2)(A) requires the uniform treatment of all duties prescribed under a particular statutory authorization." *Borusan*, 63 F.4th at 33.

because failure to do so would artificially reduce the dumping margin or improperly refund the Section 232 duties.  *See* U.S. Supp_Brief at 24-28, AR3_ECF No. 65; Nucor Supp_Brief at 9-10, AR3_ECF No. 66.  However, that conclusion makes no sense when the national security objectives underlying the Section 232 duties at issue are intimately intertwined with remedial objectives akin to AD/CV/SG duties, which, as NSC has extensively explained, they are for these Section 232 steel duties.

While Defendants argue NSC's mathematical example is incorrect and an alternate one should apply, *see* U.S. Supp_Brief at 26, AR3_ECF No. 65; Nucor Supp_Brief at 9-10, AR3_ECF No. 66, who is correct is inherently tied to the nature of the Section 232 duties at issue.  The United States concedes that the purpose of AD duties under the AD statute is "to force the respondents to unilaterally increase their U.S. prices so that those prices are not below the respondent's prices in other markets."  U.S. Supp_Brief at 25, AR3_ECF No. 65.  Similarly, the CAFC has held that "{t}he goal of imposing {AD duties under the AD statute} is to prevent dumping by effectively raising the price of subject merchandise in the U.S. to the fair value."  *Apex Exps. v. United States*, 777 F.3d 1373, 1379 (Fed. Cir. 2015).

As much as Defendants selectively highlight the national security objectives of the Section 232 steel duties, *see, e.g.*, U.S. Supp_Brief at 27-28, AR3_ECF No. 65, it is undeniable that the Section 232 steel duties were premised, at least in part, on similar kinds of injury to U.S. industry that underlie AD/CV/SG duties, and therefore the Section 232 steel duties *also* have remedial objectives.  In this circumstance, NSC submits that its mathematical example, *see* NSC's Supp_Brief at 33-34, AR3_ECF No. 64, far more accurately reflects the reality of the situation.  When Section 232 duties have remedial objectives, as the Section 232 steel duties do, they are already working to raise the U.S. price to fair value corresponding with the respondent's

16

prices in other markets and thereby remedy injury that the affected U.S. industry may be suffering.  Accordingly, as NSC's mathematical example shows, deducting the Section 232 steel duties from U.S. price in the dumping margin calculation does not artificially reduce the dumping margin or improperly refund the Section 232 duties; rather, doing so artificially increases the dumping margin and collects a portion of the dumping duties ($25 out of $50 in NSC's example) twice – first as dumping duties ($50 in NSC's example) and then part of that amount (an additional $25 in NSC's example) a second time in the guise of Section 232 duties.

Nothing indicates this result is what Congress intended through use of the term "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) when the Section 232 duties at issue have *both* national security and remedial objectives.  For this reason, even if intended by the President in *Proclamation 9705*, interpreting the term "United States import duties" in the AD statute to include the Section 232 steel duties cannot be correct.  NSC reserves its right to raise this issue with the *en banc* CAFC if necessary.

17

**CONCLUSION**

For the foregoing reasons, NSC respectfully requests that this Court grant its Motions for Judgment on the Agency Record for each of AR3, AR4, and AR5, and remand the above-captioned cases with instructions to recalculate NSC's dumping margins.

Respectfully submitted,

Shawn M. Higgins
Rajib Pal
Justin R. Becker
Lindsey A. Ricchi

Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Counsel for Nippon Steel Corporation

Dated: December 22, 2023

18

## CERTIFICATE OF COMPLIANCE

In accordance with the Court's Orders issued on July 18, 2023, the undersigned certifies that this brief complies with the word limitations set forth in those Orders.  Specifically, excluding those exempted portions of the brief, as set forth in Chambers Procedure 2(B), I hereby certify that this brief contains 4,962 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Shawn M. Higgins
Shawn M. Higgins

## CERTIFICATE OF SERVICE

     I hereby certify that copies of the attached public document are being served by CM/ECF, on December 22, 2023, addressed to the following parties:

**On Behalf of the United States:**
Kyle S. Beckrich
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

**On behalf of Nucor Corporation:**
Alan H. Price
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036

**On Behalf of the United States:**
David W. Richardson
U.S. Department of Commerce
Office of Chief Counsel for Trade Enforcement and Compliance
1401 Constitution Avenue, NW.
Room 3614
Washington, DC 20230

**On behalf of Steel Dynamics, Inc. and SSAB Enterprises, LLC:**
Roger Brian Schagrin
Schagrin Associates
900 Seventh Street, NW.
Suite 500
Washington, DC 20001

**On behalf of JFE Shoji Corporation, and JFE Shoji America, LLC:**
Brenda Ann Jacobs
Jacobs Global Trade & Compliance LLC
4134 N. River Street
McLean, VA 22101

/s/ Shawn M. Higgins
Shawn M. Higgins