## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| NIPPON STEEL CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> NUCOR CORPORATION, STEEL ) <br> DYNAMICS, INC., AND SSAB ) <br> ENTERPRISES, LLC, ) <br> ) <br> Defendant-Intervenors. ) | Court No. 21-00533 |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### COMMENTS ON THE SECOND REMAND REDETERMINATION

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:

KYLE S. BECKRICH
Trial Attorney

DAVID RICHARDSON
Senior Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

U.S. Dept. of Justice
Civil Division/National Courts
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

March 10, 2025

Attorneys for Defendant

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................... ii

BACKGROUND. ...................................................................................................2

ARGUMENT ..........................................................................................................8

    I.     Standard Of Review .................................................................................8

    II.    Commerce's Finding That NSC Failed To Act To The Best Of Its Ability Is Supported By Substantial Evidence And Is Otherwise In Accordance With Law ......................................................................................8

        A.    Commerce Complied With The Court's Remand Instructions ..................9

            1.    Commerce Considered NSC's Additional Attempts To Obtain Data From Its Downstream Affiliate.......................................................9

            2.    Commerce Considered The Japanese Legal Opinion Letter And Japanese Antitrust Guidelines ....................................................10

        B.    Commerce Reasonably Addressed NSC's Limited Response To Commerce's Draft Remand Results........................................................11

        C.    NSC Failed To Exhaust Its Administrative Remedies With Respect To All Other Arguments It Makes In Its Comments On The Second Remand Redetermination ...................................................................................14

CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*AIMCOR v. United States,*
   141 F.3d 1098 (Fed. Cir. 1998) ........................................................................ 14, 15

*Apex Frozen Foods Pvt. Ltd. v. United States,*
   862 F.3d 1322 (Fed. Cir. 2017) ............................................................................. 16

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938) .................................................................................................. 8

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1996) ............................................................................................. 8, 9

*Corus Staal BV v. United States,*
   30 C.I.T. 1040 (Ct. Int'l Trade 2006) ..................................................................... 17

*Corus Staal BV v. United States,*
   502 F.3d 1370 (Ct. Int'l Trade 2007) ..................................................................... 17

*Hormel v. Helvering,*
   312 U.S. 552 (1941) ............................................................................................... 17

*Kawasaki Steel Corp. v. United States,*
   110 F. Supp. 2d 1029 (Ct. Int'l Trade 2000) .................................................. passim

*LMI-LA Metalli Industriale, S.p.A. v. United States,*
   712 F. Supp. 959 (Ct. Int'l Trade 1989) ................................................................ 15

*MacLean-Fogg Co. v. United States,*
   100 F. Supp. 3d 1349 ............................................................................................... 8

*Mueller Comercial De Mexico v. United States,*
   753 F.3d 1227 (Fed. Cir. 2014) ......................................................... 9, 10, 11, 12

*Nagase & Co., Ltd. v. United States,*
   628 F. Supp. 3d 1326 (Ct. Int'l Trade 2024) ........................................................ 15

*Nippon Steel Corp. v. United States,*
   337 F.3d 1373 (Fed. Cir. 2003) ............................................................................. 17

*Rhone Poulenc Inc. v. United States,*
   899 F.2d 1185 (Fed. Cir. 1990) ................................................................. 15, 16, 17

*Sandvik Steel Co. v. United States,*
   164 F.3d 596 (Fed. Cir. 1998) ............................................................................... 15

*Ugine and ALZ Belgium, Arcelor Stainless USA, LLC v. United States*,
  551 F.3d 1339 (Fed. Cir. 2009) ............................................................................15

*Unemployment Compensation Comm'n v. Argon*,
  329 U.S. 143 (1946)................................................................................... 15, 17

*United States v. L.A. Tucker Truck Lines Inc.*,
  344 U.S. 33 (1952)........................................................................................15

**Statutes**

19 U.S.C. § 1677e(b).............................................................................. 5, 14

28 U.S.C. § 2637(d) .....................................................................................15

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| _____ ) | |
| NIPPON STEEL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00533 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| NUCOR CORPORATION, STEEL ) | |
| DYNAMICS, INC., AND SSAB ) | |
| ENTERPRISES, LLC, ) | |
| ) | |
| Defendant-Intervenors. ) | |
| _____) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**COMMENTS ON THE SECOND REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff, Nippon Steel Corporation (NSC). *See* ECF No. 83. In its comments, NSC challenges the final results of the second remand redetermination filed by the United States Department of Commerce in accordance with this Court's decision and remand order in *Nippon Steel Corporation v. United States*, No. 21-00533, Slip Op. 24-112 (Ct. Int'l Trade 2024) (Remand Order). *See* Final Results of Redetermination Pursuant to Court Remand (Second Remand Redetermination), ECF No. 81. For the reasons explained below, we respectfully request that the Court sustain Commerce's second remand redetermination and enter judgment for the United States.

1

## BACKGROUND

On October 10, 2024, the Court remanded Commerce's decision to apply facts available with a partial adverse inference (AFA) to certain downstream sales of an affiliated party necessary for the calculation of NSC's dumping margin calculation. Remand Order at 22-25, 39. The Court found that while information was missing from the record and Commerce was permitted to resort to facts otherwise available, it could not sustain Commerce's determination to use an adverse inference in selection from among the facts available because Commerce had not substantiated its finding that NSC had not acted to the best of its ability. *Id.* at 23-24.

In particular, the Court found that Commerce had neither addressed the record information of NSC's increased efforts to obtain the information from its affiliated party since the prior review nor the Japanese legal opinion letter and guidelines concerning a part of the Japanese antitrust law. *Id.* at 23-25. As a result, the Court found that, "{b}ecause no such explanation is found in the Issues and Decision Memorandum, the Court may not sustain Commerce's determination." *Id.* at 24. The Court remanded the issue of whether NSC acted to the best of its ability with specific instructions for Commerce to address the Japanese legal opinion and guidelines and NSC's additional efforts to obtain the requested information from its affiliate. *Id.* at 25.

In the second remand redetermination, Commerce specifically addressed NSC's additional efforts to obtain the requested information from its uncooperative affiliate and the Japanese legal opinion and guidelines. *See* Second Remand Redetermination at 4-14. First, Commerce addressed NSC's additional efforts, compared to prior reviews, to obtain the uncooperative affiliate's downstream sales information. *Id.* at 4-7. Commerce articulated its general policy concerns and stated that unsuccessful attempts to obtain the uncooperative-

affiliate information are not a basis to excuse a respondent from submitting information crucial to the accurate calculation of the respondent's dumping margin.  *Id*. at 5.  Commerce reasoned that if it accepted unsuccessful attempts to obtain the information from affiliate suppliers as sufficient to meet the "best of its ability" standard, respondents would be put in a position to shield high prices home markets sales from reporting behind "a wall of uncooperative affiliates."  *Id*.

Further, Commerce found that NSC should have been aware of the ramifications of uncooperative affiliates refusing to provide downstream sales data because it was an issue in the investigation and two reviews prior to the one at issue.  Commerce found that NSC could have included in its contracts with the affiliate a requirement that they provide the data for dumping purposes but did not.  *Id.*

While NSC argued that Japanese law prevented NSC from using its larger economic power to force the release of the information through the possibility of a refusal to do business with the economically smaller affiliate, Commerce found that a review of NSC's legal opinion letter and the relevant guidelines did not support that interpretation of the law.  *Id.* at 7-11. Additionally, Commerce found that creating an exception for foreign laws prohibiting sharing of data necessary to calculated dumping margins would make it impossible for Commerce to calculate dumping margins consistent with the statute.  *Id.* at 8.  Commerce further explained that there is no fundamental or constitutional right to import products into the United States market and any importer knows that their imports are subject to the antidumping duty laws in the United States.  *Id.*

Specifically, regarding the Japanese guidelines on "unjust refusal to trade," Commerce found an examination of the opinion letter and the guidelines did not support a finding that the

law prevents NSC from using its economic clout to force an affiliate to provide its downstream sales data to Commerce.  *Id.*; *see also* Guidelines Concerning Abuse of Superior Bargaining Position Under the Antimonopoly Act (Guidelines) at 2, Appx080643.  Commerce found that the law and guidelines were only focused on "certain activity in which a 'superior' company is using its clout to influence and unjustly skew the business relationship between the two to the detriment of the small entity."  Second Remand Redetermination at 9; *see also* Guidelines at 2-3, Appx080643-080643.  Relying on the language used in the guidance, Commerce determined that the law only applies to acts taken "unjustly in light of normal business practices by making use of one's superior bargaining position to the other party." *Id.*; *see also* NSC's Section B Response at Exhibit B-23 (Japanese Opinion Letter) at 1-2, Appx080634-080635.  Specifically, Commerce noted that the goal of the Japanese law is to prevent actions that "impede fair competition." Second Remand Redetermination at 10; Japanese Opinion Letter at 3, Appx080636; Guidelines at 3, Appx080644.  Commerce found that the activity of supplying information to Commerce for a dumping proceeding, which by design is to address and counteract unfair trade practices, was not an unfair practice, as described in the opinion letter and guidelines.  Second Remand Redetermination at 10.

Even if the Japanese law did apply, Commerce found that NSC could have put a clause in their contracts requiring cooperation in data production.  *Id.*  Moreover, if there was any concern about NSC having access to its affiliate suppliers' data, NSC could have arranged for its affiliates to submit information directly to Commerce and avoid any "nefarious" use of its data by plaintiff.  *Id.*  In any event, Commerce found that using economic clout to obtain necessary data from a recalcitrant affiliate for purposes of an antidumping proceeding is not an "unjust" activity barred by Japanese law as reflected in the guidelines.  *Id.*

In short, Commerce determined that neither NSC's additional efforts nor Japanese antitrust law supported NSC's contention that it acted to the best of its ability. *Id*. at 10-11. As a result, Commerce continued to apply an adverse inference in the selection of facts available for the missing downstream sales data from the affiliated reseller.

On December 18, 2024, Commerce issued a draft remand and solicited comments from the parties. Second Remand Proceeding No. 1. In response to the draft remand results, NSC submitted the following argument:

> On December 19, 2024, we requested an extension of the deadline for submitting these comments because the holiday period made it difficult to seek necessary advice from Japanese counsel and due to pre-existing obligations of necessary personnel. Despite repeated attempts to contact the Department regarding NSC's Extension Request, we did not learn that the Department would not grant any extension until the evening of Christmas Day, December 25, 2024.
>
> Under the circumstances, in order to exhaust remedies, we simply express our disagreement with the Draft Results, and request that the Department reconsider them before issuing its final results because they are unresponsive to the Remand Order, and remain unsupported by substantial evidence and not in accordance with law. In particular, the Draft Results fail to address the facts of AR3, including: (i) NSC's additional efforts to obtain the requested data from the one affiliate at issue, contrary to the Remand Order's express instructions; (ii) the fact that the outcome of NSC's additional efforts in AR3 could not have been known when the sales were made during the AR3 period of review ("POR"); (iii) the affiliate's repeated assurances of compliance amidst COVID-19; (iv) NSC's small minority share in the affiliate at issue; and (v) the fact that related litigation from the first administrative review ("AR1") did not conclude until after the AR3 POR. In addition, the Draft Results misinterpret Japanese antitrust law, which prohibits the kinds of threats, contract modifications, or refusal to do business with the affiliate at issue contemplated by the Department in the Draft Results, nor does the "best of its ability" standard under 19 U.S.C. § 1677e(b) require such actions by NSC in order to avoid the application of adverse facts available ("AFA").

>       We therefore request that the Department closely re-review
> Exhibits B-23 and SB-1 submitted by NSC in AR3 before issuing
> its final results, and in those final results use neutral facts available
> instead of AFA with respect to NSC's home market affiliate's
> unreported downstream sales. We reserve the right to elaborate on
> these points before the Court should the Department not modify its
> decision in its final results.

NSC's Administrative Comments on the Remand Results, Second Remand Proceeding No. 4

(NSC Admin. Comments).

NSC identified six items that it wanted Commerce to address. Commerce addressed each

issue identified by NSC. First, in response to NSC's statement that Commerce did not address

NSC's additional attempts to obtain the downstream sales information from the uncooperative

affiliate, Commerce explained that simply requesting the data several times, even through an

outside counsel, was not the only act that NSC could have taken. Second Remand

Redetermination at 12.

Second, Commerce found NSC's statement that it could not have known that its affiliate

would not supply the data to be irrelevant. *Id.* Commerce reasoned that NSC should have been

aware since the investigation and both prior reviews that failure to provide the downstream sales

data could result in a finding that it had not acted to the best of its ability. *Id.* The fact that the

outcome of NSC's new efforts failed does not give NSC a reprieve from the Court's affirmed

practice of attributing the failure of an affiliate to provide the data to NSC for purposes of

applying AFA. *Id*. at 6, 12 (citing *Kawasaki Steel Corp. v. United States*, 110 F. Supp. 2d 1029,

1038 (Ct. Int'l Trade 2000)).

Third, regarding NSC's argument that the affiliate said it would comply, Commerce

found that such an argument does not change the fact that the affiliate ultimately did not comply.

*Id.* at 12. Commerce determined that the data is not on the record and NSC is not excused from

reporting the sales data needed to calculate its dumping margin simply because an affiliate refused to provide the data. *Id*. at 13.

Fourth, regarding NSC's argument that it has only a minority share in the affiliate, Commerce found that it did not matter. *Id.* Commerce found that the affiliates had long-term economic relationships with NSC. Commerce found that NSC could have established procedures through which the affiliates would report the downstream home market stales required by the antidumping statute. *Id.*

Fifth, regarding NSC's argument that the litigation covering the first administrative review was not complete by the time the sales for the third administrative review were made, Commerce found NSC's argument to be a "red herring." *Id.* According to Commerce, NSC should have been aware of the issue because it has experienced the issue in the investigation and the first two administrative reviews. *Id.*

Sixth, in responding to NSC's broad statement that Japanese law prohibits NSC from using its economic clout to get the data from its affiliate, Commerce found that the antidumping duty law does not contain an exception to the requirement to respond to an antidumping duty questionnaire based on a foreign government legal restriction. *Id.* at 14. Commerce further explained if the affiliate was concerned about disclosure of the affiliate's proprietary sales data to NSC, NSC could have arranged to have the data submitted directly to Commerce. *Id*. Finally, Commerce reiterated its view that the Japanese Antimonopoly Law does not apply to this particular activity of conducting an antidumping duty proceeding. *Id.*

Ultimately, Commerce found that NSC failed to act to the best of its ability to obtain the downstream sales data from its affiliate and thus continued to apply a partial adverse inference to NSC's home market affiliates' unreported downstream sales. *Id.*

7

# ARGUMENT

## I.     Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996).

## II.     Commerce's Finding That NSC Failed To Act To The Best Of Its Ability Is Supported By Substantial Evidence And Is Otherwise In Accordance With Law

In its second remand redetermination, Commerce complied with the Court's remand instructions to address: (1) NSC's additional contacts with its uncooperative affiliate in an attempt to get the requested information and (2) the Japanese opinion letter and certain Japanese guidelines in evaluating whether NSC acted to the best of its ability to get necessary information from one of its reseller affiliates. *See* Remand Order at 23-24. Commerce likewise responded to each argument NSC raised in response to Commerce's draft remand results. Based on its analysis, Commerce continued to find that NSC did not act to the best of its ability to obtain the downstream sale information from its uncooperative affiliate.

A.    **Commerce Complied With The Court's Remand Instructions**

1.    **Commerce Considered NSC's Additional Attempts To Obtain Data From Its Downstream Affiliate**

In accordance with the Court's remand instructions, Commerce considered NSC's additional attempts to obtain data from its downstream affiliate. In evaluating whether NSC acted to the best of its ability to obtain the downstream sales from its affiliate, Commerce first identified the strong policy reason for not accepting multiple failed attempts of a respondent to obtain data from an affiliate as basis to prevent the application of an adverse inference in the selection of facts otherwise available. Second Remand Redetermination at 5. Commerce explained that "such a finding would undermine the dumping calculation" by putting respondents in the position of being able to use a wall of uncooperative affiliates to shield themselves from reporting high priced home market sales to manipulate the dumping calculation. *Id.* Commerce's approach is consistent with precedent from the Federal Circuit and this Court. For example, in *Mueller Comercial De Mexico v. United States*, the Federal Circuit held that Commerce may draw adverse inferences against non-cooperating parties that have effects of cooperating parties. 753 F.3d 1227, 1236 (Fed. Cir. 2014). Likewise, in *Kawasaki*, this Court recognized that Commerce has a "general practice of attributing failure of an affiliate to the respondent." 110 F. Supp. 2d at 1038. Therefore, Commerce may lawfully attribute NSC's affiliate's continued failure to provide the data to NSC for the best of its ability analysis.

Commerce's analysis did not stop at this point. Commerce also found that "{s}imply requesting the data several times" was not the only action NSC could have taken to induce its affiliate to produce the data. Second Remand Redetermination at 6, 12. In *Mueller*, the Federal Circuit held that Commerce may rely on a respondent's decision to do business with third parties that do not cooperate in providing necessary information, based on the particular facts of the

case. 753 F.3d at 1233-35. Here, as Commerce explained, the issues of NSC's affiliate failing to provide data has been present since the inception of the antidumping duty order on hot rolled steel from Japan. Second Remand Redetermination at 8-9. NSC should have been aware of Commerce's requirements from the three preceding segments of this antidumping duty order, where Commerce required substantially similar information, and could have refused to do business with this affiliate if it did not cooperate by providing the data to Commerce or by inserting a clause in its contracts to require the production of the data. Second Remand Redetermination at 5-6. However, NSC continued to do business with its affiliate without taking these actions since the investigation.

Accordingly, Commerce reasonably determined that even notwithstanding the additional attempts by NSC to obtain the required data from its affiliate, those efforts do not constitute the best of NSC's ability, and thus application of partial AFA is warranted.

### 2. Commerce Considered The Japanese Legal Opinion Letter And Japanese Antitrust Guidelines

Consistent with the Court's instructions, Commerce also examined the Japanese opinion letter and antitrust guidelines. Second Remand Redetermination at 9-10. Specifically, Commerce considered the opinion letter from a Japanese lawyer and guidelines for part of the Japanese antitrust law. The actual Japanese antitrust law was not provided by NSC except to the extent that certain excerpts from it were incorporated in the opinion letter and guidelines.

The actual statutory provision provides that a company with a superior bargaining position may not use that position to, in "regular transactions," force the party in a weaker position to buy goods or service, provide money, services or other economic benefits, or change the terms of a transaction in a disadvantageous way to the party in the weaker position such as terms of sale. Guidelines at 2, Appx080643; Second Remand Redetermination at 10-11. The

guidelines provide that this law should be interpreted in the context of actions which "impede fair competition." Guidelines at 3, Appx080644; Second Remand Redetermination at 10. The guidelines provide the analysis should be done on a case-by-case basis. Guidelines at 3-4, Appx080644-080645; Second Remand Redetermination at 10.

Commerce found that the Japanese antitrust law did not apply to all actions by companies in a superior-inferior relationship, as NSC suggests. Second Remand Redetermination at 10. Commerce determined that the Japanese law could not excuse NSC because providing data for a dumping proceeding is not an act impeding fair competition on the sales transactions between the parties, as described in the law. *Id.* at 10. Instead, providing a response to Commerce's request for data is "the normal business practice when trading with entities in foreign countries to ensure the unfair trading activity of dumping can be remedied." *Id.* Moreover, Commerce determined that if the affiliate was concerned with NSC seeing its proprietary sales data, they could have arranged to have the affiliate submit the data directly to Commerce, to avoid any "nefarious" use of the data by the plaintiff to the disadvantage of the affiliate. *Id.*

Accordingly, in accordance with the Court's remand instructions, Commerce considered NSC's position that Japanese law prevented it from exerting any further effort to provide the requested data. Commerce reasonably determined that NSC was stretching the Japanese law too far in an attempt to shield itself from its obligation to use the best of its ability to provide the requested information.

## B.  Commerce Reasonably Addressed NSC's Limited Response To Commerce's Draft Remand Results

As explained above, NSC made six arguments to Commerce in its response to Commerce's draft remand results. NSC argued that: (1) Commerce failed to address NSC's additional efforts to obtain the requested data; (2) the outcome of NSC's additional efforts in the

third administrative review could not have been known when the sales were made during the third administrative review period of review; (3) the affiliate represented it would comply with NSC's requests; (4) NSC had only a minority share in the affiliate at issue; (5) litigation from the first administrative review did not conclude until after the third administrative review period of review; and (6) Japanese antitrust law prohibits the kind of threats, contract modifications, or refusal to do business with the affiliate that Commerce suggests.  NSC Admin. Comments at 2-3.

Commerce explained why it found none of NSC's arguments to be persuasive.  First, with respect to NSC's additional efforts, Commerce rejected the notion that "simply requesting the data several times is not the only action that Nippon Steel could have taken to induce compliance."  Second Remand Redetermination at 12.  Indeed, the reason Commerce requested the sales information of its affiliate is because NSC's "sales to the affiliate fail to pass the arm's-length test."  *Id.*  Accordingly, NSC must make more effort than simply requesting the data multiple times – even through outside counsel – in order to satisfy "the best of its ability" standard.  *Id.*  It would be contrary to sound policy to allow NSC to hide behind its affiliate and avoid its burden of responding to Commerce's requests.  *See Kawasaki*, 110 F. Supp. 2d at 1038 (noting Commerce's "general practice of attributing failure of an affiliate to the respondent").

Commerce found both of NSC's timing arguments be irrelevant to the question of whether NSC acted to the best of its ability.  Second Remand Redetermination at 12-13.  Even if NSC did not know the outcome of its additional efforts, NSC knew that its affiliate might not provide the requested data based on the history of proceedings covering this antidumping duty order.  *Id.*  NSC cannot credibly maintain that it did not know its affiliate may not provide the requested data.  Further, even if NSC did believe the affiliate would provide the requested data, the fact is "the affiliate never complied."  *Id.* at 13.  Because the affiliate never complied,

Commerce concluded that its alleged lack of knowledge regarding the affiliate's non-compliance did not show that NSC acted to the best of its ability. Once again, Commerce correctly determined that NSC cannot simply shift blame to its affiliate and avoid the "best of its ability" standard. *Kawasaki*, 110 F. Supp. 2d at 1038.

Similarly, Commerce was not persuaded by the fact that the affiliate "said at some point it would apply." Second Remand Redetermination at 13. The affiliate did not in fact comply. Nor was Commerce persuaded by the fact that NSC only had a minority share in the company. *Id.* As a longstanding affiliate of NSC, NSC could have used its "long-term economic relationships" with the affiliate "to establish procedures" for the affiliate to "report downstream home market sales." *Id.* NSC did not, and thus did not comply with Commerce's requests to the best of its ability.

Finally, with respect to NSC's argument that it could not do more because of Japanese antitrust laws, Commerce explained that U.S. antidumping law does not contain a reporting excepting to an antidumping duty questionnaire based on perceived foreign government legal restrictions. *Id.* at 14. Further, for the reasons set forth above, Commerce correctly concluded that NSC's reliance on Japanese law as a shield to obtain requested information was not reasonable. *See supra* Section B.

In short, Commerce responded to each argument presented by NSC and explained why those arguments did not establish that NSC acted to the best of its ability to respond to Commerce's requests for information.

**C.    NSC Failed To Exhaust Its Administrative Remedies With Respect To All Other Arguments It Makes In Its Comments On The Second Remand Redetermination**

As explained above, NSC made six arguments in response to the draft remand results.

Specifically, NSC stated:

> Under the circumstances, in order to exhaust remedies, we simply express our disagreement with the Draft Results, and request that **t**he Department reconsider them before issuing its final results because they are unresponsive to the Remand Order, and remain unsupported by substantial evidence and not in accordance with law. In particular, the Draft Results fail to address the facts of AR3, including: (i) NSC's additional efforts to obtain the requested data from the one affiliate at issue, contrary to the Remand Order's express instructions; (ii) the fact that the outcome of NSC's additional efforts in AR3 could not have been known when the sales were made during the AR3 period of review ("POR"); (iii) the affiliate's repeated assurances of compliance amidst COVID-19; (iv) NSC's small minority share in the affiliate at issue; and (v) the fact that related litigation from the first administrative review ("AR1") did not conclude until after the AR3 POR.  In addition, the Draft Results misinterpret Japanese antitrust law, which prohibits the kinds of threats, contract modifications, or refusal to do business with the affiliate at issue contemplated by the Department in the Draft Results, nor does the "best of its ability" standard under 19 U.S.C. § 1677e(b) require such actions by NSC in order to avoid the application of adverse facts available ("AFA").

NSC Admin. Comments at 2-3.  Commerce responded to each of these issues, and we addressed them above.

In contrast to the six arguments presented to Commerce, which were entirely devoid of citations to any legal authority, NSC's comments on the second remand redetermination contain 15 pages of arguments not presented to Commerce.  Because NSC did not make these arguments to Commerce (other than those already addressed), NSC did not exhaust its administrative remedies and the arguments cannot be raised now.  *AIMCOR v. United States*, 141 F.3d 1098, 1111-12 (Fed. Cir. 1998).  Further, because the arguments were not raised to Commerce,

Commerce did not discuss or address these arguments in the second remand redetermination . Accordingly, we cannot address them now without offering *post hoc* rationalization, which we are not permitted to do.  *Nagase & Co., Ltd. v. United States*, 628 F. Supp. 3d 1326, 1343 (Ct. Int'l Trade 2024) (stating that "[t]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action.") (citations omitted).

"In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  A "reviewing court usurps the agency's function when it sets aside an agency determination upon a ground not theretofore presented and deprives the {agency} of an opportunity to consider the matter, make its ruling, and state the reason for its action."  *Unemployment Compensation Comm'n v. Argon*, 329 U.S. 143, 155 (1946); *see also United States v. L.A. Tucker Truck Lines Inc.*, 344 U.S. 33, 37 (1952); *Rhone Poulenc Inc. v. United States*, 899 F.2d 1185, 1189-1190 (Fed. Cir. 1990); *LMI-LA Metalli Industriale, S.p.A. v. United States*, 712 F. Supp. 959, 968 (Ct. Int'l Trade 1989).

Accordingly, a plaintiff must exhaust administrative remedies.  *See Ugine and ALZ Belgium, Arcelor Stainless USA, LLC v. United States*, 551 F.3d 1339, 1347 (Fed. Cir. 2009); *see also Sandvik Steel Co. v. United States*, 164 F.3d 596, 599-602 (Fed. Cir. 1998) (a party is not entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted).  A party that fails to exhaust administrative remedies may not raise the issue *de novo* before the trial court.  *AIMCOR*, 141 F.3d at 1111-12.

Here, other than the six arguments addressed above, NSC did not exhaust administrative remedies for the arguments in its comments on the second remand redetermination.  To be sure, NSC evidently saw this issue and coming and stated in its comments to the draft remand results:

"We reserve the right to elaborate on these points before the Court should the Department not modify its decision in its final results."  NSC Admin. Comments at 3.  However, this statement does not solve NSC's exhaustion problem.

The Federal Circuit previously has sustained this Court's rejection of a party's attempt to shoehorn unexhausted arguments in this manner.  In *Apex Frozen Foods Pvt. Ltd. v. United States*, the Federal Circuit affirmed this Court's decision not to consider a plaintiff's unexhausted argument that the meaningful difference test does not speak to whether the average-to-average method can account for masked dumping specifically where the plaintiff had previously only criticized the meaningful difference test for its "uneven" use of zeroing.  862 F.3d 1322, 1331-34 (Fed. Cir. 2017).  Even though both arguments concerned the same meaningful difference test, the Federal Circuit held that the plaintiff failed to exhaust administrative remedies because "Commerce did not have a meaningful opportunity to address Apex's . . . argument."  *Id.* Similarly, the Federal Circuit has rejected a plaintiff's attempt to avoid exhaustion by arguing that it raises in Court "simply another angle to an issue which it did raise before" Commerce. *Rhone Poulenc*, 899 F.2d at 1191.

Here, NSC will likely contend that its comments on the second remand redetermination merely elaborate on the arguments it presented to Commerce.  But that is not so.  Even though NSC argues for the same result before this Court and Commerce – that NSC complied with Commerce's requests for data to the best of its ability – NSC's filing in Court offers reasons for that result that Commerce never had the opportunity to address.  Particularly, NSC goes to great lengths to explain why Commerce's view of the Japanese antitrust law is not reasonable.  ECF No. 83 at 15-25.  Although NSC broadly asserted to Commerce that Japanese antitrust law prohibited NSC from taking further action, it would be "unjust to {Commerce}" to allow NSC to

16

attempt to rebut Commerce's analysis in a manner that Commerce has not been able to address. *Id.* The exhaustion requirement is aimed at providing the agency the opportunity to consider an argument and fully state its reasoning for adopting or rejecting that argument. *Aragon*, 329 U.S. at 155. That objective cannot be satisfied if a party, such as NSC, is permitted to broadly invoke an argument before the agency, and then expound at the argument in Court in ways not presented to the agency.

While there are exceptions to the requirement of administrative exhaustion, none of them apply. This Court has recognized the following limited exceptions to the exhaustion requirement: (1) plaintiff raises a pure question of law that does not require further agency involvement; (2) plaintiff did not have timely access to the confidential record; (3) an intervening judicial interpretation has changed the agency result; and (4) raising the argument at the administrative level would have been futile. *See Corus Staal BV v. United States*, 30 C.I.T. 1040, 1050 n.11 (Ct. Int'l Trade 2006). However, absent an exception to the doctrine of exhaustion of administrative remedies, a reviewing court should not consider an issue that a complainant failed to raise at the administrative level. *Hormel v. Helvering*, 312 U.S. 552, 557 (1941). None of the exceptions apply here. There has been no intervening judicial decision. The issue of "best of its ability" is not a pure question of law but a fact intensive inquiry. *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003). There is no basis to claim futility because had NSC included these arguments in comments to the draft remand results, Commerce would have considered and responded to them as it did to the comments NSC submitted. Further, the "mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). Finally, although NSC response to the

draft remand results were due around the end-of-year holidays, NSC does not allege that it lacked access to records necessary to respond to the remand results.

NSC failed to exhaust administrative remedies with respect to any arguments that it did not raise during the remand proceedings. This Court should accordingly not consider these arguments should not be considered because Commerce did not have the chance to address them in the administrative process.

## **<u>CONCLUSION</u>**

For these reasons, we respectfully request that the Court sustain Commerce's second remand redetermination.

<div style="margin-left: 50%;">

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/Tara K. Hogan</u>
TARA K. HOGAN
Assistant Director

<u>/s/Kyle S. Beckrich</u>
KYLE S. BECKRICH
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0463
Email: Kyle.Beckrich@usdoj.gov

</div>

DAVID RICHARDSON
Senior Attorney
U.S. Department of Commerce
Office of Chief Counsel for
Trade Enforcement and Compliance
1401 Constitution Avenue, NW.
Washington, DC 20230-0001

March 10, 2025                    *Attorneys for Defendant*

18

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's word limitation requirement in that it contains 5,239 words, including text, footnotes, and headings.

<u>/s/Kyle S. Beckrich</u>
Kyle S. Beckrich