**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

NIPPON STEEL CORPORATION,

                              Plaintiff,

            v.

UNITED STATES,

                              Defendant,

                  and,

NUCOR CORPORATION, SSAB
ENTERPRISES, LLC, AND STEEL
DYNAMICS, INC.,

                              Defendant-Intervenors.

Before: Hon. Stephen A. Vaden,
Judge

Court No. 21-00533

<u>**DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFF'S AND DEFENDANT'S
COMMENTS ON THE SECOND FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**</u>

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Maureen E. Thorson, Esq.
Theodore P. Brackemyre, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.

SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to SSAB Enterprises, LLC
and Steel Dynamics, Inc.*

Dated: March 31, 2025

Ct. No. 21-00533

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 1

III.    CONCLUSION............................................................................................................... 7

Ct. No. 21-00533

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boomerang Tube LLC v. United States*,
    856 F.3d 908 (Fed. Cir. 2017)....................................................................................6

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007)..................................................................................6

*Pakfood Pub. Co. v. United States*,
    34 CIT 1122, 724 F. Supp. 2d 1327 (2010) ............................................................6,7

Ct. No. 21-00533

## I.    <u>INTRODUCTION</u>

On behalf of the defendant-intervenors in this action, Nucor Corporation, SSAB Enterprises, LLC, and Steel Dynamics, Inc. (collectively, "Defendant-Intervenors"), we hereby submit the following comments in support of the January 8, 2025 remand determination issued by the U.S. Department of Commerce ("Commerce").  Final Results of Redetermination Pursuant to Court Remand, *Nippon Steel Corporation v. United States*, Consol. Court No. 21-00533, Slip Op. 24-112 (CIT Oct. 10, 2024) (Jan. 8, 2025), ECF No. 81-1 ("Remand Determination").  These comments are filed in response to the submissions made before this court by Plaintiff Nippon Steel Corporation ("Plaintiff" or "Nippon Steel") on February 7, 2025 and Defendant United States ("Defendant") on March 10, 2025.  Comments of Pl. on Commerce's Final Results of Redetermination Pursuant to Court Remand (Feb. 7, 2025), ECF No. 83 ("Pl. Remand Cmts."); Def's Resp. to Pl.'s Comments on the Second Remand Redetermination (Mar. 10, 2025), ECF No. 88 ("Def. Remand Cmts.").

As detailed below, Commerce properly continues to apply adverse facts available ("AFA") with respect to Nippon Steel's home market affiliates' unreported downstream sales.  In doing so, Commerce's determination appropriately responds to the opinion and remand order issued by the Court on October 10, 2024, *Nippon Steel Corporation. v. United States*, Court No. 21-00533, Slip Op. 24-112 (Ct. Int'l Trade Oct. 10, 2024), ECF No. 80 ("Slip Op. 24-112"), and is otherwise consistent with law and supported by the record.  Accordingly, the Court should reject arguments to the contrary made by Plaintiff, and it should sustain Commerce's remand determination.

## II.    <u>ARGUMENT</u>

Commerce has properly continued to apply AFA to Nippon Steel regarding certain unreported downstream sales from Nippon Steel's home market affiliates.  In its opinion and

remand order, the Court instructed Commerce to reconsider or further explain the agency's decision to apply AFA. Slip-Op. 24-112 at 22-25. Namely, the Court remanded for Commerce to address Nippon Steel's arguments regarding the relevance of Japanese antitrust law and increased efforts taken by Nippon Steel to ensure compliance in comparison to past administrative reviews. *Id.* at 25. In its remand determination, Commerce fully addresses the arguments raised by Nippon Steel and issues identified by the Court. *See* Remand Determination at 4-14. The arguments raised by Plaintiff in its February 7, 2025 comments are not persuasive and are thoroughly rebutted by Defendant in its March 10, 2025 submission. *See* Pl. Remand Cmts. at 5-20; Def. Remand Cmts. at 8-18. Accordingly, Commerce's remand determination is consistent with the Court's opinion and remand order, and the Court should sustain the agency's continued application of AFA regarding Nippon Steel's unreported downstream sales.

As an initial matter, as the Court and the parties to this proceeding have recognized, it is undisputed that Nippon Steel failed to provide the factual information requested by Commerce in the underlying administrative review. In its opinion, the Court made clear that "{t}here is no question here that necessary information was missing" from the record such that the use of facts available was warranted. Slip-Op. 24-112 at 22. Indeed, as Commerce explains in its remand determination, Nippon Steel does not dispute many of the factual underpinnings of the agency's AFA determination, including Nippon Steel's failure to provide requested sales data regarding its home market affiliates. Remand Determination at 5. Rather, the only issue still contested is whether Commerce has fully explained its decision to apply adverse inferences. *See* Slip-Op. 24-112 at 22-23. In this respect, Commerce's remand determination provides additional explanation, consistent with and supporting its initial findings, demonstrating that the use of AFA with regard to Nippon Steel's home market affiliates' unreported sales remains warranted. *See* Remand

Ct. No. 21-00533

Determination at 4-14.   Notably, Commerce fully addresses the two aspects of its AFA

determination remanded for further explanation by the Court, which are discussed in turn below.

First, Commerce has properly explained why Nippon Steel's references to communications

with its affiliates are not enough to overcome the respondent's obligation to act to the best of its

ability in providing the information requested by the agency.  *Id.* at 5-7.  *See also* Def. Remand

Cmts. at 9-10.  Commerce rightly notes that, since the original investigation of this order, Nippon

Steel has had "ample time to make compliance with requests of this nature part of its contractual

agreement with downstream affiliates."  Remand Determination at 5.  As such, Commerce reasons

that "{s}imply requesting the data several times is not the only action that Nippon Steel could have

taken to induce compliance," especially given that this same issue has arisen in several previous

segments of this proceeding.  *Id.* at 6.  Addressing the Court's concern about relying on its analysis

in previous administrative reviews, Slip-Op. 24-112 at 24, Commerce correctly explains that it is

appropriate to rely on prior analyses "to demonstrate that an issue was not of first impression and

that the plaintiff is on notice that the affiliate party issue regarding downstream sales exists,"

Remand Determination at 7.  Still, Commerce reasons that it has not relied on these previous

decisions to support its AFA determination here, but rather on the factual record, which shows that

Nippon Steel failed to provide the sales information requested.  *See id.*  And again, this conclusion

is not contested by the parties.

Moreover, Commerce fully addresses the arguments raised by Nippon Steel related to its

efforts to obtain the requested information from its home market affiliates.  *See id.* at 12-13.  For

instance, Commerce explains that Nippon Steel knew the possible consequences of non-

compliance based on its history under this order.  *See id.* at 12.  As Commerce explains, the fact

that litigation stemming from the first administrative review of this order had not been completed

3

Ct. No. 21-00533

by the time that Nippon Steel made its third review sales is beside the point, as Nippon Steel had already experienced this same issue during the original investigation and subsequent administrative reviews. *Id.* at 13. Further, for the reasons Commerce provides, the fact that an affiliate indicates it may comply with a request for information does not negate the fact that it ultimately does not do so, especially in light of the longstanding economic relationship between Nippon Steel and its home market affiliates. *Id.*

Second, Commerce has adequately explained why Japanese law does not justify Nippon Steel's failure to provide information from its home market affiliates. *Id.* at 7-11. Commerce makes clear that by electing to export to the United States, Nippon Steel has chosen to be subject to the U.S. antidumping duty laws. *Id.* at 7-8. As Commerce rightly notes, the laws of foreign governments (*e.g.*, Japanese antitrust laws) have no bearing on the obligations foreign companies face under U.S. law. *Id.* And there is no exception for foreign respondents because of their home market legal restrictions. *Id.* Otherwise, as Commerce explains, "foreign governments could freely impose data sharing prohibitions with Commerce, making it impossible for Commerce to calculate dumping margins as envisioned by the U.S. antidumping duty statute." *Id.* at 8. Commerce also provides a detailed analysis of the Japanese laws in question and reasonably reaches the conclusion that, even if they were applicable to a U.S. antidumping duty proceeding, Nippon Steel would not have violated them in acting to the best of its ability to provide the requested information. *Id.* at 8-10. In other words, as Commerce rightly concludes, Nippon Steel was under no obligation to violate Japanese law in order to participate fully in this proceeding. *Id.* at 10-11. Therefore, even if they were applicable, Japanese legal restrictions are not a justification for Nippon Steel's failure to provide information from its home market affiliates here.

Ct. No. 21-00533

Furthermore, Commerce fully addresses the arguments raised by Nippon Steel regarding the relevance of Japanese law to the respondent's ability to provide the requested information. *Id.* at 13-14. For example, Commerce reiterates that the U.S. antidumping duty laws do not contain a reporting exception based on foreign government legal restrictions. *Id.* Commerce also reasons that, to the extent that Nippon Steel's affiliates were concerned about revealing their proprietary data to Nippon Steel, they could have arranged to submit that directly to the agency, thereby avoiding potential issues under Japanese antitrust laws. *See id.* at 14.

Importantly, as summarized above, Commerce adequately and reasonably addresses each of the issues raised by Nippon Steel in response to the agency's draft remand results. *See id.* at 12-14; Def. Remand Cmts. at 11-13. And it does so in sufficient detail despite Nippon Steel merely listing its concerns with the draft remand results in its bare-bones December 27, 2024 submission, thereby failing to provide substantive arguments for Commerce to address. *See* Letter from Sidley Austin LLP to Sec'y Commerce, re: *Certain Hot-Rolled Steel Flat Products from Japan: NSC's Comments on the Department's Draft Results of Redetermination Pursuant to Court Remand* (Dec. 27, 2024) (second remand proceeding no. 4) at 2-3 ("Nippon Steel Draft Remand Results Cmts.").[1]

Additionally, as noted by Defendant, Plaintiff has also presented several arguments in its comments before the Court that were not raised to Commerce and, thus, represent a failure on Plaintiff's part to exhaust its administrative remedies. *See* Def. Remand Cmts. at 14-18. In this respect, Defendant-Intervenors agree with Defendant and reiterate that many of the arguments raised by Plaintiff in its February 7, 2025 comments were conspicuously absent from Nippon Steel's December 27, 2024 comments on Commerce's draft remand results. *See* Def. Remand

---

[1]     *See* Remand Administrative Record (Mar. 6, 2025), ECF No. 87.

Ct. No. 21-00533

Cmts. at 14-18; Pl. Remand Cmts. at 5-20; Nippon Steel Draft Remand Results Cmts. at 1-3. It is striking that Plaintiff presents 15 pages of substantive argument to the Court, even as it provided less than a page of the same in its comments to Commerce. *See* Pl. Remand Cmts. at 5-20; Nippon Steel Draft Remand Results Cmts. at 2-3. Further, as Defendant details, none of the exceptions to the exhaustion requirement apply. *See* Def. Remand Cmts. at 17. Accordingly, the Court should not consider Plaintiff's unexhausted claims, nor should the Court fault Commerce for not addressing them in its remand determination, as Plaintiff gave the agency no opportunity to do so.

Notably, the Court should not permit Plaintiff to side-step the exhaustion requirements by the mere expedient of having claimed, in its comments on Commerce's draft results, to reserve "the right to elaborate on these points before the Court should the Department not modify its decision in its final results." Nippon Steel Draft Remand Results Cmts at 3. It is not enough for Plaintiff to "simply express {its} disagreement with the Draft Results" in order "exhaust remedies." *Id.* at 2. As Defendant notes, the courts do not permit litigants to rely on placeholder arguments like this as a means for shoehorning in unexhausted arguments later. *See* Def. Remand Cmts. at 15-16. Indeed, the U.S. Court of Appeals for the Federal Circuit has explained that "absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). *See also Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017). Good policy also favors the exhaustion requirement for reasons such as the prevention of deliberate flouting of agency rules, protection of "the autonomy and efficiency of agency decisionmaking within the agency's sphere of expertise," assisting judicial review, and promoting judicial economy. *Pakfood Pub. Co. v. United States*, 34 CIT 1122, 1140, 724 F. Supp. 2d 1327,

Ct. No. 21-00533

1350 n.44 (2010) (citations omitted).  Therefore, this Court should not entertain the improperly raised arguments made by Plaintiff in its remand comments here.

In short, in its remand determination, Commerce has properly continued to apply AFA to Nippon Steel regarding the respondent's failure to report downstream sales data from its home market affiliates.  In doing so, Commerce appropriately responds to the issues raised by the Court in its opinion and remand order.  And Commerce fully addresses the comments and issues properly raised by Nippon Steel before the agency.  Accordingly, the Court should sustain Commerce's remand determination and its decision to continue to apply AFA as to these unreported sales.

## III.    CONCLUSION

For the reasons provided above, Defendant-Intervenors respectfully request that the Court reject the arguments raised by Plaintiff and sustain Commerce's decision to continue to apply AFA with respect to Nippon Steel's home market affiliates' unreported downstream sales.

Respectfully submitted,

| /s/ Alan H. Price | /s/ Roger B. Schagrin |
|---|---|
| Alan H. Price, Esq. | Roger B. Schagrin, Esq. |
| Christopher B. Weld, Esq. | Jeffrey D. Gerrish, Esq. |
| Maureen E. Thorson, Esq. | |
| Theodore P. Brackemyre, Esq. | **SCHAGRIN ASSOCIATES** |
| | 900 Seventh Street, NW |
| **WILEY REIN LLP** | Suite 500 |
| 2050 M Street, NW | Washington, DC 20001 |
| Washington, DC 20036 | (202) 223-1700 |
| (202) 719-7000 | |
| | ***Counsel to SSAB Enterprises, LLC*** |
| ***Counsel to Nucor Corporation*** | ***and Steel Dynamics, Inc.*** |

Dated: March 31, 2025

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(l), the undersigned certifies that these comments comply with the word limitation requirement. The word count for Defendant-Intervenors' Response to Plaintiff's and Defendant's Comments on the Second Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 2,038 words.


<u>/s/ Alan H. Price</u>
(Signature of Attorney)

<u>Alan H. Price</u>
(Name of Attorney)

<u>Nucor Corporation</u>
(Representative Of)

<u>March 31, 2025</u>
(Date)