

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA  •  ASIA PACIFIC  •  EUROPE

SHAWN.HIGGINS@SIDLEY.COM
+1 202 736 8020

April 14, 2025

**FILED ELECTRONICALLY**

The Honorable Mario Toscano
Clerk of the Court
U.S. Court of International Trade
One Federal Plaza
New York, NY 10278-0001

    Re:    *Nippon Steel Corporation v. United States*, Court No. 21-00533

Dear Mr. Toscano:

On behalf of Nippon Steel Corporation ("NSC"), in its role as Plaintiff in the above-captioned proceeding, we hereby file NSC's reply to the responses filed by Defendant and Defendant-Intervenors to NSC's comments on the Final Results of Redetermination Pursuant to Court Remand filed by the U.S. Department of Commerce ("Department"), pursuant to the remand order of the U.S. Court of International Trade (the "Court") in *Nippon Steel Corporation v. United States*, Court No. 21-00533, Slip Op. 24-112 (Ct. Int'l. Trade 2024) ("Remand Order"). These comments are timely filed in accordance with the deadline established in the Remand Order – i.e., "Plaintiff shall have 14 days from the date of Defendant-Intervenors' filings to submit an optional reply," which is April 14, 2025.

Copies of the attached submission have been served on the parties listed in the attached certificate of service.

# SIDLEY

Honorable Mario Toscano
April 14, 2025
Page 2

       Please do not hesitate to contact the undersigned if you have any questions regarding this

matter.

                            Respectfully submitted,

                            Shawn M. Higgins
                            Rajib Pal
                            Allison V. Reading
                            Lloyd Lyall

                            *Counsel to Nippon Steel Corporation*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

NIPPON STEEL CORPORATION,

                 Plaintiff,

     v.

UNITED STATES,

                 Defendant,

NUCOR CORPORATION, STEEL
DYNAMICS, INC. AND SSAB
ENTERPRISES, LLC,

              Defendant-Intervenors.

Court No. 21-00533

**PUBLIC DOCUMENT**

**REPLY OF PLAINTIFF, NIPPON STEEL CORPORATION,**
**TO DEFENDANT AND DEFENDANT-INTERVENORS' RESPONSES ON**
**NIPPON STEEL CORPORATION'S COMMENTS ON**
**THE DEPARTMENT OF COMMERCE'S**
**FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Counsel to Nippon Steel Corporation

April 14, 2025

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION AND SUMMARY ................................................................. 2

II.   ARGUMENT ..................................................................................................... 4

   A.   Defendants Use Vague Exhaustion Claims as a Smokescreen to Avoid Litigating on the Merits .......................................................................................................... 4

   B.   The Exhaustion Doctrine Is Satisfied When the Department Was on Notice of an Argument and Had an Opportunity to Respond ......................................... 6

   C.   NSC's Factual Contentions Arguments Were Exhausted ................................. 11

      1.   Legal Component ....................................................................................... 11

      2.   Factual Component ..................................................................................... 13

   D.   NSC's Japanese Law Arguments Were Exhausted ......................................... 15

      1.   Legal Component ....................................................................................... 16

      2.   Factual Component ..................................................................................... 17

   E.   NSC's Statutory Interpretation Arguments Concerning the "Best Efforts" Standard in 19 U.S.C. § 1677e(b) Are Exempted from Exhaustion Requirements as Pure Questions of Law 22

III.   CONCLUSION ................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agro Dutch Indus. Ltd. v. United States*,
  508 F.3d 1024 (Fed. Cir. 2007).............................................................21

*Alloy Piping Products, Inc. v. United States*,
  33 C.I.T. 349 (Ct. Int'l Trade 2009) ............................................7, 8, 19

*Apex Frozen Foods Priv. Ltd. v. United States*,
  862 F.3d 1322 (Fed Cir. 2017).................................................7, 10, 15

*Apex Frozen Foods Priv. Ltd. v. United States*,
  37 F. Supp. 3d 1286 (Ct. Int'l Trade 2014) ...........................................10

*Apex Frozen Foods Priv. Ltd. v. United States*,
  2015 WL 4646543 (Ct. Int'l Trade 2015)......................................10, 15

*Blue Field (Sichuan) Food Indus. Co. v. United States*,
  37 C.I.T. 1619 (Ct. Int'l Trade 2013) .....................................................7

*Bridgestone Americas, Inc. v. United States*,
  34 C.I.T. 573 (Ct. Int'l Trade 2010) ........................................................6

*Calcutta Seafoods Pvt. Ltd. v. United States*,
  495 F. Supp. 3d 1318 (Ct. Int'l Trade 2021) ................................. *passim*

*Canadian Solar Int'l Ltd. v. United States*,
  378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019) .........................................13

*Consol. Bearings Co. v. United States*,
  25 C.I.T. 546 (Ct. Int'l. Trade 2001) ....................................................21

*Ellwood City Forge Co. v. United States*,
  582 F. Supp. 3d 1259 (Ct. Int'l Trade 2022) .............................6, 7, 8, 10

*Garg Tube Exp. LLP v. United States*,
  698 F. Supp. 3d 1230 (Ct. Int'l Trade 2024) ........................................21

*Hyundai Steel Co. v. United States*,
  319 F. Supp. 3d 1327 (Ct. Int'l Trade 2018) ........................................12

*Itochu Bldg. Prods. v. United States*,
  733 F.3d 1140 (Fed. Cir. 2013)........................................................6, 21

*Kawasaki Steel Corp. v. United States*,
    110 F. Supp. 2d 1029 (Ct. Int'l Trade 2000) ..........................................................12

*Luoyang Bearing Corp. v. United States*,
    347 F. Supp. 2d 1326 (Ct. Int'l Trade 2004) ............................................................7

*Mueller Comercial De Mexico v. United States*,
    753 F.3d 1227 (Fed. Cir. 2014)...............................................................................12

*Ningbo Dafa Chem. Fiber Co. v. United States*,
    580 F.3d 1247 (Fed. Cir. 2009)..........................................................................7, 20

*Nippon Steel v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003).........................................................12, 16, 22, 23

*Rhone Poulenc Inc. v. United States*,
    899 F.2d 1185 (Fed. Cir. 1990).............................................................................10

*Solvay Solexis S.p.A. v. United States*,
    33 C.I.T. 1179 (Ct. Int'l Trade 2009) ............................................................ *passim*

*Tr. Chem Co. v. United States*,
    35 C.I.T. 1012 (Ct. Int'l Trade 2011). ..........................................................6, 8, 20

**Statutes**

19 U.S.C. § 1677e(b) ............................................................................... *passim*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| NIPPON STEEL CORPORATION,<br><br>               Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>               Defendant,<br><br>NUCOR CORPORATION, STEEL<br>DYNAMICS, INC. AND SSAB<br>ENTERPRISES, LLC,<br><br>          Defendant-Intervenors. | Court No. 21-00533<br><br>**PUBLIC DOCUMENT** |

**REPLY OF PLAINTIFF, NIPPON STEEL CORPORATION,**
**TO DEFENDANT AND DEFENDANT-INTERVENORS' RESPONSES ON**
**NIPPON STEEL CORPORATION'S COMMENTS ON**
**THE DEPARTMENT OF COMMERCE'S**
**FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Nippon Steel Corporation ("NSC"), Plaintiff in the above-captioned proceeding, hereby replies to the responses filed by Defendant on March 10, 2025 ("Defendant's Response"), ECF No. 88, and Defendant-Intervenors on March 31, 2025 ("Defendant-Intervenors' Response"), ECF No. 92, to NSC's comments filed on February 7, 2025 ("NSC's Comments"), ECF No. 83, on the Final Results of Redetermination Pursuant to Court Remand ("Final Remand Redetermination"), ECF No. 81, filed by the U.S. Department of Commerce ("Department") on January 8, 2025. This reply is filed pursuant to the remand order of the U.S. Court of International Trade (the "Court") in *Nippon Steel Corporation v. United States*, Court No. 21-00533, Slip Op. 24-112 (Ct. Int'l. Trade 2024) ("Remand Order"), ECF No. 80.

## I.      INTRODUCTION AND SUMMARY

NSC's arguments to this Court are the same arguments NSC has made to the Department throughout the third administrative review ("AR3") of this proceeding.  In response to the Department's questionnaires in AR3, NSC documented the additional efforts NSC made to collect information from downstream suppliers[1] and how threatening to cease doing business with those suppliers unless they provided the requested information would violate the Japanese Antimonopoly Act.[2]  When the Department ignored this information in its Preliminary Results,[3] NSC extensively briefed both arguments in NSC's Case Brief.[4]

This Court agreed that the Department failed to address NSC's arguments and remanded with express instructions for the Department to do so.[5]  Nonetheless, the Department's Draft Remand Redetermination, issued on December 18, 2024, again failed to engage with NSC's arguments.[6]  On December 19, 2024, NSC requested an extension to comment on the Draft Remand Redetermination because, *inter alia*, the holidays made it difficult to seek necessary

---

[1]      Letter from Sidley Austin LLP to the Hon. Wynn Coggins, DOC No. A-588-874, dated February 1, 2021 ("NSC's SQR") at Exhibit SB-1 (APPX81703-81747).

[2]      *See* Letter from Sidley Austin LLP to the Hon. Wilbur L. Ross, Jr., DOC No. A-588-874, dated June 29, 2020 ("NSC's BQR") at Exhibit B-23 (APPX80633-80835), containing Memorandum from Shimada Hamba & Osajima on Abuse of Superior Bargaining Position and Unjust Refusal to Trade under Japan's Act on Prohibition of Private Monopolization and Maintenance of Fair Trade ("Japanese Law Firm Memorandum") (APPX80634-80640) and Guidelines Concerning Abuse of Superior Bargaining Position under the Antimonopoly Act ("Japanese Antimonopoly Act Guidelines") (APPX80641-80676).

[3]      *Certain Hot-Rolled Steel Flat Products From Japan: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments*; 2018-2019, 86 Fed. Reg. 10920, 10922 (February 23, 2021) ("Preliminary Results") (APPX2458-APPX2460) and accompanying Preliminary Decision Memorandum (APPX2433-APPX2457).

[4]      *See* Letter from Sidley Austin LLP to the Hon. Gina M. Raimondo, DOC No. A-588-874, dated March 25, 2021 ("NSC's Case Brief") at 23-33 (APPX83023-83033).

[5]      Remand Order at 22-25, ECF No. 80.

[6]      *See* Draft Results of Redetermination Pursuant to Court Remand, DOC No. A-588-874, dated December 18, 2024 ("Draft Remand Redetermination") (APPX4013-4023).

advice from Japanese counsel.  The Department failed to respond until the evening of Christmas

Day, December 25, 2024, at which point it denied the extension request.[7]

NSC timely filed its comments on the Draft Remand Redetermination on December 27,

2024.[8]  In these comments, NSC reiterated that the Draft Remand Redetermination still failed to

address NSC's original arguments.  Specifically, NSC identified six components of those

arguments the Department had failed to address, and requested that the Department "closely re-

review" the exhibits containing information on those arguments.[9]

The Department's Final Remand Redetermination again ignored NSC's arguments.  So

NSC again appealed to this Court, and in NSC's Comments repeated the arguments the

Department had failed to respond to, grouping them into two broad categories.  Specifically,

NSC's Comments explain that the Department continued to ignore: (1) factual circumstances,

such as NSC's additional efforts to obtain missing data in AR3;[10] and (2) legal circumstances

indicating NSC could not have done more without violating Japanese antitrust law, which is

something the "best of its ability" standard in 19 U.S.C. § 1677e(b) does not require NSC to

do.[11]

Rather than respond to NSC's arguments on the merits, Defendant and Defendant-

Intervenors (collectively, "Defendants") now argue that NSC failed to exhaust its remedies.[12]

Defendants are extraordinarily vague about what in particular they view as unexhausted.  In any

---

[7]     *See* Letter from Sidley Austin LLP to the Hon. Gina M. Raimondo, DOC No. A-588-874, dated December 27, 2024 ("NSC's Draft Redetermination Comments") (APPX4024-4029) (describing this history).

[8]     *See* NSC's Draft Redetermination Comments at 1-2 (APPX4024-4025).

[9]     *See* NSC's Draft Redetermination Comments at 2-3 (APPX4025-4026).

[10]    *See* NSC's Comments at 5-11, ECF No. 83.

[11]    *See* NSC's Comments at 11-20, ECF No. 83.

[12]    *See* Defendant's Response at 14-18, ECF No. 88; Defendant-Intervenors' Response at 5-6, ECF No. 92.

case, their arguments are frivolous: all of the arguments in NSC's Comments were previously

raised to the Department, including in NSC's Case Brief and NSC's Draft Redetermination

Comments, or at most are elaborations or extensions of those arguments that are permissible

under this Court's exhaustion doctrine.  Additionally, NSC's statutory interpretation arguments

are exempt from the exhaustion requirement as pure questions of law.

## II.    ARGUMENT

### A.    Defendants Use Vague Exhaustion Claims as a Smokescreen to Avoid Litigating on the Merits

As a preliminary matter, Defendants are extremely vague about which particular

arguments they believe are unexhausted, and use exhaustion as a smokescreen to attempt to

avoid litigating on the merits.  As just noted, NSC's Comments explain that the Department's

Final Remand Redetermination continues to ignore various factual and legal circumstances.[13]

The chief guidance Defendant offers as to what arguments it considers unexhausted is the

following:

> In contrast to the six arguments presented to Commerce {in NSC's
> Draft Redetermination Comments}, which were entirely devoid of
> citations to any legal authority, NSC's comments on the … remand
> redetermination contain 15 pages of arguments not presented to
> Commerce.  Because NSC did not make these arguments to
> Commerce (other than those already addressed), NSC did not
> exhaust its administrative remedies and the arguments cannot be
> raised now.[14]

This statement is intractably vague.  The "six arguments presented to Commerce" in

NSC's Draft Redetermination Comments are themselves a summary of the arguments NSC

previously raised to the Department in its questionnaire responses, repeated in NSC's Case Brief,

---

[13]    *See* NSC's Comments at 5-20, ECF No. 83.
[14]    Defendant's Response at 14, ECF No. 88.

4

and repeated again in NSC's Comments.  It is thus not clear what if anything Defendant views as "not already addressed."  To make matters worse, Defendant says that "NSC's comments on the … remand redetermination contain 15 pages of arguments not presented to Commerce," but then immediately adds that NSC failed to exhaust these arguments "other than those already addressed {by NSC's Draft Redetermination Comments}."[15]  This indicates that Defendant does in fact agree that some portion of the alleged "15 pages of arguments not presented to Commerce" were previously presented to the Department (because they were "already addressed").  However, Defendant never clarifies which arguments it views as "already addressed" versus unexhausted.[16]

Defendant-Intervenors' exhaustion claims are equally vague.  Defendant-Intervenors simply state that NSC presented "many" or "several" arguments "in its comments before the Court that were not raised to Commerce."[17]  But Defendant-Intervenors also argue that NSC's Comments raise several arguments that were already addressed by the Department,[18] and offer no indication as to which arguments they consider exhausted versus unexhausted.

If NSC's arguments on the merits really were unexhausted, Defendants could and should have been precise about which arguments they believe are unexhausted.  Defendants' failure to do so leaves NSC no choice but to explain why *everything* in NSC's Comments is not new, even

---

[15]    Defendant's Response at 14, ECF No. 88.
[16]    Defendant's claim that "{p}articularly, NSC goes to great lengths to explain why Commerce's view of the Japanese antitrust law is not reasonable," Defendant's Response at 16, ECF No. 88, is equally intractable.  Defendant simultaneously argues that the Department already addressed many of NSC's Japanese law arguments, *see id.* at 10-11, and it is not clear which Japanese law arguments Defendant views as already addressed versus unexhausted. Indeed, Defendant-Intervenors say "Commerce fully addresses the arguments raised by Nippon Steel regarding the relevance of Japanese law."  Defendant-Intervenors' Response at 5, ECF No. 92.
[17]    Defendant-Intervenors' Response at 5-6, ECF No. 92.
[18]    *See* Defendant-Intervenors' Response at 2-5, ECF No. 92.

though NSC and Defendants apparently agree that at least some of the content in NSC's

Comments is exhausted.  Ironically, Defendants' failure to articulate what is and is not in dispute

thus offends judicial economy – one of the very principles the exhaustion doctrine is meant to

promote.[19]

　　　In any case, Defendants' exhaustion claim is frivolous, because everything NSC says in

NSC's Comments is a repetition of claims it has already made to the Department, or a

permissible elaboration or extension of those arguments.  Moreover, NSC's legal arguments are

excused from the exhaustion requirement as pure questions of law.

**B.**　　**The Exhaustion Doctrine Is Satisfied When the Department Was on Notice of an Argument and Had an Opportunity to Respond**

　　　"Exhaustion applies when it serves a 'practical purpose' – that of giving notice to the

agency so that it may be the initial decision maker and create a record for subsequent judicial

review."[20]  Accordingly, "{t}he determinative question is whether Commerce was put on notice

of the issue,"[21] not whether a party raised an argument in the same "specific form"[22] or using the

same "exact wording"[23] before the Department and on appeal.  For the same reason, parties may

also "introduce 'an extension of previously made arguments,'"[24] such as by offering additional

reasons to support an argument made below,[25] or raise "closely related arguments to the issues

---

[19]　　*See, e.g.*, *Bridgestone Americas, Inc. v. United States*, 34 C.I.T. 573, 578 (Ct. Int'l Trade 2010) (stating that the exhaustion doctrine "reflects a respect for judicial economy").

[20]　　*Ellwood City Forge Co. v. United States*, 582 F. Supp. 3d 1259, 1276 (Ct. Int'l Trade 2022) (citing *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013)).

[21]　　*Tr. Chem Co. v. United States*, 35 C.I.T. 1012, 1024 n.27 (Ct. Int'l Trade 2011).

[22]　　*Solvay Solexis S.p.A. v. United States*, 33 C.I.T. 1179, 1183 n.2 (Ct. Int'l Trade 2009).

[23]　　*Tr. Chem Co.*, 35 C.I.T. at 1024 n.27.

[24]　　*Calcutta Seafoods Pvt. Ltd. v. United States*, 495 F. Supp. 3d 1318, 1327 n.4 (Ct. Int'l Trade 2021) (citing *Solvay Solexis*, 33 C.I.T. at 1183 n.2).

[25]　　*See Solvay Solexis*, 33 C.I.T. at 1183 n.2.

raised in the administrative proceedings,"[26] so long as the Department was on notice.  Indeed, in *Ningbo*, the Federal Circuit held that an argument is exhausted when "the record before Commerce contained at least a suggestion" of the argument.[27]  Defendants' principal authority for exhaustion – *Apex Frozen Foods* – cites this exact sentence of *Ningbo* without objection.[28] The key question is whether the Department was on notice and had an opportunity to respond.[29]

The focus on notice also explains why this Court has repeatedly held that "{a} plaintiff's brief statement of the argument is sufficient {to exhaust an argument} if {(1)} it alerts the agency to the argument with reasonable clarity and {(2)} avails the agency with an opportunity to address it."[30]  In *Alloy Piping,* for example, this Court held that a two-sentence articulation of an argument was sufficient to provide the Department with an opportunity to address the claim and thus satisfy the exhaustion requirement.[31]  Plaintiff Ta Chen in that case exhausted an argument by simply stating the following before the Department:

> Ta Chen's U.S. subsidiary {TCI} incurs enormous inventory carry{ing} and credit costs (from delay in customer payment) as to its U.S. sales ....  {Commerce} should adjust its calculation of Ta Chen's CEP Profit to include such costs.  Doing so accurately reflects Ta Chen's true profit and costs.[32]

---

[26]     *Calcutta Seafoods*, 495 F. Supp. 3d at 1327 n.4.

[27]     *See Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1259 (Fed. Cir. 2009).

[28]     *See Apex Frozen Foods Priv. Ltd. v. United States*, 862 F.3d 1322, 1332 (Fed Cir. 2017) (stating that the standard was inapplicable to the facts at bar but not contesting the standard).

[29]     *See Blue Field (Sichuan) Food Indus. Co. v. United States*, 37 C.I.T. 1619, 1628-29 (Ct. Int'l Trade 2013) (collecting cases).

[30]     *Alloy Piping Products, Inc. v. United States,* 33 C.I.T. 349, 362 (Ct. Int'l Trade 2009) (citing *Luoyang Bearing Corp. v. United States*, 347 F. Supp. 2d 1326, 1352 (Ct. Int'l Trade 2004)); *see also Ellwood City*, 582 F. Supp. 3d at 1281.

[31]     *See Alloy Piping,* 33 C.I.T. at 362.

[32]     *Alloy Piping,* 33 C.I.T. at 362 (citing plaintiff's case brief to the Department).

This Court held that this statement "alerted Commerce of {Ta Chen's} argument with reasonable clarity" and the argument was thus exhausted.[33]  More recently, this Court articulated the standard this way: the exhaustion requirement prevents respondents from "blindsid{ing} the agency in court when they disagree{} with the agency's final determination … {but it} does not require that {respondents} submit a dissertation on its legal arguments; it merely requires that the agency receive fair notice of them."[34]

Many of the arguments in NSC's Comments are outright repetitions of arguments it previously made to the Department in its questionnaire responses and NSC's Case Brief, and subsequently summarized in NSC's Draft Redetermination Comments.  NSC exhausted these arguments because they are repetitions of arguments made to the Department – even if not using same "exact wording"[35] or "specific form."[36]

To the extent that Defendants seek to argue that NSC's Draft Redetermination Comments raise new arguments in insufficient detail, the explanations in NSC's Draft Redetermination Comments easily meet the *Alloy Piping* standard.  While mere expression of disagreement with the Draft Results may not be sufficient to exhaust remedies,[37] NSC did more.  Like the plaintiffs in *Alloy Piping*, NSC supplied a "brief statement" of each objection that "provide{d} Commerce with an opportunity to address the claim."[38]  Indeed, Defendant-Intervenors concede that NSC's Draft Redetermination Comments were sufficient to provide the Department notice and an opportunity to address NSC's claims: they state that "Commerce adequately and reasonably

---

[33]    *Alloy Piping,* 33 C.I.T. at 362.
[34]    *Ellwood City*, 582 F. Supp. 3d at 1281.
[35]    *See Tr. Chem Co.*, 35 C.I.T. at 1024 n.27.
[36]    *See Solvay Solexis*, 33 C.I.T. at 1183 n.2.
[37]    *See* Defendant's Response at 16, ECF No. 88; Defendant-Intervenors' Response at 6, ECF No. 92.
[38]    *See Alloy Piping,* 33 C.I.T. at 362.

8

addresses each of the issues raised by Nippon Steel in response to the agency's draft remand results ... despite Nippon Steel merely listing its concerns with the draft remand results in {NSC's Draft Redetermination Comments}."[39]

Moreover, even if the arguments in NSC's Comments are not outright repetitions of arguments previously made to the Department, they are "'an extension of previously made arguments'"[40] or "closely related arguments to the issues raised in the administrative proceedings"[41] for which the Department was on notice. Such arguments are permissible under the exhaustion doctrine.

Defendant attempts to anticipate this argument by suggesting that "{e}ven though NSC argues for the same result before this Court and Commerce ... NSC's filing in Court offers reasons for that result that Commerce never had the opportunity to address."[42] The claim that NSC offers new reasons in NSC's Comments is factually incorrect, as discussed below. But the claim also hints that Defendant misinterprets the law.

Defendant offers *Apex Frozen Foods* for the blanket proposition that parties cannot elaborate before this Court on arguments previously made before the Department.[43] However, the rule is more complicated than that, because this Court regularly allows such elaboration in certain circumstances. For example, in *Solvay Solexis*, a party argued to the Department that a set of financial statements were inaccurate measures of its costs. On appeal to this Court, the party added the reason: the financial statements were inaccurate because they *failed to account*

---

[39]     Defendant-Intervenors' Response at 5, ECF No. 92.
[40]     *See Calcutta Seafoods*, 495 F. Supp. 3d at 1327 n.4 (citing *Solvay Solexis*, 33 C.I.T. at 1183 n.2).
[41]     *See Calcutta Seafoods*, 495 F. Supp. 3d at 1327 n.4.
[42]     Defendant's Response at 16, ECF No. 88.
[43]     *See* Defendant's Response at 16, ECF No. 88.

*for goodwill*.  This Court held: "{t}his argument is an extension of this same issue.  Commerce had a chance to review this issue; thus, it was properly exhausted."[44]

The real question is thus how to distinguish "extensions of the same issue" from "new issues."  As *Apex Frozen Foods* itself acknowledged, the answer is notice: whether the Department "ha{d} a meaningful opportunity to address" the argument.[45]  In *Apex*, plaintiffs raised an "entirely distinct" argument that this Court, "after scouring the case briefs and trial briefs … {could not} find {a} high-level, legal version of … mentioned anywhere."[46]  There was no chance that the Department would "naturally infer" the argument's existence.[47]  By contrast, in *Solvay Solexis*, the Department "had a chance to review the issue; thus, it was properly exhausted."[48]

As explained below, much of the material in NSC's Comments simply repeats points made to and ignored by the Department several times before.  However, even to the extent this material elaborates or expands on NSC's previous arguments, NSC hardly "blindsided the agency in court."[49]  Any such elaboration simply further develops the same points NSC had

---

[44]     *Solvay Solexis*, 33 C.I.T. at 1183 n.2.
[45]     *See Apex Frozen Foods*, 862 F.3d at 1332.
[46]     *Apex Frozen Foods*, 862 F.3d at 1331-1332 (quoting and describing *Apex Frozen Foods Priv. Ltd. v. United States*, 2015 WL 4646543, *7 (Ct. Int'l Trade 2015)).
[47]     *Apex Frozen Foods*, 862 F.3d at 1332 (citing *Apex Frozen Foods Priv. Ltd. v. United States,* 37 F. Supp. 3d 1286, 1298 (Ct. Int'l Trade 2014)).  Defendant also cites *Rhone Poulenc* for the proposition that articulating "another angle" of a previously-raised argument is impermissible.  *See* Defendant's Response at 16, ECF No. 88 (citing *Rhone Poulenc Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)).  However, in *Solvay Solexis*, this Court subsequently confined *Rhone Poulenc* to situations where a party "intentionally ignore{s} {an argument below} for 'tactical reasons.'"  *See Solvay Solexis*, 33 C.I.T. at 1183 n.2.  There is no allegation of such tactics here.
[48]     *Solvay Solexis*, 33 C.I.T. at 1183 n.2.
[49]     *See Ellwood City*, 582 F. Supp. 3d at 1281.

already made, relying on record material to which NSC had specifically and repeatedly directed the Department's focus.

### C.    NSC's Factual Contentions Arguments Were Exhausted

NSC's first main argument – that the Department continued to ignore factual circumstances relevant in AR3, such as NSC's additional efforts to extract information from downstream suppliers – has legal and factual elements.  On the law, NSC's Comments argue that 19 U.S.C. §1677e(b), the "best efforts" standard: (1) does not authorize the Department to impose adverse facts available ("AFA") unless it finds that greater efforts would have been reasonable; and (2) relatedly, does not require a respondent to threaten to cease doing business when it is reasonable to expect that lesser efforts will suffice.[50]  On the facts, NSC's Comments reiterate four sets of circumstances, previously raised to and ignored by the Department, illustrating why greater efforts would have been unreasonable in AR3.[51]

Defendants fail to specifically indicate what if anything here they view as new.  Perhaps that is because Defendants agree these arguments are not new.  All of these points reiterate points NSC has already made to the Department.  In the alternative, they are permissible "extension{s} of previously made argument{s}"[52] or "closely related arguments to the issues raised in the administrative proceedings."[53]

### 1.    Legal Component

Legally, NSC's Comments argue that 19 U.S.C. § 1677e(b) does not authorize the Department to impose AFA unless it finds that it was reasonable to expect greater efforts, and

---

[50]    *See* NSC's Comments at 5-11, ECF No. 83.
[51]    *See* NSC's Comments at 11-20, ECF No. 83.
[52]    *See Calcutta Seafoods*, 495 F. Supp. 3d at 1327 n.4 (citing *Solvay Solexis*, 33 C.I.T. at 1183 n.2).
[53]    *See Calcutta Seafoods*, 495 F. Supp. 3d at 1327 n.4.

does not require a respondent to threaten to cease doing business when it is reasonable to expect that lesser efforts will suffice.[54]  Specifically, NSC argued:

> The "best of its ability" standard does not require a respondent to immediately deploy every conceivable tactic on downstream affiliates to collect data when it is reasonable in the circumstances to expect that a subset of those tactics will be sufficient.  Rather, under the standard, "{a}n adverse inference may {be drawn} … only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; i.e., under circumstances in which it is reasonable to conclude that less than full cooperation has been shown."[55]

This argument simply restates NSC's Case Brief.  There, NSC argued that 19 U.S.C. § 1677e(b) "does not require perfection" and used the *same quotation* from *Nippon Steel* reproduced in NSC's Comments excerpted above.[56]

The Draft and Final Remand Redeterminations rely on *Mueller*, *Kawasaki*, and *Hyundai Steel Co.* to suggest that § 1677e(b) authorizes the Department to impose AFA on a respondent any time the respondent fails to threaten recalcitrant affiliates.[57]  NSC responded on pages 9-10 of NSC's Comments.  However, the thrust of NSC's response to these cases was limited to quoting sections of the same cases the Department cited to explain why the Department's reading of the cases was wrong.  The Department can hardly claim it was not aware of these possible

---

[54]      *See* NSC's Comments at 7-10, ECF No. 83.

[55]      NSC's Comments at 7, ECF No. 83 (quoting *Nippon Steel v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)).

[56]      *See* NSC's Case Brief at 25-26.

[57]      *See* Draft Remand Redetermination at 6 (APPX4018); Final Remand Redetermination at 6, ECF No. 81 (both citing *Mueller Comercial De Mexico v. United States*, 753 F. Supp. 2d 1227, 1233-34 (Fed. Cir. 2014); *Kawasaki Steel Corp. v. United States*, 110 F. Supp. 2d 1029, 1038 (Ct. Int'l Trade 2000); and *Hyundai Steel Co. v. United States*, 319 F. Supp. 3d 1327, 1345 (Ct. Int'l Trade 2018)).

12

responses, because they rely on statements from the same cases the Department used to make its arguments in the first place.[58]

### 2.   Factual Component

NSC's Comments also argue that the Department's Final Remand Redetermination continued to ignore factual circumstances such as NSC's additional efforts to obtain missing data in AR3.[59]  It is not clear whether Defendants view any content in this argument as unexhausted either.  In any case, none of it is new.  All of these arguments merely reiterate – or at most, permissibly elaborate – arguments NSC previously made to the Department in NSC's Case Brief and NSC's Draft Redetermination Comments.

First, NSC's Comments explain that the Department's Final Remand Redetermination continues to ignore the additional efforts NSC made in AR3 to request data from the one affiliate at issue, and explains that NSC could not have reasonably known such additional efforts would be insufficient.[60]  This argument is a plain repetition of the argument NSC made on pages 26-28 of NSC's Case Brief and subsequently summarized on pages 2-3 of NSC's Draft Redetermination Comments.  Moreover, NSC's Draft Redetermination Comments explicitly directed the Department to "closely re-review Exhibit{} … SB-1," which contains the factual evidence of NSC's additional efforts to induce compliance from recalcitrant affiliates.[61]  Indeed, the Remand Order explicitly instructed the Department to address "these increased efforts" that

---

[58]    NSC also cited a new case, *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019), to support this reasoning.  *See* NSC's Comments at 9-10, ECF No. 83.  However, the exhaustion doctrine only bars plaintiffs from raising new arguments – not citing new cases.  NSC cited *Canadian Solar* only to further support an argument for which the Department was already on notice: that its reading of *Mueller*, *Kawasaki*, and *Hyundai Steel Co.* was incorrect.

[59]    *See* NSC's Comments at 11-20, ECF No. 83.

[60]    *See* NSC's Comments at 6-7, ECF No. 83.

[61]    NSC's Draft Redetermination Comments at 3 (APPX4026).

13

"went beyond the efforts Nippon Steel made in the past."[62]  Defendants can hardly claim that the Department was "blindsided" by this argument.

Second, NSC's Comments reiterate that the affiliates' data collection efforts were impeded by the COVID-19 pandemic, and explain that the Department again ignored this point.[63]  NSC's Draft Redetermination Comments explicitly raised this argument on page 3 and directed the Department to re-review Exhibit SB-1, where the information was originally contained.

Third, NSC's Comments repeat that NSC had only a small minority share in the affiliate at issue and thus no control over its decision on whether to respond to NSC's requests.[64]  NSC made this exact argument at pages 28-30 of NSC's Case Brief, and repeated it on page 3 of NSC's Draft Redetermination Comments.

Fourth, NSC's Comments reiterate that the boundaries of NSC's obligations vis-à-vis its affiliated home market resellers in order to avoid AFA were not known during the AR3 period of review because litigation on this issue was ongoing at that time.[65]  Again, NSC made this point explicitly on page 3 of NSC's Draft Redetermination Comments.  The Department actually acknowledged this argument in its Final Remand Redetermination – it just misinterpreted it.[66]

Accordingly, all of the factual circumstances discussed in NSC's Comments simply repeat claims NSC made previously to the Department – in many cases, multiple times.  At most, these contentions are "extension{s} of previously made arguments" that are still permissible

---

[62]     Remand Order at 23, ECF No. 80.
[63]     *See* NSC's Comments at 8, ECF No. 83.
[64]     *See* NSC's Comments at 8, ECF No. 83.
[65]     *See* NSC's Comments at 8-9, ECF No. 83.
[66]     *See* Final Remand Redetermination at 13, ECF No. 81.

under this Court's exhaustion doctrine.[67]  They are far from "entirely distinct" arguments that "after scouring the case briefs and trial briefs, the court {could not} find {a} high-level, legal version of … mentioned anywhere."[68]  Defendants cannot credibly claim that the Department was "blindsided" by these points.

### D.     NSC's Japanese Law Arguments Were Exhausted

NSC's Comments also present legal and factual contentions with respect to Japanese antitrust law as NSC's second main argument.  Specifically, NSC argues that: (1) as a matter of statutory interpretation, 19 U.S.C. § 1677e(b) does not require respondents to violate foreign law; and (2) as a factual matter, the threats, contractual "renegotiations," or "adjustments to selling activities" the Department alleges that NSC should have made to its affiliates would violate the Japanese Antimonopoly Act.

Again, it is deeply unclear which aspects of these arguments Defendants view as unexhausted.  Defendants suggest that the Department had no opportunity to address NSC's arguments "explain{ing} why Commerce's view of the Japanese antitrust law is not reasonable,"[69] yet Defendant-Intervenors say "Commerce fully addresses the arguments raised by Nippon Steel regarding the relevance of Japanese law."[70]  Neither party identifies any specific Japanese law argument it believes is new.  In any case, both the legal and factual aspects of this argument are exhausted.

---

[67]     *See Calcutta Seafoods*, 495 F. Supp. 3d at 1327 n.4 (citing *Solvay Solexis*, 33 C.I.T. at 1183 n.2).
[68]     *See Apex Frozen Foods*, 862 F.3d at 1331-1332 (quoting and describing *Apex Frozen Foods*, 2015 WL at *7).
[69]     Defendant's Response at 16, ECF No. 88.
[70]     Defendant-Intervenors' Response at 5, ECF No. 92.

### 1.     Legal Component

NSC's legal argument that 19 U.S.C. § 1677e(b) does not require it to violate foreign law simply repeats points it has already raised before.  In NSC's Draft Redetermination Comments, NSC specifically stated that "the 'best of its ability' standard under 19 U.S.C. § 1677e(b) does not require {NSC to violate foreign law} in order to avoid the application of adverse facts available."[71]

That statement is in turn a summary of arguments NSC made in NSC's Case Brief, where NSC explained that § 1677e(b) does not authorize the Department to penalize parties who showed full cooperation.  Moreover, NSC's Case Brief reproduces a quotation from the Federal Circuit in *Nippon Steel* where that court held that "{b}efore making an adverse inference {under § 1677e(b)}, Commerce must … assess the extent of respondent's *abilities* … in responding to Commerce's requests for information."[72]  NSC's argument that § 1677e(b) does not require respondents to violate foreign law because it only requires best efforts with respect to things "within {the respondent's} ability" is merely a repetition of the same argument using different language.[73]  NSC's Comments then add that "{a}s the Federal Circuit has held, the word "ability" in {the previous sentence} "refers to 'the quality or state of being able,' especially … 'physical, mental, or *legal power to perform*.'"[74]  That phrase also comes from *Nippon Steel*, and is in fact the sentence immediately before the block quotation reproduced in NSC's Case Brief.  Indeed, the Department's Draft and Final Remand Redeterminations both cite the *exact same*

---

[71]     NSC's Draft Redetermination Comments at 3 (APPX4026).
[72]     NSC's Case Brief 25-26 (APPX83025-83026) (quoting *Nippon Steel*, 337 F.3d at 1382) (emphasis added).
[73]     *See* NSC's Comments at 17-18, ECF No. 83.
[74]     NSC's Comments at 17-18, ECF No. 83 (quoting *Nippon Steel*, 337 F.3d at 1382, quoting Webster's New Collegiate Dictionary 104 (1981) at 2 (emphasis added)).

*page* of *Nippon Steel*.[75]  The notion that the Department was unaware of this language in *Nippon*

*Steel* – despite its reliance on the same section of the same case in its Draft and Final Remand

Redeterminations – is not believable.

NSC's argument that § 1677e(b) does not require it to violate foreign law is a repetition

of an argument it has made twice before, and an argument need not be raised in the same specific

form before the Department to be exhausted before this Court.  At most, it is a permissible

elaboration or extension of a previously made argument.

### 2. Factual Component

NSC's Comments also argue, as a factual matter, that the Japanese Antimonopoly Act

prohibits NSC from threatening affiliates to induce compliance.[76]  NSC has similarly articulated

this position several times before.  NSC's Exhibit B-23 provided over 200 pages of

documentation on the Japanese Antimonopoly Act, including excerpts from the Act's official

interpretative guidelines and a memorandum from a Japanese law firm, explaining why the

threats the Department alleges that NSC should have made are illegal under the Japanese

Antimonopoly Act.[77]

NSC then raised these arguments at length in NSC's Case Brief.  Specifically, NSC

explained that any threat by NSC to cease doing business to its affiliated customers if they did

not provide downstream sales data would constitute abuse of NSC's superior bargaining position

under the Japanese Antimonopoly Act, and that "declin{ing} to sell" to recalcitrant affiliates was

equally illegal.[78]  NSC cited the specific provisions of the Japanese Antimonopoly Act, Articles

---

[75]      *See* Draft Remand Redetermination at 4 n.11 (APPX4016); Final Remand
Redetermination at 4 n.11, ECF No. 81.
[76]      *See* NSC's Comments at 11-16, ECF No. 83.
[77]      *See* NSC's BQR at Exhibit B-23 (APPX80633-80835).
[78]      *See* NSC's Case Brief at 31-32 (APPX83031-83032).

2(9)(v) and 2(9)(vi), responsible for this prohibition.[79]  NSC also cited the exact same record

materials – the Japanese Antimonopoly Act Guidelines and the Japanese Law Firm

Memorandum contained in Exhibit B-23 – that NSC instructed the Department to "closely re-

review" in NSC's Draft Redetermination Comments and subsequently relied on to make the

same argument in NSC's Comments.[80]  Indeed, in its Remand Order, even this Court ordered the

Department to "respond to Nippon Steel's arguments regarding … Japanese antitrust law"

contained in NSC's Case Brief, including NSC's argument that the Japanese Antimonopoly Act

prohibited NSC from restructuring its contracts with affiliates to require them to produce sales

data.[81]

      The Department's Draft Remand Redetermination nonetheless again failed to engage

with NSC's arguments.  NSC thus told the Department to look again.  In NSC's Draft

Redetermination Comments, NSC reiterated that the Draft Remand Redetermination

"misinterpret{s} Japanese antitrust law, which prohibits the kinds of threats, contract

modifications, or refusal to do business with the affiliate at issue contemplated by the

Department …."[82] It again explicitly asked the Department to "closely re-review Exhibit{} B-

23," the record exhibit containing Japanese law materials, "before issuing its final results."[83]

      Defendants' claim that the Department was not on notice of NSC's arguments regarding

Japanese antitrust law after all this briefing is not believable.  In NSC's Comments, NSC makes

the same argument it made before the Department in NSC's Case Brief and repeated in NSC's

---

[79]    *See* NSC's Case Brief at 31 (APPX83031).
[80]    *See* NSC's Case Brief at 31 (APPX83031).
[81]    *See* Remand Order at 24-25, ECF No. 80.
[82]    NSC's Draft Redetermination Comments at 3 (APPX4026).
[83]    NSC's Draft Redetermination Comments at 3 (APPX4026).

Draft Redetermination Comments: that the Japanese Antimonopoly Act prohibits NSC from

threatening affiliates to induce compliance.

Since Defendant cannot plausibly claim that the Department was unaware of NSC's

Japanese law objections, perhaps Defendant's objection is to the way NSC describes these

arguments in NSC's Comments.  NSC's Comments reference specific hypotheticals supplied on

pages 11 and 15-17 of the Antimonopoly Act Guidelines and specific pages of the Japanese Law

Firm Memorandum to explain why the Japanese Antitrust Law prohibits the threats the

Department believes NSC should have made.  In particular, NSC relies on these sources to:

(1) respond to the Department's argument, drawing from the same sources, that the Japanese

Antimonopoly Act does *not* prohibit such threats; and (2) clarify why the Department's

proposals that NSC renegotiate its contracts or "simply adjust{} its selling activities" are still

illegal threats under the Japanese Antimonopoly Act.[84]

The Department can hardly claim that it was unaware of these points or had no

opportunity to respond to them.  As explained, NSC repeatedly argued that threatening affiliates

under the Act was illegal.  In NSC's Draft Redetermination Comments, NSC explained that this

prohibition also encompassed the "contract modifications, or refusal to do business with the

affiliate at issue contemplated by the Department,"[85] which is precisely the kind of "brief

statement" this Court held suffices to exhaust an argument in *Alloy Piping*.[86]  NSC also

---

[84]     *See* NSC's Comments at 11-16, ECF No. 83.
[85]     NSC's Draft Redetermination Comments at 3 (APPX4026).
[86]     *See Alloy Piping,* 33 C.I.T. at 362.  Alternatively, NSC's argument that the Japanese
Antimonopoly Act's prohibition on threats prohibits forced contract renegotiations or
"adjustments in selling activities" because these activities are "simply threats by different
means," NSC's Comments at 15, is simply an elaboration of what a "threat" entails under the
statute.

repeatedly directed the Department to the specific record material in Exhibit B-23 containing the hypotheticals and Japanese law firm analysis NSC relies on to illustrate these claims.[87]

Indeed, the Department's Draft and Final Remand Redeterminations indicate that the Department paid close attention to these precise materials.  In both documents, the Department specifically discussed the Japanese Law Firm Memorandum and the Japanese Antimonopoly Act;[88] reproduced Article 2 of the Japanese Antimonopoly Act;[89] and cited specific pages of interpretive commentary in the Japanese Antimonopoly Act Guidelines to support its position.[90] The Department even indicated that it had reviewed Exhibit B-23 before issuing its Final Remand Redetermination.[91]  As a result, the level of willful blindness Defendants must attribute to the Department in order to argue that the Department was unaware of NSC's arguments is facially implausible.  For example, the Department cites pages 1-4 of the Japanese Antimonopoly Act Guidelines in its Final Remand Redetermination[92] – indicating that it reviewed the Japanese Antimonopoly Act Guidelines in search of material to support its position. The notion that the Department failed to look at pages 11 and 15-17 in the same document is not believable.  Moreover, NSC's Case Brief explicitly cited Articles 2(9)(v) and 2(9)(vi) of the Japanese Antimonopoly Act as the articles that prevent the threats the Department suggested,[93]

---

[87]    *See, e.g.,* NSC's Draft Redetermination Comments at 3 (APPX4026).

[88]    *See* Draft Remand Redetermination at 8-10 (APPX4020-4022); Final Remand Redetermination at 8-10, ECF No. 81.

[89]    *See* Draft Remand Redetermination at 9-10 (APPX4021-4022); Final Remand Redetermination at 9-10, ECF No. 81.

[90]    *See* Final Remand Redetermination at 9-10 n.34-n.37, ECF No. 81.

[91]    *See* Final Remand Redetermination at 13, ECF No. 81.

[92]    *See* Final Remand Redetermination at 9-10 n.34-n.37, ECF No. 81.

[93]    *See* NSC's Case Brief at 31 (APPX83031).

and the examples NSC discusses from the Japanese Antimonopoly Act Guidelines are listed as examples for those exact provisions.[94]

The "record before Commerce" clearly "contained at least a suggestion" of NSC's Japanese law arguments.[95] In fact, the record contained the *exact* arguments made by NSC, and NSC specifically pointed the Department to these materials multiple times, including in NSC's Draft Redetermination Comments, where NSC told the Department to "closely review" them.[96] Moreover, even if not a dead repetition, this material is an "'an extension of previously made arguments' before the court."[97] NSC has previously explained that the Japanese Antimonopoly Act prohibits threatening affiliates; in NSC's Comments, NSC simply points to the record materials the Department was already intensely focused on that make this same point by using examples.

\* \* \*

For the foregoing reasons, NSC's Comments simply repeat arguments NSC has already made to the Department. Even if that were not the case, these arguments are extensions or elaborations of those arguments permissible under this Court's exhaustion doctrine.

---

[94]      *See* NSC's Comments at 14-16, ECF No. 83 (citing Japanese Antimonopoly Act Guidelines at 11, 15-17).

[95]      *See Ningbo*, 580 F.3d 1259. *See also Tr. Chem Co.*, 35 C.I.T. at 1023 n.27 (holding that an argument was exhausted when the information cited on appeal was "necessarily before the agency" below).

[96]      *See* NSC's Draft Redetermination Comments at 3 (APPX4026).

[97]      *See Calcutta Seafoods*, 495 F. Supp. 3d at 1327 n.4 (citing *Solvay Solexis*, 33 C.I.T. at 1183 n.2).

**E.    NSC's Statutory Interpretation Arguments Concerning the "Best Efforts" Standard in 19 U.S.C. § 1677e(b) Are Exempted from Exhaustion Requirements as Pure Questions of Law**

Finally, this Court and the Federal Circuit both recognize an exception to the exhaustion requirement "where the issue presented involves a 'pure question of law.'"[98]  Such questions exist when "decisions on the merits can be made by 'statutory construction alone' without further development of the factual record,"[99] and thus "do{} not ... require the application of any special ... expertise {by Commerce} or the development of a special factual record either before or after the Court's consideration of the issue."[100]

Defendant's briefing on this issue is misleading.  Defendant cites *Nippon Steel* for the claim that the "best of its ability" standard "is not a pure question of law but a fact intensive inquiry."[101]  However, *Nippon Steel* does not stand for this proposition.  *Nippon Steel* explains that the *application* of § 1677e(b) requires the assessment of facts.[102]  Statutory interpretation of § 1677e(b) itself is a purely legal question.

Each of the two main arguments in NSC's Comments raise a statutory interpretation claim about how § 1677e(b) should be interpreted.  Both are independently exempted from the exhaustion requirement as pure questions of law.

NSC's first argument submits that: (1) § 1677e(b) prohibits the Department from imposing AFA unless it first finds that greater efforts would have been reasonable in the

---

[98]    *Garg Tube Exp. LLP v. United States*, 698 F. Supp. 3d 1230, 1240 (Ct. Int'l Trade 2024) (quoting *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007)); *Itochu*, 733 F.3d at 1146 (Fed. Cir. 2013)).

[99]    *Garg Tube*, 698 F. Supp. 3d at 1240 (quoting *Agro Dutch*, 508 F.3d at 1029 n.3).

[100]    *Consol. Bearings Co. v. United States*, 25 C.I.T. 546 (Ct. Int'l. Trade 2001) (citing plaintiff's reply in that case with approval).

[101]    Defendant's Response at 17, ECF No. 88 (citing *Nippon Steel*, 337 F.3d at 1383).

[102]    *See Nippon Steel*, 337 F.3d at 1383 (explaining that the statute "requires a factual assessment" of various circumstances).

circumstances; and (2) relatedly, § 1677e(b) does not require a respondent to threaten to cease doing business when it is reasonable to expect that lesser efforts will suffice.[103]

These issues in NSC's first argument raise pure questions of law.  The first issue is a question about what findings § 1677e(b) requires the Department to make; the second is a question about whether the statute requires "best efforts" even when it is reasonable to expect that lesser efforts will suffice.  Of course, the Department's *applications* of this standard are factual questions.  NSC has already provided the facts to support this determination in its prior briefing.  However, the question of what findings the Department must make under § 1677e(b) has nothing to do with the facts of this case.  Either the Department does or does not need to find that greater efforts would have been reasonable.  Either a respondent does or does not need to apply "best efforts" even when it is reasonable to expect that lesser efforts are sufficient.  These questions can be resolved through "statutory construction alone."

Under NSC's second argument, whether § 1677e(b) requires a respondent to violate foreign law is likewise a pure question of law.  Indeed, none of the parties' briefing on this issue implicates the facts of this case.  NSC's Comments argue that § 1677e(b) does not require respondents to violate foreign law based on its interpretation of the words "best of its ability" in the statute.[104]  As support, NSC cites *Nippon Steel*, which in turn cites a dictionary definition.[105]  Defendants argue that this interpretation would interfere with the policy of § 1677e(b) by "mak{ing} it impossible for Commerce to calculate dumping margins consistent with the statute."[106]  NSC replies that "{w}hatever merit the Department's policy concerns regarding

---

[103]    *See* NSC's Comments at 7, ECF No. 83.
[104]    *See* NSC's Comments at 17-18, ECF No. 83.
[105]    *See* NSC's Comments at 17-18, ECF No. 83 (quoting *Nippon Steel*, 337 F.3d at 1382, quoting Webster's New Collegiate Dictionary 104 (1981) at 2 (emphasis added)).
[106]    Defendant's Response at 3, ECF No. 88.

foreign data-sharing prohibitions may have, they do not overcome clear statutory text {of § 1677e(b)}."[107]  None of this debate relies on the particular facts of this case.

## III.     CONCLUSION

NSC has repeatedly briefed the arguments raised in NSC's Comments to the Department, including in NSC's Case Brief and NSC's Draft Redetermination Comments.  At most, the material in NSC's Comments is an elaboration or extension of previously-made arguments, both of which are permissible under this Court's exhaustion doctrine, and the legal aspects of these arguments are independently exempted as pure questions of law.

Accordingly, NSC respectfully requests the Court to remand this case to the Department again with instructions to recalculate NSC's dumping margin using neutral facts available instead of AFA with respect to NSC's home market affiliate's unreported downstream sales.

Respectfully submitted,

Shawn M. Higgins
Rajib Pal
Allison V. Reading
Lloyd Lyall

Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000
shawn.higgins@sidley.com

Counsel to Nippon Steel Corporation

April 14, 2025

---

[107]     NSC's Comments at 18, ECF No. 83.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedure 2(B)(1)(b), the undersigned certifies that these comments comply with the word limitation requirement.  The word count for the Reply of Plaintiff, Nippon Steel Corporation, to Defendant and Defendant-Intervenors' Responses on Nippon Steel Corporation's Comments on the Department of Commerce's Final Results of Redetermination Pursuant to Court Remand, as computed by Sidley Austin LLP's word processing system (Microsoft Word), is 6,951 words.

_____

Shawn M. Higgins

## CERTIFICATE OF SERVICE

I hereby certify that copies of the attached filing have been served electronically via the Court's CM/ECF system on April 14, 2025, addressed to the following parties:

**On behalf of SSAB Enterprises, LLC. and Steel Dynamics, Inc.:**
Roger B. Schagrin, Esq.
Schagrin Associates
900 7th Street, NW
Suite 500
Washington, DC 20001
Email: rschagrin@schagrinassociates.com

**On behalf of Nucor Corporation:**
Alan H. Price, Esq.
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036
Email: aprice@wiley.law

**On behalf of Tokyo Steel Manufacturing Co., Ltd.**
Daniel L. Porter, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, DC 20006
Email: dporter@curtis.com

**On behalf of AK Steel Corporation**
Stephen P. Vaughn
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706
svaughn@kslaw.com

**On behalf of the United States:**
Kyle S. Beckrich
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

David W. Richardson
U.S. Department of Commerce
Office of Chief Counsel for Trade Enforcement and Compliance
1401 Constitution Avenue, NW.
Room 3614
Washington, DC 20230

Shawn M. Higgins