**Slip Op. 26-34**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| NIPPON STEEL CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br>and<br><br>NUCOR CORPORATION, STEEL DYNAMICS, INC., and SSAB ENTERPRISES, LLC,<br><br>      Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 1:21-cv-00533 |

**OPINION AND ORDER**

[Sustaining the U.S. Department of Commerce's Second Remand Redetermination.]

Dated: April 8, 2026

Rajib Pal, Sidley Austin, LLP, of Washington, D.C., argued for Plaintiff Nippon Steel Corporation. With him on the briefs were Shawn M. Higgins, Allison V. Reading, and Lloyd Lyall. Richard L.A. Weiner, Sidley Austin, LLP, of Washington, D.C., also appeared.

Blake W. Cowman, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. On the brief were Tara K. Hogan, Assistant Director, Patricia M. McCarthy, Director, and Yaakov M. Roth, Acting Assistant Attorney General. Of counsel

Court No. 21-00533                                                        Page 2

were Shanni Alon and David W. Richardson, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C. Mikki Cottet and Stephen C. Tosini, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, D.C., also appeared.

Jeffrey D. Gerrish, Schagrin Associates, of Washington, D.C., argued for Defendant-Intervenors Steel Dynamics, Inc. and SSAB Enterprises, LLC.  With him on the brief was Roger B. Schagrin.  Alessandra A. Palazzolo, Christopher T. Cloutier, Elizabeth J. Drake, Luke A. Meisner, Maliha Khan, Nicholas J. Birch, and William A. Fennell, Schagrin Associates, of Washington, D.C., also appeared.

Theodore P. Brackemyre, Wiley Rein LLP, of Washington, D.C., argued for Defendant-Intervenor Nucor Corporation.  With him on the brief were Alan H. Price, Christopher B. Weld, and Maureen E. Thorson.  Enbar Toledano and Jeffrey O. Frank, Wiley Rein LLP, of Washington, D.C., also appeared.

Choe-Groves, Judge: This action concerns the final results published by the

U.S. Department of Commerce ("Commerce") in the 2018–2019 administrative

review of the antidumping duty order on certain hot-rolled steel flat products from

Japan.  See Certain Hot-Rolled Steel Flat Products from Japan ("Final Results"),

86 Fed. Reg. 47,615 (Dep't of Commerce Aug. 26, 2021) (final results of

antidumping duty administrative review and final determination of no shipments;

2018–2019) and accompanying Issues and Decision Memorandum for the Final

Results of the Antidumping Duty Administrative Review: Certain Hot-Rolled Steel

Flat Products from Japan; 2018–2019, A-588-874 (Aug. 20, 2021) ("Final IDM").

Before the Court is Commerce's second remand redetermination, filed

pursuant to the Court's Opinion and Order in Nippon Steel Corporation v. United

States ("Nippon Steel I"), 48 CIT __, 732 F. Supp. 3d 1353 (2024).  Final Results

of Redetermination Pursuant to Court Remand Order ("Second Remand Redetermination"), ECF No. 81-1; see also Final Results of Redetermination Pursuant to Court Remand ("Remand Redetermination"), ECF No. 43-1.  Plaintiff Nippon Steel Corporation ("Plaintiff" or "Nippon Steel") filed comments in opposition.  Pl.'s Cmts. Remand Redetermination ("Pl.'s Cmts."), ECF No. 83. Defendant United States ("Defendant" or "Government") filed its response to Plaintiff's comments.  Def.'s Resp. Pl.'s Cmts. Second Remand Redetermination ("Def.'s Resp."), ECF No. 88.  Defendant-Intervenors Nucor Corporation, Steel Dynamics, Inc., and SSAB Enterprises, LLC (collectively, "Defendant-Intervenors") filed their response to Plaintiff's and Defendant's comments.  Def.-Intervs.' Resp. Pl.'s Def.'s Cmts. Remand Redetermination ("Def.-Intervs.' Resp."), ECF No. 92.  Nippon Steel filed its reply to the responses filed by Defendant and Defendant-Intervenors.  Pl.'s Reply Def.'s Def.-Intervs.' Resp. Pl.'s Cmts. Remand Redetermination ("Pl.'s Reply"), ECF No. 93.  The Court held oral argument on February 11, 2026.  Oral. Arg. (Feb. 11, 2026), ECF No. 111.

For the following reasons, the Court sustains the Second Remand Redetermination.

## BACKGROUND

The Court presumes familiarity with the underlying facts and procedural history of this case.  See Nippon Steel I.

On December 11, 2019, Commerce initiated the underlying administrative

review of the antidumping duty order on certain hot-rolled steel flat products from

Japan for the period from October 1, 2018, through September 30, 2019, and

selected Nippon Steel Corporation as a mandatory respondent in the investigation.

Initiation of Antidumping and Countervailing Duty Admin. Review, Certain Hot-

Rolled Steel Flat Products from Japan, 84 Fed. Reg. 67,712, 67,715 (Dep't of

Commerce Dec. 11, 2019).  In the Final Results, Commerce determined that the

use of facts otherwise available with a partial adverse inference was warranted

because Nippon Steel failed to cooperate to the best of its ability to provide

downstream sales information from its affiliates.  See Final IDM; Certain Hot-

Rolled Steel Products from Japan, 86 Fed. Reg. 10,920 (Dep't of Commerce Feb.

23, 2021) (preliminary results of the antidumping administrative review and

preliminary determination of no shipments; 2018–2019) and accompanying

Decision Memorandum for the Preliminary Results of Antidumping Duty

Administrative Review and Preliminary Determination of No Shipments: Certain

Hot-Rolled Steel Flat Products from Japan; 2018-2019 (Feb. 17, 2021) ("PDM") at

9, PR 140, 156.[1]

In Nippon Steel I, the Court concluded that Commerce's determination to

---

[1] Citations to the administrative record reflect the public record ("PR") numbers
filed in this case, ECF No. 96.

apply facts otherwise available with a partial adverse inference was not supported

by substantial evidence and remanded for Commerce to reconsider or further

explain its decision to apply an adverse inference to Nippon Steel's downstream

sales.  48 CIT at __, 732 F. Supp. 3d at 1369.  The Court found that necessary

information was missing from the record because Commerce requested from

Nippon Steel all downstream sales data to calculate the merchandise's normal

value, and Nippon Steel failed to provide data from an affiliate.  Id. at 1368.[2]  The

Court found that Commerce did not engage with Nippon Steel's legal argument

regarding Japanese law or explain the impact of Nippon Steel's efforts over

multiple administrative reviews in its determination that maximum effort was not

put forth.  Id.  As part of Commerce's explanation on remand, the Court directed

Commerce to respond to Nippon Steel's arguments regarding (1) Japanese antitrust

law and (2) any increased efforts to engender affiliate compliance by Nippon Steel

---

[2] The Court in Nippon Steel I acknowledged that "Nippon Steel did not submit downstream sales data for three of its affiliates[,]" but noted that Nippon Steel only disputed Commerce's determination regarding "one affiliate's downstream sales," and thus the Court "[limited] its discussion to the information Nippon Steel put on the record for that affiliate."  Nippon Steel I at 1362, n.2.  Nippon Steel explained in its case brief that because two out of the three noncooperative affiliates did not sell Nippon Steel's hot-rolled steel in Japan during the period of review, those two noncooperative affiliates had no downstream sales data to provide.  Certain Hot-Rolled Steel Flat Products from Japan: NSC's Case Brief (Mar. 26, 2021) ("Case Brief") at 24–28, PR 149–152.  The Second Remand Redetermination refers to both "affiliates" plural and "affiliate" singular.  See generally Second Remand Redetermination.

compared to past administrative reviews.  Id. at 1369.

In the Second Remand Redetermination, Commerce explained its decision to continue to apply an adverse inference to Nippon Steel's home market affiliates' unreported downstream sales.  Second Remand Redetermination at 14.  Commerce determined that the requirement to provide Commerce with information necessary to perform a dumping calculation was not covered by the Japanese Antimonopoly Act and that Nippon Steel could have complied with Commerce's requests without violating Japanese law.  Id. at 5–10.  Commerce also determined that references to communications between Nippon Steel and its affiliate were not enough to overcome the obligation to act "to the best of its ability" in providing the necessary data for performing the dumping calculation.  Id. at 5.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).  The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The Court also reviews determinations made on remand for compliance with the Court's remand order.  Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT 727, 730, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

Court No. 21-00533                                                                              Page 7

## DISCUSSION

Nippon Steel argues that Commerce's decision to continue to determine that Nippon Steel did not act to the best of its ability and apply adverse facts available is unsupported by substantial evidence and not in accordance with law.  Pl.'s Cmts. at 2.  Nippon Steel considers it unreasonable for Commerce to expect more than the additional efforts Nippon Steel made in the third administrative review to induce compliance from the uncooperative affiliate, and claims that Commerce's discussion of Japanese antitrust law is legally incorrect and inconsistent with the remand order.  Id. at 3–4.  Nippon Steel requests that the Court remand this case to Commerce again with instructions to recalculate Nippon Steel's dumping margin using neutral facts available for Nippon Steel's home market affiliate's unreported downstream sales.  Id. at 4.

## I.      Exhaustion of Administrative Remedies

Defendant and Defendant-Intervenors aver that Nippon Steel failed to exhaust its administrative remedies in the proceeding below.  Def.'s Resp. at 14–18; Def.-Intervs.' Resp. at 5–7.  Defendant argues that Nippon Steel's comments on the Second Remand Redetermination contain fifteen pages of arguments not presented to Commerce, alleging that Nippon Steel presented arguments concerning Commerce's view of the Japanese Antimonopoly Act that Commerce has not been able to address.  Def.'s Resp. at 14–17.  Defendant claims that none

of the limited exceptions to the exhaustion requirement apply in this case.  Id. at

17–18.  Defendant-Intervenors aver that many of the arguments raised by Plaintiff

in its comments from February 7, 2025 were absent from Nippon Steel's comments

from December 27, 2024 on Commerce's draft remand results.  Def.-Intervs.'

Resp. at 5–6.

In response, Plaintiff argues that Defendant and Defendant-Intervenors offer

vague claims regarding which particular arguments they allege that Nippon Steel

has failed to exhaust.  Pl.'s Reply at 4.  Nippon Steel maintains that its Second

Remand Redetermination comments are a repetition of claims it has already made

to Commerce, or a permissible elaboration or extension of those arguments.  Id. at

6.  Nippon Steel contends that its legal arguments are excused from the exhaustion

requirement as pure questions of law.  Id.

Pursuant to 28 U.S.C. § 2637, the court "shall, where appropriate, require

the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  The court

"generally takes a 'strict view' of the requirement that parties exhaust their

administrative remedies[.]"  Yangzhou Bestpak Gifts & Crafts Co.; Ltd. v. United

States, 716 F.3d 1370, 1381 (Fed. Cir. 2013) (quoting Corus Staal BV v. United

States, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  There are limited exceptions to the

exhaustion requirement: when "(1) plaintiff's argument involves a pure question of

law; (2) there is a lack of timely access to the confidential record; (3) a judicial

decision rendered subsequent to the administrative determination materially affected the issue; or (4) raising the issue at the administrative level would have been futile." Ninestar Corp. v. United States, 48 CIT __, __, 687 F. Supp. 3d 1308, 1326 (2024) (quoting Gerber Food (Yunnan) Co. v. United States, 33 CIT 186, 193, 601 F. Supp. 2d 1370, 1377 (2009)). The exhaustion requirement may also be waived "if the issue was raised by another party, or if it is clear that the agency had an opportunity to consider it." Holmes Prod. Corp. v. United States, 16 CIT 1101, 1104 (1992); see also Pakfood Pub. Co. v. Unites States, 34 CIT 1122, 1145, 724 F. Supp. 2d 1327, 1351 (2010) (including issues fully considered by Commerce as a generally recognized exception to the exhaustion doctrine).

The Court remanded for Commerce to reconsider or further explain its application of an adverse inference to Nippon Steel's downstream sales, and required that any explanation from Commerce respond to Nippon Steel's arguments regarding Japanese antitrust law. See Nippon Steel I, 48 CIT at __, 732 F. Supp. 3d at 1369. Since Nippon Steel filed its Motion for Judgment on the Agency Record, Commerce has been on notice that Nippon Steel was challenging the issue of the "best of its ability" standard of 19 U.S.C. § 1677e(b), concerning the factual circumstances surrounding Nippon Steel's additional efforts to obtain missing data in this administrative review and the legal argument that Nippon Steel could not have done more without violating the Japanese Antimonopoly Act. See

Mot. J. Agency R. at 35–38, ECF Nos. 31, 32.

Nippon Steel's comments on the Second Remand Redetermination consist of arguments previously made to Commerce in its questionnaire responses and case brief. See Letter from Sidley Austin LLP to the Hon. Wilbur L. Ross, Jr., "NSC's Response to the Department's Section B Questionnaire" (June 30, 2020) ("Nippon Steel Section B Questionnaire Resp.") at B-7, B-8, PR 100–104; Case Brief at 28–32. Defendant and Defendant-Intervenors cannot successfully articulate which arguments Nippon Steel failed to exhaust and only state that "[b]ecause [Nippon Steel] did not make these arguments to Commerce (other than those already addressed), [Nippon Steel] did not exhaust its administrative remedies and the arguments cannot be raised now." Def.'s Resp. at 14; see Def.-Interv.'s Resp. at 5–6. Both Nippon Steel and the Court have made Commerce aware of the need to address Nippon Steel's argument concerning the impact of Japanese antitrust law on the "best of its ability" standard, and Commerce was provided with the opportunity to respond. See Ningbo Dafa Chem. Fiber Co., Ltd. v. United States, 580 F.3d 1247, 1259 (Fed. Cir. 2009) (holding that the Court did not abuse its discretion in finding that Commerce had the opportunity to consider plaintiff's argument when the record before Commerce contained at least a suggestion of the argument). The Court concludes that the arguments concerning Japanese antitrust law and the "best of its ability" standard are not precluded by the exhaustion

doctrine.

## II.       Commerce's Application of Facts Otherwise Available with an Adverse Inference

Defendant and Defendant-Intervenors request that the Court sustain Commerce's Second Remand Redetermination.  Def.'s Resp. at 1; Def.-Intervs.' Resp. at 1.  Nippon Steel argues that the Second Remand Redetermination fails to address Nippon Steel's additional efforts to obtain its affiliate's data, contrary to the remand instructions in Nippon Steel I.  Pl.'s Cmts. at 2.  Nippon Steel contends that the Second Remand Redetermination failed to establish that the "best of its ability" standard required Nippon Steel to violate Japanese law or refrain from exporting.  Id. at 3.  Nippon Steel avers that the Second Remand Redetermination failed to consider that Nippon Steel lacks sufficient leverage due to its minority stake in the affiliate at issue to induce cooperation through threats.  Id. at 4.

Defendant argues that in accordance with the Court's remand instructions, Commerce considered Nippon Steel's additional attempts to obtain data from its downstream affiliate.  Def.'s Resp. at 9–10.  Defendant contends that Commerce examined the Japanese opinion letter and the "Guidelines Concerning Abuse of Superior Bargaining Position Under the Antimonopoly Act," published by the Japan Fair Trade Commission, in the Second Remand Redetermination.  Id. at 10–11; see Nippon Steel Section B Questionnaire Resp., Ex. B-23, Documentation Regarding the Japanese Antimonopoly Act, "Guidelines Concerning Abuse of

Superior Bargaining Position Under the Antimonopoly Act," (November 30, 2010) ("Guidelines"), PR 100–104.  Defendant avers that Commerce considered Nippon Steel's alleged lack of sufficient leverage due to its minority stake in the affiliate but did not find the argument persuasive.  Def.'s Resp at 13.

Defendant-Intervenors argue that Commerce properly explained why Nippon Steel's references to communications with its affiliates were not enough to overcome Nippon Steel's obligation to act to the best of its ability in providing the information requested by the agency.  Def.-Intervs.' Resp. at 3.  Defendant-Intervenors contend that Commerce adequately explained why Japanese law did not justify Nippon Steel's failure to provide information from its home market affiliates.  Id. at 4.

A.    **Legal Standard**

Section 776 of the Tariff Act of 1930, as amended, provides that if "necessary information is not available on the record" then the agency shall "use the facts otherwise available in reaching" its determination.  19 U.S.C. § 1677e(a)(1).  19 U.S.C. § 1677e(a)(2) permits Commerce to select from facts otherwise available if an interested party: (A) withholds information; (B) fails to provide such information by the deadlines for submission, or in the form and manner requested; (C) significantly impedes a proceeding; or (D) provides such information but the information cannot be verified.  19 U.S.C. § 1677e(a)(2).

Court No. 21-00533                                                        Page 13

Commerce's authority to use facts otherwise available under 19 U.S.C. § 1677e(a)

is subject to 19 U.S.C. § 1677m(d), which states that:

> If the administering authority or the Commission determines that a
> response to a request for information under this subtitle does not
> comply with the request, the administering authority or the
> Commission (as the case may be) shall promptly inform the person
> submitting the response of the nature of the deficiency and shall, to
> the extent practicable, provide that person with an opportunity to
> remedy or explain the deficiency in light of the time limits established
> for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d).

If Commerce determines that "an interested party has failed to cooperate by

not acting to the best of its ability to comply with a request for information" from

the agency, then Commerce "may use an inference that is adverse to the interests

of that party in selecting from the facts otherwise available."  Id. § 1677e(b)(1)(A).

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has interpreted these

two subsections to have different purposes.  See Mueller Comercial de Mexico, S.

de. R.L. De C.V. v. United States, 753 F.3d 1227, 1232 (Fed. Cir. 2014).

Subsection (a) applies "whether or not any party has failed to cooperate fully with

the agency in its inquiry."  Id. (citing Zhejiang DunAn Hetian Metal Co. v. United

States, 652 F.3d 1333, 1346 (Fed. Cir. 2011)).  Subsection (b) applies only when

Commerce makes a separate determination that the respondent failed to cooperate

"by not acting to the best of its ability."  Id. (quoting Zhejiang DunAn Hetian

Metal Co., 652 F.3d at 1346).

When determining whether a respondent has complied to the "best of its ability," Commerce "assess[es] whether [a] respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). This determination requires both an objective and subjective showing. Id. Commerce must determine objectively "that a reasonable and responsible [respondent] would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations." Id. (citing Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002)). Next, Commerce must demonstrate subjectively that the respondent's "failure to fully respond is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records; or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records." Id. at 1382–83.

Adverse inferences are not warranted "merely from a failure to respond," but rather in instances when Commerce reasonably expected that "more forthcoming responses should have been made." Id. at 1383. "The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." Id. To use an adverse inference when selecting among the facts otherwise available under

Section 1677e(b), Commerce must assess whether the party used its maximum efforts to secure the missing information.  Id. at 1382.

> ### B.    Adverse Inference

The Court previously concluded that necessary information was missing from the record and Commerce "was therefore free to select from facts otherwise available to fill the gap."  Nippon Steel I, 48 CIT at __, 732 F. Supp. 3d at 1368. The Court considers now whether Commerce's explanation for applying an adverse inference in the Second Remand Redetermination was in compliance with the remand order, supported by substantial evidence, and in accordance with law.

In the Second Remand Redetermination, Commerce continued to determine that Nippon Steel did not act to the best of its ability to report requested affiliated-party downstream sales information and applied a partial adverse inference. Second Remand Redetermination at 3.  Commerce reasoned that "references to communications between Nippon Steel and its affiliate are not enough to overcome the obligation to act 'to the best of its ability' in providing the necessary data for performing the dumping calculation[.]"  Id. at 5.  Commerce explained that accepting these communications as Nippon Steel acting "to the best of its ability" would undermine the dumping calculation by allowing respondents to shield themselves from reporting high priced home market sales behind a wall of uncooperative affiliates to manipulate the dumping calculations.  Id.  Commerce

stated that "requesting the data several times is not the only action Nippon Steel could have taken to induce compliance." Id. at 6.

Commerce determined further that Nippon Steel did not act to the best of its ability because "it was prohibited by the Japanese Antimonopoly Act from ceasing to do business with its affiliated customers if they did not provide the necessary downstream data or ceasing sales to affiliated customers if they do not provide downstream sales data." Id. at 7–8. Commerce reasoned that accepting a respondent's failure to provide necessary information because of a foreign law preventing the sharing of the information would undermine the statutory scheme envisioned by Congress to induce parties to cooperate. Id. at 8. Commerce examined the legal memorandum submitted by Nippon Steel and determined that the legal memorandum did not address the limitations of the Japanese Antimonopoly Act according to the Guidelines on "unjust refusal to trade." Id. at 9. Commerce reasoned that the Guidelines indicated that the Japanese Antimonopoly Act was designed to cover "only certain activity in which a 'superior' company is using its clout to influence and unjustly skew the business relationship between the two to the detriment of the small entity" and did not address "the legitimate, normal business practice of responding to data collection for the purpose of an antidumping duty proceeding[.]" Id. Commerce determined that Nippon Steel was not required to violate the law in order to act to the best of

its ability because: (1) Nippon Steel had ample time to ensure compliance with requests for information in its contractual agreements with downstream affiliates, or in the alternative could have adjusted its selling activities such that it did business with different companies without making any threats; or (2) if the affiliates were concerned about Nippon Steel seeing their proprietary sales data, Nippon Steel could have asked the affiliate to submit the data directly to Commerce. Id. at 10.

Nippon Steel argues that the Guidelines to the Japanese Antimonopoly Act explain that threats by a dominant party are illegal regardless of the end goal, and claims that the Second Remand Redetermination relied on the flawed analysis that the Japanese Antimonopoly Act applied only to "unjust" uses of economic power, and not to the "legitimate, normal business practice of responding to data collection for the purpose of an antidumping duty proceeding." Pl.'s Cmts. at 11–12 (quoting Second Remand Redetermination at 9). Nippon Steel contends that both actions suggested by Commerce in the Second Remand Redetermination, renegotiating contracts with its affiliate to impose contractual data-sharing requirements or adjusting selling activities such that Nippon Steel instead did business with different companies without making any threats, were threats barred by the Japanese Antimonopoly Act. Id. at 14–15.

Court No. 21-00533                                                                Page 18

i.     **Japanese Antitrust Law**

Commerce may apply an adverse inference in circumstances under which it is reasonable for the agency "to expect that more forthcoming responses should have been made." Nippon Steel Corp., 337 F.3d at 1383. "Where the party seeks information from an uncooperative supplier, Commerce must 'consider record evidence concerning the practical ability of a respondent to induce the supplier's cooperation.'" Jinko Solar Imp. & Exp. Co., Ltd. v. United States ("Jinko"), 48 CIT __, __, 701 F. Supp. 3d 1367, 1393 (2024) (quoting Venus Wire Indus. Pvt. Ltd. v. United States, 44 CIT __, __, 471 F. Supp. 3d 1289, 1309 (2020)).

Nippon Steel's legal memorandum claimed that, for Nippon Steel, conditioning trade with affiliated resellers on whether the resellers provided downstream sales data would constitute an abuse of superior bargaining position and unjust refusal to trade under the Antimonopoly Act. See Nippon Steel Section B Questionnaire Resp., Ex. B-23, Documentation Regarding the Japanese Antimonopoly Act, "On Abuse of Superior Bargaining Position and Unjust Refusal to Trade Under Japan's Act on Prohibition of Private Monopolization and Maintenance of Fair Trade" (June 10, 2020) ("Antimonopoly Act Memorandum") at 2, PR 100–104. Commerce stated that the legal memorandum drew these conclusions without addressing the law's limitations according to the Guidelines. Second Remand Redetermination at 9. The legal memorandum defines the abuse

of superior bargaining power, prohibited by Japanese antitrust law, as "the use of one's superior bargaining position over a counterparty to disadvantage the counterparty in a way that is unjust in light of normal business practices[.]" Antimonopoly Act Memorandum at 1. Commerce determined that the Guidelines indicated that the Antimonopoly Act covered a specific type of conduct of when a "'superior' company is using its clout to influence and unjustly skew the business relationship between the two to the detriment of the small entity[,]" and did not address the business practice of collecting information pursuant to an antidumping duty proceeding. Second Remand Redetermination at 9; see Antimonopoly Act Memorandum.

This determination is supported by record evidence because the Guidelines do not address the present scenario of obtaining information from an affiliate reseller in order to comply with an antidumping investigation. See generally Guidelines. Article 2, paragraph 9, section (v) of the Antimonopoly Act provides the following examples of acts that constitute unfair trade practices:

> (v) Engaging in any act specified in one of the following by making use of one's superior bargaining position over the counterparty unjustly, in light of normal business practices:
>
>> (a) Causing said counterparty in continuous transactions (including a party with whom one newly intends to engage in continuous transactions: the same applies in (b) below) to purchase goods or services other than those to which said transactions pertain

(b) Causing said counterparty in continuous transactions to provide money, services or other economic benefits

(c) Refusing to receive goods in transactions with said counterparty, causing said counterparty to take back such goods after receiving them from said counterparty, delaying payment to said counterparty or reducing the amount of payment, or otherwise establishing or changing trade terms or executing transactions in a way disadvantageous to said counterparty[.]

Nippon Steel Section B Questionnaire Resp., Ex. B-23, Documentation Regarding the Japanese Antimonopoly Act, "Act on Prohibition of Private Monopolization and Maintenance of Fair Trade" (April 14, 1947) ("Antimonopoly Act") at 5–6, PR at 100–104. Commerce cited this provision and explained that the Japanese Antimonopoly Act aimed to prevent impeding fair competition and did not apply to the issue of providing Commerce with information needed to perform a dumping calculation. Second Remand Redetermination at 9–10. This is a reasonable determination given that the Guidelines recite numerous case examples of circumstances between transacting parties that would constitute behavior in violation of Japanese antitrust law, and inducing compliance for an antidumping investigation was never raised. See Guidelines at 5–35. The Guidelines Concerning Distribution Systems and Business Practices Under the Antimonopoly Act stated the following on refusals to deal by a single enterprise:

Basically speaking, it is a matter of freedom of choice of trading partners for an enterprise to decide which enterprise it does business with. Even if an enterprise, considering such factors as price, quality and service, decides not to deal with a certain enterprise at its own

judgment, there would be fundamentally no problem under the Antimonopoly Act.  However, exceptionally, even a refusal to deal by a single enterprise is illegal in cases where the enterprise refuses to deal as a means to secure the effectiveness of its illegal conduct under the Antimonopoly Act.

Nippon Steel Section B Questionnaire Resp., Ex. B-23, Documentation Regarding the Japanese Antimonopoly Act, "Guidelines Concerning Distribution Systems and Business Practices Under the Antimonopoly Act" (June 16, 2017) ("Business Practices Guidelines") at 50, PR 100–104.  This reinforces Commerce's determination that the "legitimate, normal business practice of responding to data collection for the purpose of an antidumping duty proceeding" is not addressed by the Guidelines.  Second Remand Redetermination at 9.

Although the Guidelines are silent on the specific issue present in this case, Commerce recognized that the Guidelines claim that "[t]he risk of impeding fair competition [is] identified case-by-case, considering factors including the degree of the disadvantage at issue and the extensiveness of the act."  Second Remand Redetermination at 10; Guidelines at 3.  The Antimonopoly Act focuses on superior bargaining power, and Nippon Steel's perceived versus actual bargaining power is a contested issue among the Parties.[3]  Commerce's determination that the

---

[3] Nippon Steel argues that forcing an affiliate to provide downstream sales data would impose a disadvantage on the affiliate that exceeds reasonable limits, and that "such threats constitute abuse of [Nippon Steel]'s superior bargaining position . . . "  Pl.'s Cmts. at 13.  However, Nippon Steel also claims that it "lacks sufficient leverage due to its minority stake in the affiliate at issue to induce

Japanese Antimonopoly Act did not cover the business practice of providing

Commerce with needed information to perform a dumping calculation and was not

applicable to this case is supported by substantial evidence on the record.

Commerce suggested that Nippon Steel could have used its economic

strength to get necessary data from the affiliates and not have been in violation of

Japanese law.  Second Remand Redetermination at 10.  Commerce claimed that

Nippon Steel had "ample time" since the initiation of the investigation in 2016 to

contract with its downstream affiliates to make compliance with Commerce's

requests a part of their contractual agreement or that Nippon Steel could have

adjusted its selling activities to instead do business with different companies

without making any threats.  Id.  Complying with the statutory "best of its ability"

standard requires putting forth maximum effort to provide Commerce with the

information requested, and evidence on the record reasonably supports the

conclusion that Commerce's suggestion that Nippon Steel at least do business with

different companies does not violate Japanese antitrust law.  See Nippon Steel

Corp., 337 F.3d at 1382.

---

cooperation through threats[,]" and has no control of an affiliate's decision whether
to respond to its requests.  Id. at 4, 8.  Defendant argues that Nippon Steel could
have used its "long-term economic relationships" with the affiliate to establish
reporting procedures for downstream home market sales.  Def.'s Resp. at 13.
Defendant-Intervenors also acknowledge the longstanding economic relationship
between Nippon Steel and its home market affiliates.  Def.-Intervs.' Resp. at 4.

For example, the Business Practices Guidelines recognize that enterprises have the freedom to choose trading partners based on business decisions and that choice is not a breach of the Antimonopoly Act. See Business Practices Guidelines at 50. Commerce determined that it would not be an unjust activity barred by Japanese antitrust law for Nippon Steel to use its economic strength to obtain necessary data in the normal business practice of responding to antidumping allegations, and that determination is supported by substantial record evidence. Second Remand Redetermination at 10. Commerce determined that the Japanese antitrust law arguments raised cannot shield Nippon Steel and do not show that Nippon Steel acted to the best of its ability to obtain the requested information from its affiliate. Id. at 10–11.

Commerce sufficiently discussed Nippon Steel's Japanese antitrust law arguments as required on remand, and explained why it determined that Nippon Steel did not act to the best of its ability and that an adverse inference was still warranted. The Court concludes that Commerce's determination in light of Japanese antitrust law is supported by substantial evidence on the record, in accordance with law, and compliant with the remand order.

ii.    **Nippon Steel's Inducement Efforts Throughout Commerce's Administrative Reviews**

Nippon Steel argues that Commerce's Second Remand Redetermination continued to ignore its additional efforts to collect the necessary data from its

affiliate.  Pl.'s Cmts. at 6.  Plaintiff avers that the "best of its ability" standard does

not require a respondent to "immediately deploy every conceivable tactic on

downstream affiliates to collect data when it is reasonable in the circumstances to

expect that a subset of those tactics will be sufficient."  Id. at 7 (citing Nippon

Steel I, 48 CIT at __, 732 F. Supp. 3d at 1382).  Plaintiff contends that it was

unreasonable for Commerce to expect Nippon Steel to have done more in this

administrative review.  Id. at 7–8.

Cooperating to the "best of its ability" and putting forth "maximum effort"

requires that a respondent show that it has tried to do something more than that

which has failed in the past.  Jinko, 48 CIT at __, 701 F. Supp. 3d at 1394.  "A

party asked to retroactively secure compliance over a non-cooperative supplier in

the absence of market leverage is different from a respondent who purchases from

a supplier who it knows has been non-compliant in the past."  Id.  Commerce

stated that "it is well-known to Nippon Steel that Commerce requires a respondent

to report downstream affiliate sales" and that "this precise issue arose in the

investigation and both prior reviews."  Second Remand Redetermination at 6.

Commerce cited the Final Determinations and Issues and Decision Memoranda of

two previous administrative reviews.  See id. at 6, n.25 (citing final results from

reviews on June 28, 2019 and September 16, 2020, and the final determination

from the antidumping duty investigation on August 12, 2016).

The Court has recognized that this action arises from the three consecutive administrative reviews of Commerce's antidumping duty order on certain hot-rolled steel flat products from Japan, for which Nippon Steel was a mandatory respondent in each review.  Nippon Steel I, 48 CIT at __, 732 F. Supp. 3d at 1358. The fact that this exact issue arose in the prior reviews is relevant for considering whether Nippon Steel acted to the best of its ability.  See Second Remand Redetermination at 6, n.25.  Commerce referenced the Final Results and Issues and Decision Memorandum issued on June 28, 2019, from the first administrative review (AR1), when Commerce determined that necessary home market price data was missing from the record because Nippon Steel's affiliated resellers did not provide downstream sales data.  Id.; see Issues and Decision Memorandum For the Final Results of the Antidumping Duty Administrative Review: Certain Hot-Rolled Steel Flat Products From Japan; 2016-2017, A-588-874 (June 21, 2019) ("Nippon Steel failed to cooperate by not acting to the best of its ability to comply with the request for information regarding the reporting of its affiliated companies' home market resales[.]").

Commerce stated that references to communications between Nippon Steel and its affiliate, even communications through outside counsel, were not enough to overcome the "best of its ability" obligation.  Second Remand Redetermination at 12.  Commerce explained that because Nippon Steel knew that this particular

affiliate did not provide requested data for Commerce previously, Nippon Steel

knew of the possibility that the affiliate would be noncompliant again.  Id.  It is

reasonable for Commerce to suggest that Nippon Steel's previous inability to

obtain downstream sales data from non-cooperative affiliates should inform

whether Nippon Steel chooses to repeatedly engage with the same non-cooperative

affiliates.

At oral argument, Commerce confirmed that Nippon Steel had known for

two years that the affiliate in this administrative review was non-cooperative; the

questionnaires in the first administrative review (AR1) were issued in January

2018, with Nippon Steel's questionnaire responses due by March 2018, and this

administrative review (AR3)'s questionnaires were issued in May 2020.  Oral Arg.

at 1:31:22–1:32:19.  Plaintiff also confirmed that the non-cooperative affiliate at

issue in this administrative review (AR3) was one of the non-cooperative affiliates

in the first administrative review (AR1).  Id. at 1:26:36–1:27:30.  At the time that

Commerce issued the initial questionnaire in this administrative review, it was

known to Nippon Steel that this particular affiliate had been non-cooperative with

respect to providing requested downstream sales data.  Nippon Steel was aware

that this affiliated reseller was non-cooperative by at least March 2018, when it

submitted questionnaire responses that lacked the necessary downstream sales data

in the first administrative review.  See Oral Arg. at 1:31:22–1:32:19.

Plaintiff argues that Nippon Steel could not have known that its efforts would fail to induce its affiliate to provide requested information "until well after [Nippon Steel] made the sales at issue during the AR3 [Period of Review]." Pl.'s Cmts. at 6–7. However, the period of review for the third administrative review ranged from October 1, 2018, to September 30, 2019. Nippon Steel Section B Questionnaire Resp. at B-1. Thus, Nippon Steel knew about its affiliate's noncooperation by at least March 2018, before the third administrative review. On May 4, 2020, Commerce issued an initial questionnaire to Nippon Steel. Id. Commerce's questionnaire asked Nippon Steel to report the downstream sales its affiliates made in the Japanese domestic market. Id. at B-3; Nippon Steel I, 48 CIT at __, 732 F. Supp. 3d at 1362–63. Nippon Steel responded that it had spent a significant amount of time and resources to collect the required downstream sales data, including hiring local Japanese counsel as it had done in previous administrative reviews. Nippon Steel Section B Questionnaire Resp. at B-6. However, three affiliates were unwilling or unable to provide the requested data in the detail and format required by Commerce. Letter from Sidley Austin LLP to the Hon. Wynn Coggins, DOC, "NSC's Response to the Department's Supplemental Questionnaire" (Feb. 2, 2021) ("Supplemental Questionnaire Response") at 2, PR 127–32. By this point, again, Nippon Steel had known about its affiliated reseller's noncooperation.

Even if a respondent may not have leverage over a supplier for past sales, it may have leverage over future sales.  See Garg Tube Exp. LLP v. United States, 48 CIT __, __, 740 F. Supp. 3d 1355, 1363 (2024). "[W]here there are repeat customer supplier relationships, more is required than simply claiming a lack of leverage." Id. (citing Jinko, 48 CIT at __, 701 F. Supp. 3d at 1393).  Commerce acknowledged the communications between Nippon Steel and its affiliate that were on the record but argued that this communication was not enough to overcome the obligation to act "to the best of its ability." Second Remand Redetermination at 5. Commerce stated that the fact that the outcome of Nippon Steel's new efforts also resulted in the failure to obtain the requested data did not give Nippon Steel a reprieve from the requirement to provide the requested data or from Commerce's practice of applying adverse facts available. Id. at 12.

Commerce determined that Nippon Steel had time to make compliance with Commerce's requests for data part of its contractual agreements with its downstream affiliates, and the evidentiary timeline of events supports this possibility. Second Remand Redetermination at 5.  Given that Nippon Steel's previous administrative review history indicated that Nippon Steel had known of the affiliate's noncooperation for long enough to make informed business decisions with the affiliate's noncooperation in mind, it was not unreasonable for Commerce to suggest and expect that Nippon do more to induce compliance with a known-

noncooperative affiliate to meet the "best of its ability" standard.  Commerce stated that "[s]imply requesting the data several times was not the only action that Nippon Steel could have taken to induce compliance."  Id. at 6.  Maximum effort requires that Nippon Steel should have tried to take action beyond what had failed to induce compliance in the past, which it did not do.  See Jinko, 48 CIT at __, 701 F. Supp. 3d at 1394.  The Court holds that Commerce sufficiently discussed Nippon Steel's efforts to induce compliance compared to previous administrative reviews in accordance with the remand order, and the determination that Nippon Steel did not act to the best of its ability is supported by substantial evidence and in accordance with law, sufficient to support the application of an adverse inference.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that the Second Remand Redetermination is sustained.

Judgment will be entered accordingly.

/s/    Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:      April 8, 2026
New York, New York